ORIGINAL

# MDL 1431

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 2 1 2001

FILED
CLERK'S OFFICE



## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re Baycol Products Liability Litigation | : | MDL Docket Number: _____ |
| | : | |

## MOTION FOR TRANSFER AND COORDINATION AND/OR CONSOLIDATION IN THE WESTERN DISTRICT OF PENNSYLVANIA UNDER 28 U.S.C. § 1407

      Plaintiff/Petitioner Diane Rosenthal ("Plaintiff"), on behalf of herself and all others similarly situated in a class action captioned <u>Diane Rosenthal v. Bayer Corporation, A Division of Bayer AG</u>, C.A. No. 01-CV-1574 (the "<u>Rosenthal</u> Action"), pending before the Honorable Donald J. Lee in the United States District Court for the Western District of Pennsylvania, respectfully moves the Judicial Panel on Multidistrict Litigation (the "Panel") for an Order pursuant to 28 U.S.C. § 1407 and the Rules of Procedure of the Panel transferring virtually identical class actions pending in different judicial districts against the same defendant, Bayer Corporation ("Bayer" or "Defendant"), and all related Baycol[1] drug cases that are filed in or removed to the federal courts, to the Western District of Pennsylvania for coordinated and/or consolidated pretrial proceedings. In support of the motion, Plaintiff submits the accompanying Memorandum and Schedule of Related Federal Actions, and avers as follows:

---

      [1]Baycol, which was initially approved for sale in the United States in 1997, is a member of a class of cholesterol-lowering drugs that are commonly referred to as "statins." Statins lower cholesterol levels by blocking a specific enzyme in the body that is involved in the synthesis of cholesterol.

IMAGED AUG 23 '01   **OFFICIAL FILE COPY**

1.      The <u>Rosenthal</u> Action is brought on behalf of a proposed class consisting of all persons in the United States or United States Territories who have suffered injury or may suffer injury as a result of using Baycol (cerivastatin), a drug which is designed, manufactured, supplied, distributed, sold, and/or placed in interstate commerce by Defendant Bayer.  This action seeks, among other relief, monetary damages and the establishment of a medical monitoring program on behalf of all proposed class members to ensure prompt diagnosis and treatment for individuals exposed to the potentially life-threatening side effects and diseases, including rhabdomyolysis,[2] caused by the product Baycol.  The Complaint filed in the <u>Rosenthal</u> Action is attached hereto as Exhibit "A."

2.      The <u>Rosenthal</u> Action is pending in the Western District of Pennsylvania; Defendant Bayer's United States headquarters and principal place of business is located in the Western District of Pennsylvania at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.

3.      At all times relevant hereto, Bayer, itself or by the use of others, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, and otherwise distribute in interstate commerce the product Baycol.

4.      More than 700,000 individuals residing in the United States have taken Baycol, many in combination with gemfibrozil (Lopid and generics), another lipid-lowering drug.

5.      Cases of fatal rhabdomyolysis associated with the use of Baycol have been reported on a significantly more frequent basis than cases reported in connection with the use of

---

[2]Rhabdomyolysis is a condition that results in muscle cell breakdown and release of the contents of muscle cells into the bloodstream.  Symptoms of rhabdomyolysis include muscle pain, weakness, tenderness, malaise, fever, dark urine, nausea and vomiting.  In some cases the muscle injury is so severe that patients develop renal failure and other organ failure, which can be fatal.

other approved statins. So far, the United States Food and Drug Administration ("FDA") has received reports of at least 31 deaths of individuals residing in the United States due to severe rhabdomyolysis associated with the use of Baycol.

6.    There is currently at least two other class actions against Bayer, <u>Steven Sparks, on behalf of himself and all others similarly situated, v. Bayer Corporation</u>, Docket No. 01-CV-1265 (W.D. Ok.) (the "<u>Sparks</u> Action") and <u>Evelyn Sternberg, on behalf of herself and all others similarly situated, v. Bayer Corporation and Bayer A.G.</u>, Docket No. 01-CV-5557 (E.D.N.Y.) (the "<u>Sternberg</u> Action"), which are based on virtually identical allegations as alleged in the <u>Rosenthal</u> Action (collectively, the "Related Class Actions").[3] The Complaints filed in the <u>Sparks</u> Action and the <u>Sternberg</u> Action are attached hereto as Exhibits "B" and "C," respectively.

7.    The factual allegations in each of the Complaints filed in the Related Class Actions are virtually identical, as each of the actions assert claims on behalf of the class of all persons or entities who purchased or otherwise use Baycol. <u>See</u> Exs. A-C, hereto.

8.    The core factual allegations underlying the Related Class Actions are that: (a) Baycol was defective due to inadequate post-marketing warning or instruction because, even after Bayer knew or should have known of the risk of rhabdomyolysis and/or other injury resulting from the use of Baycol, Bayer failed to provide adequate warnings to users or

---

[3]Counsel for Plaintiff has, in good faith, attempted to ascertain all related Baycol drug cases filed against Defendant and will bring to the Panel's attention any other pending federal actions concerning Bayer's sale and distribution of Baycol as soon as practicable after we learn of such actions. To the extent that the Panel determines that other related Baycol drug cases are filed in or removed to the federal courts, Plaintiff respectfully requests that the Panel also transfer those "tag along" actions to the Western District of Pennsylvania for coordinated and/or consolidated pretrial proceedings.

consumers of Baycol and continued to aggressively promote Baycol; (b) Baycol was defective in design or formulation in that, the foreseeable risks exceeded the benefits associated with the design or formulation of Baycol and/or it was unreasonably dangerous; and (c) Bayer failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, and/or distribution of Baycol into interstate commerce in that Bayer knew or should have known that Baycol created a high risk of unreasonable, dangerous side effects, including, but not limited to, rhabdomyolysis. See Exs. A-C, hereto.

9.     The Related Class Actions raise common questions of law and fact, including, but not limited to:

a.     Whether Baycol causes injury, either alone or in combination with gemfibrozil;

b.     Whether Baycol is a dangerously defective product;

c.     Whether Bayer is strictly liable for sales and distribution of a dangerously defective product;

d.     Whether Bayer negligently designed, manufactured, warned about, promoted, advertised, marketed, and/or distributed Baycol;

e.     Whether Bayer conducted appropriate testing of Baycol; and

f.     Whether the serious side effects, injuries and damages from the use of Baycol support the need for medical monitoring of persons who have used the drug.[4]

10.     The Related Class Actions were both filed less than two weeks ago and are in the

---

[4]The Sparks Action sets forth generally its allegations of damages and the relief sought therein.

initial stage of litigation.[5]  At this early stage, no preliminary orders have been entered; no

discovery or initial disclosures have been made; no motions have been submitted; and no

substantive rulings on motions to dismiss, motions for summary judgment, class certification or

other pretrial matters have been entered.

11.     Since the Related Class Actions are in the beginning stage of the litigation, no

prejudice or inconvenience would result from transfer, coordination and/or consolidation.

12.     The presence of at least two virtually identical, independent actions, situated in

different judicial districts, presents a substantial risk of inconsistent pretrial rulings on discovery

and other issues.  In addition, the Related Class Actions before the Panel both seek certification

of virtually identical classes, see supra ¶¶ 7-9, thus raising the prospect of overlapping or

inconsistent class determinations.

13.     Discovery conducted in the Related Class Actions will be substantially the same

because the defendant in both actions is Bayer, virtually all of the charging allegations are

identical and, thus, the witnesses and documents will be the same in both litigations.

14.     The Western District of Pennsylvania is the appropriate transferee forum.  As

detailed in Plaintiff's accompanying Memorandum, the Rosenthal Action is pending -- and

Defendant Bayer's United States headquarters and principal place of business is located -- in the

Western District of Pennsylvania.  Consequently, most, if not all, of the parties, witnesses,

documents and other evidence which bear on this case are already located, or will be located, in

---

[5]The Rosenthal Action was filed on August 16, 2001 in the Western District of
Pennsylvania and was assigned to Judge Donald J. Lee; the Sparks Action was filed on August
10, 2001 in the Western District of Oklahoma and was assigned to Judge Ralph G. Thompson;
the Sternberg Action was filed on August 16, 2001 in the Eastern District of New York and was
assigned to Judge John Gleeson.

the Western District of Pennsylvania.

15.    Under these circumstances, early transfer and coordination and/or consolidation of pretrial proceedings in the Western District of Pennsylvania will certainly promote the convenience of the parties and witnesses and the just and efficient conduct of the action.  It will also avoid the potential duplication of discovery and inconsistent rulings, particularly on class action issues and, on the part of the common Defendant, exposure to multiple claims arising out of the same general course of conduct.  The result sought by Plaintiff herein will result in a significant saving of time and expense; the expedited, comprehensive and consistent implementation of early equitable relief; the development of consistent law of the case; and the fair and economical adjudication of the actions.

WHEREFORE, Plaintiff respectfully requests that the instant <u>Rosenthal</u> Action, the <u>Sparks</u> Action, and the <u>Sternberg</u> Action be transferred and coordinated and/or consolidated for pretrial proceedings in the Western District of Pennsylvania, and that all related Baycol drug cases that are filed in or removed to the federal courts be transferred thereto as "tag along actions."

DATED: August 20, 2001

        Respectfully Submitted,

        **SCHIFFRIN & BARROWAY, LLP**

By: *Andrew L. Barroway*

        Andrew L. Barroway, Esq.
        Marc A. Topaz, Esq.
        Three Bala Plaza East
        Suite 400
        Bala Cynwyd, Pennsylvania 19004
        (610) 667-7706

        **LAW OFFICE OF ALFRED G. YATES JR.**
        Alfred G. Yates Jr., Esq.
        Gerald L. Rutledge, Esq.
        519 Allegheny Building
        429 Forbes Avenue
        Pittsburgh, Pennsylvania 15219
        (412) 391-5164

        **CAULEY GELLER BOWMAN & COATES**
        Paul J. Geller, Esq.
        2225 Glades Road
        Suite 421A
        Boca Raton, Florida 33431
        (561) 750-3000

        **LAW OFFICES OF BRIAN FELGOISE**
        Brian Felgoise, Esq.
        230 South Broad Street
        Philadelphia, Pennsylvania 19102

        Counsel for Plaintiff/Petitioner

7

# ORIGINAL

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 2 1 2001

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re Baycol Products Liability Litigation      :      MDL Docket Number: _____
                                                 :

## SCHEDULE OF RELATED FEDERAL CASES

(1)     Diane Rosenthal, on behalf of herself and all others similarly situated, v. Bayer Corporation,
        United States District Court for the Western District of Pennsylvania (Pittsburgh), assigned
        to Judge Donald J. Lee, Civil Action No. 01-CV-1574.

(2)     Steven L. Sparks, on behalf of himself and all others similarly situated, v. Bayer Corporation,
        United States District Court for the Western District of Oklahoma (Oklahoma City), assigned
        to Judge Ralph G. Thompson, Civil Action No. 01-CV-1265.

(3)     Evelyn Sternberg, on behalf of herself and all others similarly situated, v. Bayer Corporation
        and Bayer, A.G., United States District Court for the Eastern District of New York
        (Brooklyn), assigned to Judge John Gleeson, Civil Action No. 01-CV-5557.

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2001 AUG 21 A 10: 37

RECEIVED
CLERK'S OFFICE

**ORIGINAL**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 2 1 2001

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re Baycol Products Liability Litigation   :    MDL Docket Number: _____

: 

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on August 20, 2001, a true and exact copy of the

foregoing Motion for Transfer and Coordination and/or Consolidation In the Western District of

Pennsylvania Under 28 U.S.C. § 1407, Memorandum In Support of Transfer and Coordination

and/or Consolidation In the Western District of Pennsylvania Under 28 U.S.C. § 1407, and Schedule

of Related Federal Cases was served by mailing a copy of same in a properly addressed and postage

prepaid envelope via the United States Mail upon on the following:

<u>Diane Rosenthal, on behalf of herself and all others similarly situated, v. Bayer Corporation</u>, United
States District Court for the Western District of Pennsylvania (Pittsburgh), assigned to Judge Donald
J. Lee, Civil Action No. 01-CV-1574.

> Clerk of the Court
> United States District Court
> Western District of Pennsylvania
> 829 U.S. Courthouse
> 7th and Grant Streets
> Pittsburgh, Pennsylvania 15219
>
> Bayer Corporation (served for all three related actions)
> 100 Bayer Road
> Pittsburgh, Pennsylvania 15205

<u>Steven L. Sparks, on behalf of himself and all others similarly situated, v. Bayer Corporation</u>, United States District Court for the Western District of Oklahoma (Oklahoma City), assigned to Judge Ralph G. Thompson, Civil Action No. 01-CV-1265.

Clerk of the Court
United States District Court
Western District of Oklahoma
200 N.W. 4th Street
Room 1210
Oklahoma City, Oklahoma 73102

Strong, Martin & Associates, PLLC (counsel for <u>Sparks</u> plaintiff)
Don S. Strong
2518 First National Center
120 North Robinson
Oklahoma City, Oklahoma 73102

<u>Evelyn Sternberg, on behalf of herself and all others similarly situated,  v. Bayer Corporation and Bayer, A.G.</u>, United States District Court for the Eastern District of New York (Brooklyn), assigned to Judge John Gleeson, Civil Action No. 01-CV-5557.

Clerk of the Court
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Kaplan Fox & Kilsheimer LLP (counsel for <u>Sternberg</u> plaintiff)
Frederick S. Fox
805 Third Avenue
22nd Floor
New York, NY 10022

Bayer, A.G.
100 Bayer Road
Pittsburgh, Pennsylvania 15205

Michael Berman

**ORIGINAL**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 2 1 2001

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re Baycol Products Liability Litigation    :    MDL Docket Number: _____
                                              :

## MEMORANDUM IN SUPPORT OF TRANSFER
## AND COORDINATION AND/OR CONSOLIDATION IN THE
## WESTERN DISTRICT OF PENNSYLVANIA UNDER 28 U.S.C. § 1407

Plaintiff/Petitioner Diane Rosenthal ("Plaintiff"), on behalf of herself and all others similarly situated in a class action captioned Diane Rosenthal v. Bayer Corporation, A Division of Bayer AG, C.A. No. 01-CV-1574 (W.D. Pa. 2001) (the "Rosenthal Action"), pending before the Honorable Donald J. Lee in the United States District Court for the Western District of Pennsylvania, respectfully moves the Judicial Panel on Multidistrict Litigation (the "Panel") for an Order pursuant to 28 U.S.C. § 1407 and the Rules of Procedure of the Panel transferring virtually identical class actions pending in different judicial districts against the same defendant, Bayer Corporation ("Bayer" or "Defendant"), and all related Baycol[1] drug cases that are filed in or removed to the federal courts, to the Western District of Pennsylvania for coordinated and/or consolidated pretrial proceedings.

## I.   INTRODUCTION

This litigation is a proposed class action brought on behalf of a nationwide class of all persons who have taken the statin drug Baycol (cerivastatin). This action seeks, among other relief,

---

[1] Baycol, which was initially approved for sale in the United States in 1997, is a member of a class of cholesterol-lowering drugs that are commonly referred to as "statins." Statins lower cholesterol levels by blocking a specific enzyme in the body that is involved in the synthesis of cholesterol.

monetary damages and the establishment of a medical monitoring program on behalf of all proposed

class members to ensure prompt diagnosis and treatment for individuals exposed to the potentially

life-threatening side effects and diseases caused by the product Baycol.

Defendant Bayer, itself or by the use of others, did manufacture, create, design, test, label,

sterilize, package, distribute, supply, market, sell, advertise, and otherwise distribute in interstate

commerce the product Baycol.  More than 700,000 individuals residing in the United States have

taken Baycol, many in combination with gemfibrozil (Lopid and generics), another lipid-lowering

drug.

On or about October 25, 1999, the United States Food and Drug Administration ("FDA"),

Division of Drug Marketing, Advertising, and Communications ("DDMAC") wrote to Bayer as

follows:

> As part of its routine monitoring program, the [DDMAC] has become aware
> of promotional material for Baycol (cerivastatin sodium) that is false, lacking
> in fair balance, or otherwise misleading. . . .  The dissemination of this
> material by Bayer Corporation (Bayer) and/or their agents, violates the
> Federal Food, Drug, and Cosmetic Act and its implementing regulations.

The FDA's concern over the risks associated with Baycol proved to be well-founded, as the FDA

has received reports of at least 31 deaths of individuals residing in the United States due to severe

rhabdomyolysis associated with the use of Baycol.

The rising tide of concern over the potential dangers associated with Baycol culminated in

Bayer's shocking August 8, 2001 withdrawal of Baycol from the worldwide market.  These

announcements, and the dramatic voluntary withdrawal of Baycol, have caused widespread

confusion.  Immediate, informative warnings to the users and former users of Baycol, accompanied

by a comprehensive medical monitoring program, administered under court supervision and at

2

Defendant's expense, will prevent future disease and death, calm the public concern, and control and

ameliorate existing disease.  Here, prompt coordination and judicial action under the federal courts'

broad equitable powers may be invoked to inform, warn, and prevent injury and death, and provide

monitoring and treatment for those at risk and those already injured.  This, in turn, will reduce the

number of personal injury and wrongful death lawsuits that will be filed in the future.

There are currently at least two other class actions against Bayer, <u>Steven Sparks, on behalf</u>

<u>of himself and all others similarly situated, v. Bayer Corporation</u>, Docket No. 01-CV-1265 (W.D.

Ok. 2001) (the "<u>Sparks</u> Action") and  <u>Evelyn Sternberg v. Bayer Corporation and Bayer A.G.</u>,

Docket No. 01-CV-5557 (E.D.N.Y.) (the "<u>Sternberg</u> Action"), which are pending in different judicial

districts and based on allegations virtually identical to those alleged in the <u>Rosenthal</u> Action

(collectively, the "Related Class Actions").[2]  Unequivocally, the Related Class Actions share

common questions of fact and law and thus should be transferred to the Western District of

Pennsylvania for coordinated and/or consolidated pretrial discovery.[3]

## II.   COMMON FACTUAL AND LEGAL ISSUES EXIST

The Related Class Actions arise from the identical course of conduct concerning Baycol by

the same defendant, Bayer.  The legal and factual issues raised by the Related Class Actions are

virtually identical, as the complaints therein each assert claims on behalf of the proposed class of all

persons or entities who purchased or otherwise used Baycol.  <u>See</u> Exs. A-C, attached to Plaintiff's

---

[2]The allegations in the Related Class Actions are virtually identical; namely, that the drug Baycol sold and distributed by Defendant has caused and will cause death and life-threatening disease.  <u>See</u> Exs. A-C, attached to Plaintiff's accompanying Motion.

[3]Furthermore, an "explosion" of litigation based on Defendant's sale and distribution of Baycol is expected.

3

accompanying Motion.

The core factual allegations underlying the Related Class Actions are that: (a) Baycol was defective due to inadequate post-marketing warning or instruction because, even after Bayer knew or should have known of the risk of rhabdomyolysis and/or other injury resulting from the use of Baycol, Bayer failed to provide adequate warnings to users or consumers of Baycol and continued to aggressively promote Baycol; (b) Baycol was defective in design or formulation in that, the foreseeable risks exceeded the benefits associated with the design or formulation of Baycol and/or it was unreasonably dangerous; and (c) Bayer failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, and/or distribution of Baycol into interstate commerce in that Bayer knew or should have known that Baycol created a high risk of unreasonable, dangerous side effects, including, but not limited to, rhabdomyolysis. See Exs. A-C, hereto.

Thus, the Related Class Actions raise common questions of law and fact, including, but not limited to:

a.    Whether Baycol causes injury, either alone or in combination with gemfibrozil;

b.    Whether Baycol is a dangerously defective product;

c.    Whether Bayer is strictly liable for sales and distribution of a dangerously defective product;

d.    Whether Bayer negligently designed, manufactured, warned about, promoted, advertised, marketed, and/or distributed Baycol;

e.    Whether Bayer conducted appropriate testing of Baycol; and

f.    Whether the serious side effects, injuries and damages from the use of Baycol

support the need for medical monitoring of persons who have used the drug.[4]

As shown in detail below, given the compelling similarity between the Related Class Actions and the fact that the <u>Rosenthal</u> Action is pending -- and Defendant Bayer's United States headquarters, the witnesses, and documents are located -- in the Western District of Pennsylvania, transfer to the Western District of Pennsylvania and coordination and/or consolidation under 28 U.S.C. § 1407 is in the best interest of the litigants as well as the federal judicial system, which can expect a host of new cases concerning Baycol following Bayer's voluntary withdrawal of Baycol from the worldwide market on August 8, 2001.

III.  **TRANSFER TO THE WESTERN DISTRICT OF PENNSYLVANIA FOR COORDINATED AND/OR CONSOLIDATED PRETRIAL PROCEEDINGS WILL PROMOTE § 1407'S GOAL OF INSURING THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS, AND AVOIDING INCONSISTENT OR CONFLICTING SUBSTANTIVE AND PROCEDURAL DETERMINATIONS.**

A.  Transfer and Coordination and/or Consolidation of the
Related Class Actions Will Advance § 1407's Purpose.

The purpose of 28 U.S.C. § 1407 ("Section 1407") is to provide centralized management, under a single court's supervision, of pretrial litigation proceedings arising in different districts to ensure the just, efficient, and consistent conduct and adjudication of such actions.  <u>In re New York City Mun. Sec. Litig.</u>, 572 F.2d 49, 50 (2d Cir. 1978).

The transfer of actions and coordination and/or consolidation to a single forum under Section 1407 is appropriate where, as here, it will prevent duplication of discovery and, most importantly in the instant case, it will eliminate the possibility of overlapping or inconsistent pleading and class

---

[4]The <u>Sparks</u> Action sets forth generally its allegations of damages and the relief sought therein.

5

action determinations by courts of coordinate jurisdiction. In re LTV Corp. Sec. Litig., 470 F. Supp. 859, 862 (J.P.M.L. 1979); In re Litig. Arising from Termination of Retirement Plan for Employees of Fireman's Fund Ins. Co., 422 F. Supp. 287, 290 (J.P.M.L. 1976); In re Agent Orange Prod. Liab. Litig., 597 F. Supp. 740, 752 (E.D.N.Y. 1984), aff., 818 F.2d 145 (2d Cir. 1987), cert. denied, 484 U.S. 1004 (1988); In re Exterior Siding and Aluminum Coil Litig., 538 F. Supp. 45, 47 (D. Minn. 1982).[5]

The litmus test of transferability and coordination under Section 1407 is the presence of common questions of fact. In re Fed. Election Campaign Act Litig., 511 F. Supp. 821, 823 (J.P.M.L. 1979). In the instant litigation, its clear that the Related Class Actions and all other actions arising from Bayer's sale and distribution of Baycol will raise common questions of fact concerning, among other things, Baycol's characteristic risks and harm, the adequacy of Defendant's warnings, and the conduct of Defendant prior to and subsequent to its worldwide recall of Baycol. Consequently, proof of the Plaintiff's cases in each of the Related Class Actions will certainly involve similar – if not

---

[5]The Panel has articulated the following criteria for transfer under Section 1407:

1.  Transfer best serves the convenience of the parties and witnesses and promotes the just and efficient conduct of the litigation;

2.  Analysis of the effective complaints reveals that they share common factual questions concerning intricate events and methods of operation, which are sufficiently complex to warrant transfer; and

3.  Placement of the affected actions under the control of a single judge ensures that duplicative discovery of complex factual questions is prevented, and the possibility of conflicting pretrial rulings is eliminated.

See In re Gen. Tire & Rubber Co. Sec. Litig., 429 F. Supp. 1032, 1034 (J.P.M.L. 1977).

identical – factual issues.[6]

Further, in the instant case, transfer and coordination and/or consolidation is particularly appropriate because discovery has not yet begun in any of the Related Class Actions[7] and the courts have not ruled on the common factual or legal issues involved. Thus, transfer and coordination will: effectuate an obvious savings of time and resources for the parties and the judicial system; avoid a substantial risk of inconsistent pretrial rulings on discovery and other issues; and not delay the proceedings.

Moreover, the Related Class Actions before the Panel both seek certification of virtually identical classes, thus raising the prospect of overlapping or inconsistent class determinations. The Panel has consistently held that when the risk of overlapping or inconsistent class determinations exists, transfer of actions to a single district for coordinated and/or consolidated pretrial proceedings is necessary in order to eliminate the possibility of inconsistent class rulings. See, e.g, In re Bristol Bay Salmon, Alaska, Fishery Antitrust Litig., 424 F. Supp. 504, 506 (J.P.M.L. 1976); In re Litig. Arising from Termination, supra, 422 F. Supp. at 290; In re Nat'l Airlines, Inc., 399 F. Supp. 1405, 1407 (J.P.M.L. 1974).[8] As such, in the instant case, transfer and coordination and/or consolidation will eliminate a substantial risk of inconsistent class determination.

_____

[6]This is especially true because Defendant Bayer is the only defendant in each of the Related Class Actions.

[7]Discovery conducted in the Related Class Actions will be substantially the same because the defendant in both actions is Bayer, virtually all of the charging allegations are identical, and most witnesses are expected to be the same in both actions.

[8]Transfer and consolidation is proper even where two actions are involved. In re First Nat'l Bank, Sec. Litig., 451 F. Supp. 995 (J.P.M.L 1978).

7

Accordingly, at this early juncture, the transfer and coordination and/or consolidation of the Related Class Actions to the same judge will "surely [be] the most efficient way to resolve the questions of proper class representation and the effect of each of these actions on the other." In re Litig. Arising from Termination, supra, 422 F. Supp. at 290.

B.   Transfer to the Western District of Pennsylvania Is Proper Because the Rosenthal Action Is Pending -- and Defendant Bayer's Headquarters, the Witnesses, and the Documents Are Located -- in in the Western District of Pennsylvania.

The Panel has used various criteria to determine the most appropriate forum for transfer and coordination and/or consolidation. Among the factors the Panel considers are: the location of the parties, witnesses and documents; the convenience of the parties and witnesses; the relative progress which has been achieved in actions pending in various districts; and the expertise of a particular court in the areas of law and procedures which govern the actions. In re New Mexico Natural Gas Antitrust Litig., 482 F. Supp. 333, 337 (J.P.M.L. 1979). As will be shown below, in the instant case, it is clear that the Western District of Pennsylvania is the most appropriate forum for transfer and coordination and/or consolidation.

1.   Location of Parties and Witnesses and Documents

In the instant case, the Western District of Pennsylvania is clearly the appropriate transferee forum because: (i) the Rosenthal Action is currently pending in the Western District of Pennsylvania, and (ii) Defendant Bayer's United States headquarters, the witnesses, and the majority of the documents which bear on the Related Class Actions are located in Pittsburgh in the Western District

8

of Pennsylvania.[9] Consequently, Defendant Bayer and most, if not all, of the witnesses, documents and other evidence which bear on the Related Class Actions are already located, or will be located, in the Western District of Pennsylvania.

Accordingly, it is obvious that transfer to the Western District of Pennsylvania for coordinated and/or consolidated pretrial discovery is convenient and in the best interest of the parties, the witnesses and the judicial system. Such transfer will avoid duplication of effort, the unnecessary expenditure of time and money in concurrent litigations involving common legal and factual issues, and the possibility of inconsistent rulings on many pretrial issues, such as class determination.

## 2. Advancement of Proceedings

The Related Actions were both filed less than two weeks ago and are at the initial stage of litigation.[10] At this early stage, no preliminary orders have been entered; no discovery or initial disclosures have been made; no motions have been submitted; and no substantive rulings on motions to dismiss, motions for summary judgment, class certification or other pretrial matters have been entered. Accordingly, transfer and coordination and/or consolidation to the Western District of Pennsylvania will significantly advance the proceedings by avoiding the duplication of discovery and allowing the common questions of fact and law to proceed before one Court.

---

[9]Bayer's headquarters and principal place of business is located at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.

[10]The Rosenthal Action was filed on August 16, 2001 in the Western District of Pennsylvania and was assigned to Judge Donald J. Lee; the Sparks Action was filed on August 10, 2001 in the Western District of Oklahoma and was assigned to Judge Ralph G. Thompson; the Sternberg Action was filed on August 16, 2001 in the Eastern District of New York and was assigned to Judge John Gleeson.

9

3.    The Experience and Expertise in Managing Complex Litigation of Judge
        Lee and the Court

The Panel has considered the experience and knowledge of transferee judges in its

decision to transfer.  In re Factor VIII or Factor IX Concentrate Blood Products Prod. Liab. Litig.,

853 F. Supp. 454, 455 (J.P.M.L. 1993); In re Silicone Gel Breast Implants Prod. Liab. Litig., 793

F. Supp. 1098 (J.P.M.L. 1992).  The Rosenthal Action pending in the Western District of

Pennsylvania is before experienced Judge Donald J. Lee, who has handled multiple complex

securities class action litigations.  See, e.g., In re Chambers Development Securities Litigation,

848 F. Supp. 602 (W.D. Pa. 1994) and 912 F. Supp. 822 (W.D. Pa. 1995) (MDL Docket No.

982) ("Chambers"); Option Resource Group v. Holtz, et al., 967 F. Supp. 846 (W.D. Pa. 1996).

In addition, Judge Lee has a demonstrated ability in facilitating the settlement of large

class action litigations.  For example, in Chambers, Judge Lee presided over the settlement of the

case in which defendant agreed to pay $95 million in cash, plus interest to the class.  912 F.

Supp. 822 at 828-840.  Finally, the Western District of Pennsylvania has vast experience with

regard to complex multiparty litigation.  See, e.g., In re Flat Glass Antitrust Litig. 191 F.R.D.

472, MDL No. 1200, (W.D. Pa. 1999); In re Crown American Realty Trust Sec. Litig., 1998 U.S.

Dist. LEXIS 17503 (W.D. Pa. 1998); Chambers, 912 F. Supp. at 822.

**IV    CONCLUSION**

For the foregoing reasons, and for those stated in the accompanying Motion, Plaintiff

respectfully requests that the instant Rosenthal Action, the Sparks Action, and the Sternberg

Action be transferred and coordinated and/or consolidated for pretrial proceedings in the Western

District of Pennsylvania, and that all related Baycol drug cases that are filed in or removed to the

10

federal courts be transferred thereto as "tag along actions."

DATED: August **20**, 2001

Respectfully Submitted,

**SCHIFFRIN & BARROWAY, LLP**

By: _Andrew L. Barroway_

Andrew L. Barroway, Esq.
Marc A. Topaz, Esq.
Three Bala Plaza East
Suite 400
Bala Cynwyd, Pennsylvania 19004
(610) 667-7706

**LAW OFFICE OF ALFRED G. YATES JR.**
Alfred G. Yates Jr., Esq.
Gerald L. Rutledge, Esq.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, Pennsylvania 15219
(412) 391-5164

**CAULEY GELLER BOWMAN & COATES**
Paul J. Geller, Esq.
2225 Glades Road
Suite 421A
Boca Raton, Florida 33431
(561) 750-3000

**LAW OFFICES OF BRIAN FELGOISE**
Brian Felgoise, Esq.
230 South Broad Street
Philadelphia, Pennsylvania 19102

Counsel for Plaintiff/Petitioner

11

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 2 1 2001

FILED
CLERK'S OFFICE

A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT PENNSYLVANIA

DIANE ROSENTHAL, on behalf of herself
and all others similarly situated,

                Plaintiff,

        v.

BAYER CORPORATION, A Division of
BAYER AG,

              Defendant.

Civil Action No.: 01 1574

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF AND
DAMAGES

<u>JURY TRIAL DEMANDED</u>

Plaintiff, by and through her attorneys, alleges as follows:

## SUMMARY OF CLAIMS

1.     This is a class action brought on behalf of a nationwide class of all persons who have taken the statin drug Baycol (cerivastatin).  This action seeks, among other relief, the establishment of a medical monitoring program on behalf of all class members to ensure prompt diagnosis and treatment for individuals exposed to the potentially life-threatening side effects and diseases caused by Baycol.

## PARTIES

2.     Plaintiff Diane Rosenthal is a resident of, and citizen of Palm Beach County, Florida.  Plaintiff has been damaged as a result of her Baycol use, and she has suffered an increased susceptibility to injury and disease, including, but not limited to, rhabdomyolysis.

3.     Defendant Bayer Corporation ("Bayer") is a wholly owned subsidiary of Bayer AG, a corporation organized and existing under the laws of Germany.  Bayer's principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, PA 15205.  Upon information and belief, at all times relevant hereto Bayer manufactured, promoted, marketed,

distributed, developed, and sold Baycol in this District and in interstate commerce.

## JURISDICTION AND VENUE

4.    Plaintiff alleges an amount in controversy in excess of $75,000 exclusive of interest and costs, as to herself and each member of the class.

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 as to plaintiff and each member of the class and there is complete diversity of citizenship between the named plaintiff and defendant Bayer.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Bayer conducts business in this District and the contacts of Bayer with this District are sufficient to subject Bayer to personal jurisdiction herein.

## FACTUAL ALLEGATIONS

7.    At all times relevant hereto, Bayer, itself or by the use of others, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn, and otherwise distribute in interstate commerce the product Baycol (cerivastatin).

8.    Baycol, which was initially approved for sale in the United States in 1997, is a member of a class of cholesterol-lowering drugs that are commonly referred to as "statins." Statins lower cholesterol levels by blocking a specific enzyme in the body that is involved in the synthesis of cholesterol.

9.    More than 700,000 Americans have taken Baycol, many in combination with gemfibrozil (Lopid and generics), another lipid-lowering drug.

10.    Rhabdomyolysis is a condition that results in muscle cell breakdown and release of the contents of muscle cells into the bloodstream.  Symptoms of rhabdomyolysis include muscle pain, weakness, tenderness, malaise, fever, dark urine, nausea and vomiting.  The pain

2

may involve specific groups of muscles or may be generalized throughout the body. Most frequently the involved muscle groups are the calves and lower back; however, some patients report no symptoms of muscle injury. In some cases the muscle injury is so severe that patients develop renal failure and other organ failure, which can be fatal.

11.     Cases of fatal rhabdomyolysis in association with the use of Baycol have been reported significantly more frequently than for other approved statins. The United States Food and Drug Administration ("FDA") has received reports of 31 U.S. deaths due to severe rhabdomyolysis associated with the use of Baycol, 12 of which involved concomitant gemfibrozil use.

12.     On or about October 25, 1999, the FDA Division of Drug Marketing, Advertising, and Communications ("DDMAC") wrote to Bayer as follows:

> As part of its routine monitoring program, the [DDMAC] has become aware of promotional material for Baycol (cerivastatin sodium) that is false, lacking in fair balance, or otherwise misleading. Reference is made to a Sales Aid (QO 1068), submitted under cover of Form FDA 2253. The dissemination of this material by Bayer Corporation (Bayer) and/or their agents, violates the Federal Food, Drug, and Cosmetic Act and its implementing regulations. DDMAC requests that the use of the above referenced material and those containing the same or similar violations cease immediately. Specifically, DDMAC has the following objections:
>
> . . .
>
> **Lack of Fair Balance**
>
> The presentation of risk information in this promotional piece lacks fair balance. Promotional materials may be lacking in fair balance, or otherwise misleading if they fail to present information relating to side effects and contraindications with a prominence and readability reasonably comparable to the presentation of efficacy information. In the Sales Aid, Bayer uses several pages, various color patterns, charts, graphs, and the like, to provide emphasis for efficacy information. However, the page seemingly devoted to the presentation of risk information titled, "Baycol offers a proven record of safety" contains mostly additional benefit (safety) claims for Baycol and very little risk information. **In fact, Bayer presents the most important risk information (risk of myopathy, rhabdomyolysis, etc.) with much less emphasis, in the middle of the Sales Aid.**

3

Bayer should immediately cease this, and all other promotional materials for Baycol that contain the same or similar violations. . . .

(Emphasis added).

13.    The concerns that the FDA raised in October of 1999 with respect to the risks associated with Baycol proved to be well-founded.  On August 8, 2001, Bayer announced that it was voluntarily withdrawing Baycol from the market worldwide.  In conjunction therewith, Bayer issued the following warning to healthcare professionals:

Rhabdomyolysis is a serious, potentially fatal, adverse effect of all statin drugs, including Baycol.  It can occur with statin monotherapy, though the risk appears to be increased significantly by concomitant use of gemfibrozil (Lopid).

Our ongoing scrutiny of post-marketing reports of rhabdomyolysis, including fatalities, has revealed an increased reporting rate of rhabdomyolysis with Baycol relative to other statins, especially when gemfibrozil is co-prescribed.  These data also suggest an increased reporting rate of rhabdomyolysis at the 0.8 mg dose of Baycol alone.

Bayer Corporation has already placed a contraindication in the Baycol product prescribing information sheet against co-prescription with gemfibrozil and issued letters to healthcare professionals warning against co-prescription of these two drugs.  Despite these and other actions, Bayer has continued to receive reports of rhabdomyolysis when gemfibrozil is prescribed as a co-medication.  Since the co-prescription of Baycol and gemfibrozil has continued despite communications by Bayer against this practice, the company has decided to take the following voluntary action to prevent further cases of rhabdomyolysis:

**Effective immediately, Bayer has discontinued the marketing and distribution of all dosage strengths of Baycol.  Patients who are currently taking Baycol should have their Baycol discontinued and be switched to an alternative therapy.**

Bayer is taking this action as part of an ongoing commitment to patients and their healthcare providers to ensure patient safety.

(Emphasis original).

14.    On August 8, 2001, Bayer issued the following statement to the press:

• Starting in 1999, Bayer and the FDA have had a shared, ongoing concern over the practice of co-prescribing statins, including Baycol, with gemfibrozil to achieve more aggressive effects on lipid levels.

4

• Relative to other statins, the reporting rate of rhabdomyolysis with Baycol appears to be more pronounced when gemfibrozil is co-prescribed and also with high-dose therapy alone, especially when not used as directed. Rhabdomyolysis is a rare condition characterized by generalized muscle weakness.

• Recently, Bayer concluded that labeling agreed upon with the FDA, as well as communication campaigns conducted by the company during the past two years, have not been effective enough to prevent rhabdomyolysis through the reduction of co-prescribing.

• During recent discussions with the FDA, Bayer proposed the following actions:
  – Suspend marketing and distribution of Baycol
  – Conduct voluntary market withdrawal

• Naturally, we are disappointed to be removing Baycol from the market.

• Nonetheless, we believe this is the responsible course of action for patients and we remain committed to providing innovative and vital therapies to fight cardiovascular disease.

• We realize that this decision will affect many patients on Baycol therapy and we regret the difficulties resulting from this course of action.

15.    On August 9, 2001, *The Los Angeles Times* reported:

Baycol, one of a family of popular cholesterol-lowering drugs, was pulled from the U.S. market by its manufacturer Wednesday because of reports linking the pill to 31 deaths.

According to the manufacturer, Bayer Corp., all of the deaths involved rhabdomyolysis, a painful disorder that destroys muscle tissue. The "vast majority" of those who died had developed kidney failure, a company executive said.

. . .

Dr. Beatrice Alexandra Golomb, a UC San Diego specialist who is conducting a five-year study of two other statin drugs under a grant from the National Institutes of Health, said awareness of rhabdomyolysis is low among both physicians and patients.

"The issue of rhabdomyolysis obviously requires concern because people die from it," Golomb said. "Awareness needs to be enhanced. . . . They're wonderful drugs – in the right people."

FDA records show that when he recommended approval of Baycol on May 29, 1997, an agency medical officer, Dr. David G. Orloff, cited rhabdomyolysis as one of four "potentially serious adverse effects" that concerned him. However, no instances of

5

rhabdomyolysis were reported in Bayer's original clinical studies of the drug among 3,343 patients in the U.S., Japan and China.

According to Dr. Paul MacCarthy, Bayer's vice president of U.S. medical science, the company voluntarily approached the FDA in December 1999 with a proposal to warn against prescribing Baycol in combination with Lopid, a drug that lowers a fatty substance in the blood, because of reports of rhabdomyolysis. Bayer informed doctors and other health care providers of the safety-labeling change in a mass-mailed letter.

In an interview from company offices in West Haven, Conn., MacCarthy said that Bayer again approached the FDA in April of this year after fatal cases of rhabdomyolysis persisted. The labeling was changed, effective in June, to warn doctors not to place patients on the maximum dose of 0.8 milligram without first trying lower doses. An accompanying letter to health care providers warned anew against prescribing the drug with Lopid.

The withdrawal announced Wednesday came just two months after the latest safety-labeling change. MacCarthy said the company found that, despite the explicit warnings, doctors had continued to prescribe Baycol with Lopid and to start patients at the maximum dose.

"Since this involved fatalities, we determined that this [the withdrawal] is the appropriate thing to do in the interest of patient safety," MacCarthy said, adding that Bayer was "likely to close" ongoing clinical studies of Baycol, including experiments assessing the drug's effect on bone density and stroke prevention. The company is withdrawing the drug worldwide except for Japan, where neither the 0.8-milligram dose nor the other drug, Lopid, is used.

But the danger is not limited to the combined use of Baycol and Lopid. Nineteen of the 31 U.S. deaths cited by the FDA involved the use of Baycol without Lopid. And because side effects from prescription drugs are reported voluntarily in the U.S., epidemiologists believe the incidence of harm is consistently underreported.

## CLASS ACTION ALLEGATIONS

16.    Plaintiff brings this action as a class action for equitable, injunctive and other

relief pursuant to Federal Rules of Civil Procedure 23(b)(1) and (b)(2) on behalf of a class

consisting of all persons in the United States or United States Territories who have suffered

injury or may suffer injury as a result of using Baycol designed, manufactured, supplied,

distributed, sold, and/or placed in interstate commerce by Bayer.

6

17.     Plaintiff is a member of the class she seeks to represent.  Upon information and belief, plaintiff estimates that there are hundreds of thousands of individuals in the class, making joinder impracticable.

18.     There are questions of law and fact common to the class, including, but not limited to:

    a.    Whether Baycol causes injury, either alone or in combination with gemfibrozil;

    b.    Whether Baycol is a dangerously defective product;

    c.    Whether Bayer is strictly liable for sales and distribution of a dangerously defective product;

    d.    Whether Bayer negligently designed, manufactured, warned about, promoted, advertised, marketed, and/or distributed Baycol;

    e.    Whether Bayer conducted appropriate testing of Baycol; and

    f.    Whether the serious side effects, injuries and damages from the use of Baycol support the need for medical monitoring of persons who have used the drug.

19.     The named plaintiff asserts claims that are typical of the class because she used Baycol and has incurred or may incur injury and damages as a result thereof.

20.     The named plaintiff will adequately represent the interests of the members of the class and has retained counsel competent and experienced in complex class actions.

21.     Notice can be provided to the class by a combination of published notice and first class mail using techniques and forms of notice similar to those customarily used in drug-related product liability class actions.

22.     Plaintiff seeks, *inter alia*, injunctive relief in the form of a court-ordered and supervised medical monitoring program, funded by Bayer, to assist plaintiff and the class

7

members in the detection and treatment of injuries caused by Baycol.

23.     Class certification is appropriate pursuant to Fed.R.Civ.P. 23(b)(2) because Bayer has acted, or refused to act, on grounds generally applicable to the class, making appropriate the injunctive relief sought herein.

24.     Class certification is also appropriate pursuant to Fed.R.Civ.P. 23(b)(1) because, *inter alia*, the prosecution of separate actions by individual members of the class would create a risk of incompatible standards of conduct and inconsistent or varying adjudications.

## FIRST CLAIM FOR RELIEF
## STRICT PRODUCT LIABILITY
## (FAILURE TO WARN)

25.     Plaintiff incorporates by reference all other paragraphs of this complaint as if set forth fully herein.

26.     Bayer is the manufacturer and/or supplier of Baycol.

27.     The Baycol manufactured and/or supplied by Bayer was and is unaccompanied by proper warnings regarding injuries associated with the use of Baycol, including, but not limited to, rhabdomyolysis, and the severity and duration of such injuries.  The warnings provided by Bayer did not accurately reflect the symptoms, scope or severity of such injuries.

28.     The Baycol manufactured and/or supplied by Bayer was defective due to inadequate post-marketing warning or instruction because after Bayer knew or should have known of the risk of rhabdomyolysis and/or other injury from the use of Baycol, Bayer failed to provide adequate warnings to users or consumers of Baycol and continued to aggressively promote Baycol.

29.     As the producing cause and legal result of the defective condition of Baycol as manufactured and/or supplied by Bayer, plaintiff and the members of the class require reasonable

and necessary health care, attention and services and did and will incur medical, health,

incidental and related expenses.  Plaintiff is informed and believes and thereon alleges that

plaintiff may in the future be required to obtain medical and/or hospital care, attention, and

services in an amount which is presently unknown.

**SECOND CLAIM FOR RELIEF**
**STRICT PRODUCT LIABILITY**
**(DEFECTIVE DESIGN)**

30.    Plaintiff incorporates by reference all other paragraphs of this complaint as if set

forth fully herein.

31.    Bayer is the manufacturer and/or supplier of Baycol.

32.    The Baycol manufactured and/or supplied by Bayer was defective in design or

formulation in that, when it left the hands of Bayer, the foreseeable risks exceeded the benefits

associated with the design or formulation of Baycol.

33.    Alternatively, the Baycol manufactured and/or supplied by Bayer was defective in

design or formulation in that, when it left the hands of Bayer, it was unreasonably dangerous,

more dangerous than an ordinary consumer would expect, and more dangerous than other similar

statin drugs.

34.    Bayer failed to perform adequate testing of Baycol in that adequate testing would

have shown that Baycol, alone or in combination with gemfibrozil, caused serious injuries,

including, but not limited to, rhabdomyolysis.

35.    As the producing cause and legal result of the defective condition of Baycol as

manufactured and/or supplied by Bayer, plaintiff and the members of the class require reasonable

and necessary health care, attention and services and did and will incur medical, health,

incidental and related expenses.  Plaintiff is informed and believes and thereon alleges that

plaintiff may in the future be required to obtain medical and/or hospital care, attention, and

services in an amount which is presently unknown.

### THIRD CLAIM FOR RELIEF
### NEGLIGENCE

36.    Plaintiff incorporates by reference all other paragraphs of this complaint as if set

forth fully herein.

37.    Bayer had a duty to exercise reasonable care in the manufacture, sale, and/or

distribution of Baycol into the stream of interstate commerce, including a duty to ensure that

Baycol did not cause users to suffer from unreasonable, dangerous side effects.

38.    Bayer failed to exercise ordinary care in the manufacture, sale, testing, quality

assurance, quality control, and/or distribution of Baycol into interstate commerce in that Bayer

knew or should have known that Baycol created a high risk of unreasonable, dangerous side

effects, including, but not limited to, rhabdomyolysis.

39.    Bayer was negligent in the design, manufacture, testing, advertising, warning

about, marketing, sale, and/or distribution of Baycol in that Bayer failed to: (i) use due care in

designing and manufacturing Baycol so as to avoid the aforementioned risks to class members

who used Baycol; (ii) accompany Baycol with proper warnings regarding all possible adverse

side effects associated with the use of Baycol and the severity and duration of such adverse

effects; (iii) conduct adequate pre-clinical and clinical testing and post-marketing oversight to

determine the safety of Baycol; (iv) provide adequate training and instruction to medical care

providers for appropriate use of Baycol, alone or in combination with gemfibrozil; (v) warn,

prior to actively encouraging the sale of Baycol, regarding the possibility of developing serious

and potentially fatal side effects, including, but not limited to, rhabdomyolysis, and the need for

10

comprehensive, regular medical monitoring to ensure early discovery of such conditions; (vi)

adequately test and/or warn about the interaction of Baycol with gemfibrozil and the possible

adverse side effects caused by such interaction, including, but not limited to, rhabdomyolysis;

and (vii) otherwise use due care in designing, manufacturing, testing, warning about, advertising,

marketing, and/or distributing Baycol.

40.    Bayer knew or should have known that consumers such as plaintiff and the

members of the class would foreseeably suffer injury as a result of Bayer's failure to exercise due

care as described above.

41.    Due to Bayer's negligence, plaintiff and the members of the class require

reasonable and necessary health care, attention and services and did and will incur medical,

health, incidental and related expenses.  Plaintiff is informed and believes and thereon alleges

that plaintiff may in the future be required to obtain medical and/or hospital care, attention, and

services in an amount which is presently unknown.

## FOURTH CLAIM FOR RELIEF
## BREACH OF EXPRESS WARRANTY

42.    Plaintiff incorporates by reference all other paragraphs of this complaint as if set

forth fully herein.

43.    Bayer expressly warranted that Baycol was safe for use by patients.

44.    Baycol does not conform to Bayer's express representations because Baycol is not

safe and has unreasonably high levels of serious side effects, including life-threatening

rhabdomyolysis.

45.    As a direct and proximate result of the breach of the aforementioned warranties,

plaintiff and the members of the class require reasonable and necessary health care, attention and

11

services and did and will incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and thereon alleges that plaintiff may in the future be required to obtain medical and/or hospital care, attention, and services in an amount which is presently unknown.

## FIFTH CLAIM FOR RELIEF
## BREACH OF IMPLIED WARRANTY

46.     Plaintiff incorporates by reference all other paragraphs of this complaint as if set forth fully herein.

47.     At the time Bayer marketed, sold, and distributed Baycol, Bayer knew of the use for which Baycol was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

48.     Plaintiff and members of the class and their physicians reasonably relied upon the skill and judgment of Bayer as to whether Baycol was of merchantable quality and safe and fit for its intended use.

49.     Contrary to such implied warranty, Baycol was not of merchantable quality or safe or fit for its intended use because Baycol was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used.

50.     As a direct and proximate result of the breach of implied warranty, plaintiff and the members of the class require reasonable and necessary health care, attention and services and did and will incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and thereon alleges that plaintiff may in the future be required to obtain medical and/or hospital care, attention, and services in an amount which is presently unknown.

12

## SIXTH CLAIM FOR RELIEF
## MEDICAL MONITORING

51.     Plaintiff incorporates by reference all other paragraphs of this complaint as if set forth fully herein.

52.     As a direct and proximate result of Bayer's acts and omissions as set forth herein, plaintiff and the members of the class have been exposed to a hazardous substance and, as a result, suffer a significantly increased risk of contracting serious injury or latent disease, including rhabdomyolysis.  This increased risk makes periodic diagnostic and medical examinations reasonable and necessary.  Easily administered, cost-effective monitoring and testing procedures exist which make the early detection and treatment of such injuries or disease possible and beneficial.

53.     The recommended testing and monitoring procedures will be subject to expert testimony at the time of class certification and/or trial.

54.     The increased susceptibility to injuries and irreparable threat to the health of plaintiff and the members of the class resulting from their exposure to Baycol can only be mitigated or addressed by the creation of a comprehensive medical monitoring program that: (i) notifies individuals who used Baycol of the potential harm from Baycol; (ii) funds further studies of the long-term effects of Baycol use; (iii) funds research into possible cures for the detrimental effects of Baycol use; (iv) gathers and forwards to treating physicians information related to the diagnosis and treatment of injuries and diseases which may result from using Baycol; and (v) aids in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of Baycol users.

55.   Plaintiff and the members of the class have no adequate remedy at law in that monetary damages alone cannot compensate for the continuing nature of the harm to them, and a monitoring program which notifies them of possible injury and aids in their diagnosis and treatment can prevent the greater harms which may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur or worsen.

56.   The susceptibility of plaintiff and the members of the class to rhabdomyolysis is the sole result of their use of Baycol.  Early detection and diagnosis of this disease is clinically invaluable because it can prevent and/or significantly delay resulting pain, suffering and/or death.

57.   Without a court-approved and supervised medical monitoring program, Baycol users will not receive prompt medical care which could detect injury and disease and prolong their productive lives, increase prospects for improvement, and minimize disability.

WHEREFORE, plaintiff prays for relief as follows:

A.   Certifying this action as a class action on behalf of the proposed class and designating the named plaintiff as representative of the class and the named plaintiff's counsel as class counsel;

B.   For general damages in a sum in excess of the Jurisdictional minimum of this Court;

C.   Medical, incidental, hospital and service expenses according to proof;

D.   Creating a comprehensive court-supervised medical monitoring program as described herein;

E.   Awarding plaintiff and the members of the class attorneys' and experts' fees, costs, and expenses;

F.   Pre-judgment and post-judgment interest as provided by law;

G.   Full refund of all purchase costs Plaintiff and the members of the class expended in their purchases of Baycol;

H.     Awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


DATED: August 16, 2001

LAW OFFICE OF ALFRED G. YATES JR

By:

Alfred G. Yates Jr, Esq.
PA ID #17419
Gerald L. Rutledge, Esq.
PA ID #62027
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, Pennsylvania 15219
(412) 391-5164

**SCHIFFRIN & BARROWAY, LLP**
Andrew L. Barroway
Marc A. Topaz
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004
(610) 667-7706

Paul J. Geller, Esq.
CAULEY GELLER BOWMAN & COATES, LLP
2225 Glades Road
Suite 421A
Boca Raton. FL 33431
(561) 750-3000

Brian Felgoise, Esq.
THE LAW OFFICES OF BRIAN FELGOISE
230 South Broad
Street, Philadelphia, PA 19102
(215) 735-6810

*Counsel for Plaintiff*

15

**B**

# FILED

AUG 1 0 2001

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| STEVEN L. SPARKS, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> BAYER CORPORATION, a foreign corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) |

**CIV-01-1265-T**

CASE NO. _____

## ORIGINAL COMPLAINT – CLASS ACTION

Steven L. Sparks, personal representative of the Estate of Lilbert O. Sparks, Jr., Deceased, ("Plaintiff"), for his multiple causes of action against the above-named Defendant, alleges and states the following:

### PARTIES

1.    Lilbert O. Sparks, Jr., Deceased, was at the time the events referenced herein occurred, a citizen of the State of Oklahoma.

2.    Lilbert O. Sparks, Jr. died on the 24th day of January, 2001, at Presbyterian Hospital, Oklahoma City, Oklahoma.

3.    Steven L. Sparks, a citizen of the State of Oklahoma, was appointed Personal Representative of the Estate of Lilbert O. Sparks, Jr., Deceased, on or about the 2nd day of March, 2001 in the District Court of Oklahoma County, Oklahoma.

4.    Defendant, Bayer Corporation ("Defendant"), is an Indiana corporation with, on information and belief of Plaintiff, its principal place of business in Indiana, and is authorized to

4.    Defendant, Bayer Corporation ("Defendant"), is an Indiana corporation with, on information and belief of Plaintiff, its principal place of business in Indiana, and is authorized to conduct business and is in good standing in the State of Oklahoma. Defendant is engaged in the manufacture of certain pharmaceuticals for distribution and sale in the State of Oklahoma.

## JURISDICTION AND VENUE

5.    Jurisdiction in this matter is established through Title 28 of the United States Code, Section 1332. There is complete diversity of citizenship between the Plaintiff and Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney's fees.

6.    Venue is proper in this Court pursuant to Title 28 of the United States Code, Section 1391.

7.    Plaintiff is the proper party to bring suit in this matter pursuant to 12 Okla. Stat. (2001 Supp.) §1053.

## STATEMENT OF FACTS

8.    As a predicate to the claims herein, Defendant manufactured and distributed and/or offered for sale or caused to be sold in the State of Oklahoma, a certain cerivastatin sodium medication known as "Baycol" for the purpose of, *inter alia*, being used and administered by physicians and other health care professionals to lower plasma cholesterol levels in patients. Plaintiff's Decedent was administered Baycol for its stated purposes and subsequently died as a direct result thereof.

## CLASS ALLEGATIONS

9.    Plaintiff brings this action as a class action under rule 23 of the Federal Rules of Civil Procedure on behalf of the class of all persons or entities who purchases or otherwise used Baycol between the date this Complaint is filed and at least two (2) previous calendar years, inclusive.

2

10.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds of members of the Class located throughout Oklahoma and the United States.  Class members may be identified from records maintained by Defendants and may be easily notified of the pendency of this action, using a form of notice similar to that customarily used in other class actions.

11.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class are similarly affected by Defendants' product.

12.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class litigation.

13.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.      whether the product was properly tested prior to distribution and sale by the Defendants;

b.      whether the Defendants' product was put through tests which proved it was dangerous prior to distribution and sale by the Defendants; and

c.      to what extent members of the Class have sustained damages as a result of using this dangerous product and the proper measure of damages.

14.     A class action is superior to all other available methods of the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Further, as the damages suffered by

3

individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in manager of this suit as a class action.

## COUNT I.
### Products Liability

15.  Plaintiff restates and realleges paragraphs 1 through 14 of this Complaint and in addition, states matters as set forth below:

16.  The subject medication was prescribed to Plaintiff's Decedent on or about the 6th day of December, 2000. On information and belief of Plaintiff, Plaintiff's Decedent began taking the prescribed Baycol within 24 hours of the prescription date.

17.  Defendant warranted that said medication was safe for the ordinary purposes for which said medication was manufactured and sold; to wit: for use as a plasma cholesterol lowering agent, notwithstanding that Defendant was in possession of information that said medication had caused serious injuries and death to individuals who had taken it as prescribed.

18.  Plaintiff was a person who used and was reasonably expected to use said medication.

19.  The subject medication was defective at the time of its manufacture, distribution and sale, and said medication was unreasonably dangerous to a person taking the medication pursuant to a physician or other health care professional's orders.

20.  Additionally, Defendant failed to adequately warn physicians, other health care professionals and consumers of the dangers of taking said medication and failed to make public complaints and incidents involving serious injury or death to others with respect to said medication. The injuries and

4

ultimate death suffered by Plaintiff's Decedent was a direct and proximate cause of the acts of omission or commission on the part of Defendant.

21.    As a result of the actions and conduct of Defendant, Defendant is liable to Plaintiff for the damages arising from the manufacture, distribution and sale of said defective product.

22.    The full extent of Plaintiff's injuries caused by said acts of Defendant exceed the sum of $75,000.00, exclusive of interest and costs for which Plaintiff is entitled to recover, together with a reasonable attorney's fees.

## COUNT II.
## NEGLIGENCE

23.    Plaintiff restates and realleges paragraphs 1 through 22 of this Complaint and in addition, states matters as set forth below:

24.    Defendant owed a duty to Plaintiff's Decedent in the manufacture, distribution and/or sale of the medication to be prescribed by healthcare professionals for the purpose for which it was intended.

25.    Defendant breached said duty by negligently supervising and/or controlling the formula and manufacturing process of said medication, and in failing to adequately warn the medical profession and the public as to the inherent dangers of prescribing and taking said medication.

26.    Moreover, Defendant failed to properly and promptly act by removing the subject Baycol from the market after it became known to Defendant that said medication could cause serious injury and death.

27.    The injuries and death of Plaintiff's Decedent were a direct and proximate result of the negligent conduct of Defendant, Bayer Corporation.

F:\Baycol\complaint-cz.wpd

28.    As a direct and proximate result of the negligence of Defendant, Plaintiff has suffered injuries and damages in excess of $75,000.00, exclusive of interest and costs, and a reasonable attorney's fees, which Plaintiff is entitled to recover from Defendant.

## COUNT III.
## PUNITIVE DAMAGES

29.    Plaintiff restates and realleges paragraphs 1 through 28 of this Complaint and in addition, states matters as set forth below:

30.    Defendant's conduct and actions, the awareness of the Defendant of the serious, immediate and life-threatening hazard of said medication, and the failure by Defendant to fully disclose and publicize the dangers of said medication, subject Defendant to exemplary damages to the fullest extent of the law.

31.    As a direct and proximate result of the conduct of Defendant and the imminent hazard posed to the general public as a result thereof, Plaintiff should be awarded exemplary damages in excess of $75,000.00 and in the maximum amount allowed by law.

## COMBINED PRAYER

**WHEREFORE,** Plaintiff prays for judgment against the Defendant on the claims set forth above, and that Plaintiff be awarded actual and compensatory damages exceeding $75,000.00; consequential damages in excess of $75,000.00; exemplary damages in the maximum amounts allowed by law and in excess of $75,000.00; actual damages for all losses sustained under the applicable law, as well as damages for mental anguish, interest, costs and attorney fees; and for such other and further relief as may be deemed just and equitable by the Court.

6

I:\Bayer\complaint-ea.wpd

Plaintiff demands a jury trial.

Respectfully submitted,

Don S. Strong, OBA No. 13874
G. Stephen Martin, II, OBA No. 17091

— Of the Firm —

**STRONG, MARTIN & ASSOCIATES, P.L.L.C.**
2518 First National Center
120 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 604.7500
Facsimile: (405) 604.7503

— and —

William B. Federman, OBA #2853
Stuart W. Emmons, OBA #12281
FEDERMAN & SHERWOOD
120 N. Robinson, Suite 2720
Oklahoma City, OK 73102
405-235-1560/FAX: 405-239-2112

— and —

2926 Maple Avenue, Suite 200
Dallas, TX 75201
214-696-1100/FAX: 214-740-0112
**ATTORNEYS FOR PLAINTIFF**

7

A:\complaint-ca.wpd

# FILED

AUG 1 0 2001

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STEVEN L. SPARKS, On Behalf of Himself and All
Others Similarly Situated,

        Plaintiff,

vs.

BAYER CORPORATION, a foreign corporation,

        Defendant.

CIV-01-1265-T

CASE NO. _____

## ORIGINAL COMPLAINT – CLASS ACTION

Steven L. Sparks, personal representative of the Estate of Lilbert O. Sparks, Jr., Deceased, ("Plaintiff"), for his multiple causes of action against the above-named Defendant, alleges and states the following:

## PARTIES

1.    Lilbert O. Sparks, Jr., Deceased, was at the time the events referenced herein occurred, a citizen of the State of Oklahoma.

2.    Lilbert O. Sparks, Jr. died on the 24th day of January, 2001, at Presbyterian Hospital, Oklahoma City, Oklahoma.

3.    Steven L. Sparks, a citizen of the State of Oklahoma, was appointed Personal Representative of the Estate of Lilbert O. Sparks, Jr., Deceased, on or about the 2nd day of March, 2001 in the District Court of Oklahoma County, Oklahoma.

4.    Defendant, Bayer Corporation ("Defendant"), is an Indiana corporation with, on information and belief of Plaintiff, its principal place of business in Indiana, and is authorized to

1

4.      Defendant, Bayer Corporation ("Defendant"), is an Indiana corporation with, on information and belief of Plaintiff, its principal place of business in Indiana, and is authorized to conduct business and is in good standing in the State of Oklahoma. Defendant is engaged in the manufacture of certain pharmaceuticals for distribution and sale in the State of Oklahoma.

## JURISDICTION AND VENUE

5.      Jurisdiction in this matter is established through Title 28 of the United States Code, Section 1332. There is complete diversity of citizenship between the Plaintiff and Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney's fees.

6.      Venue is proper in this Court pursuant to Title 28 of the United States Code, Section 1391.

7.      Plaintiff is the proper party to bring suit in this matter pursuant to 12 Okla. Stat. (2001 Supp.) §1053.

## STATEMENT OF FACTS

8.      As a predicate to the claims herein, Defendant manufactured and distributed and/or offered for sale or caused to be sold in the State of Oklahoma, a certain cerivastatin sodium medication known as "Baycol" for the purpose of, *inter alia*, being used and administered by physicians and other health care professionals to lower plasma cholesterol levels in patients. Plaintiff's Decedent was administered Baycol for its stated purposes and subsequently died as a direct result thereof.

## CLASS ALLEGATIONS

9.      Plaintiff brings this action as a class action under rule 23 of the Federal Rules of Civil Procedure on behalf of the class of all persons or entities who purchases or otherwise used Baycol between the date this Complaint is filed and at least two (2) previous calendar years, inclusive.

I:\Baycol\complaint-ca.wpd

10.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds of members of the Class located throughout Oklahoma and the United States.  Class members may be identified from records maintained by Defendants and may be easily notified of the pendency of this action, using a form of notice similar to that customarily used in other class actions.

11.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class are similarly affected by Defendants' product.

12.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class litigation.

13.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.     whether the product was properly tested prior to distribution and sale by the Defendants;

b.     whether the Defendants' product was put through tests which proved it was dangerous prior to distribution and sale by the Defendants; and

c.     to what extent members of the Class have sustained damages as a result of using this dangerous product and the proper measure of damages.

14.     A class action is superior to all other available methods of the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Further, as the damages suffered by

3

individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in manager of this suit as a class action.

## COUNT I.
### Products Liability

15.     Plaintiff restates and realleges paragraphs 1 through 14 of this Complaint and in addition, states matters as set forth below:

16.     The subject medication was prescribed to Plaintiff's Decedent on or about the 6th day of December, 2000. On information and belief of Plaintiff, Plaintiff's Decedent began taking the prescribed Baycol within 24 hours of the prescription date.

17.     Defendant warranted that said medication was safe for the ordinary purposes for which said medication was manufactured and sold; to wit: for use as a plasma cholesterol lowering agent, notwithstanding that Defendant was in possession of information that said medication had caused serious injuries and death to individuals who had taken it as prescribed.

18.     Plaintiff was a person who used and was reasonably expected to use said medication.

19.     The subject medication was defective at the time of its manufacture, distribution and sale, and said medication was unreasonably dangerous to a person taking the medication pursuant to a physician or other health care professional's orders.

20.     Additionally, Defendant failed to adequately warn physicians, other health care professionals and consumers of the dangers of taking said medication and failed to make public complaints and incidents involving serious injury or death to others with respect to said medication. The injuries and

4

ultimate death suffered by Plaintiff's Decedent was a direct and proximate cause of the acts of omission or commission on the part of Defendant.

21.     As a result of the actions and conduct of Defendant, Defendant is liable to Plaintiff for the damages arising from the manufacture, distribution and sale of said defective product.

22.     The full extent of Plaintiff's injuries caused by said acts of Defendant exceed the sum of $75,000.00, exclusive of interest and costs for which Plaintiff is entitled to recover, together with a reasonable attorney's fees.

## COUNT II.
## NEGLIGENCE

23.     Plaintiff restates and realleges paragraphs 1 through 22 of this Complaint and in addition, states matters as set forth below:

24.     Defendant owed a duty to Plaintiff's Decedent in the manufacture, distribution and/or sale of the medication to be prescribed by healthcare professionals for the purpose for which it was intended.

25.     Defendant breached said duty by negligently supervising and/or controlling the formula and manufacturing process of said medication, and in failing to adequately warn the medical profession and the public as to the inherent dangers of prescribing and taking said medication.

26.     Moreover, Defendant failed to properly and promptly act by removing the subject Baycol from the market after it became known to Defendant that said medication could cause serious injury and death.

27.     The injuries and death of Plaintiff's Decedent were a direct and proximate result of the negligent conduct of Defendant, Bayer Corporation.

5

F:\Baycol\complaint-ca.wpd

28.     As a direct and proximate result of the negligence of Defendant, Plaintiff has suffered injuries and damages in excess of $75,000.00, exclusive of interest and costs, and a reasonable attorney's fees, which Plaintiff is entitled to recover from Defendant.

### COUNT III.
### PUNITIVE DAMAGES

29.     Plaintiff restates and realleges paragraphs 1 through 28 of this Complaint and in addition, states matters as set forth below:

30.     Defendant's conduct and actions, the awareness of the Defendant of the serious, immediate and life-threatening hazard of said medication, and the failure by Defendant to fully disclose and publicize the dangers of said medication, subject Defendant to exemplary damages to the fullest extent of the law.

31.     As a direct and proximate result of the conduct of Defendant and the imminent hazard posed to the general public as a result thereof, Plaintiff should be awarded exemplary damages in excess of $75,000.00 and in the maximum amount allowed by law.

### COMBINED PRAYER

WHEREFORE, Plaintiff prays for judgment against the Defendant on the claims set forth above, and that Plaintiff be awarded actual and compensatory damages exceeding $75,000.00; consequential damages in excess of $75,000.00; exemplary damages in the maximum amounts allowed by law and in excess of $75,000.00; actual damages for all losses sustained under the applicable law, as well as damages for mental anguish, interest, costs and attorney fees; and for such other and further relief as may be deemed just and equitable by the Court.

6

Plaintiff demands a jury trial.

Respectfully submitted,

Don S. Strong, OBA No. 13874
G. Stephen Martin, II, OBA No. 17091

— Of the Firm —

**STRONG, MARTIN & ASSOCIATES, P.L.L.C.**
2518 First National Center
120 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 604.7500
Facsimile: (405) 604.7503

— and —

William B. Federman, OBA #2853
Stuart W. Emmons, OBA #12281
FEDERMAN & SHERWOOD
120 N. Robinson, Suite 2720
Oklahoma City, OK 73102
405-235-1560/FAX: 405-239-2112

— and —

2926 Maple Avenue, Suite 200
Dallas, TX 75201
214-696-1100/FAX: 214-740-0112
**ATTORNEYS FOR PLAINTIFF**

7

C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EVELYN STERNBERG, On Behalf of Herself and All Others Similarly Situated, | Civil Action No: _____ |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | PLAINTIFF DEMANDS A JURY TRIAL |
| BAYER, A.G. and BAYER CORPORATION, | |
| Defendants. | |

CV 01 5557

GLEESON, J

MANN, M.J.

Plaintiff, by her attorneys, alleges upon personal knowledge as to herself and upon information and belief as to the other allegations of this Complaint, as follows:

## SUMMARY OF THE ACTION

1.   This is a class action brought by plaintiff on behalf of herself and all other individuals in the United States who purchased and/or ingested Baycol, a drug manufactured, marketed and sold by defendants for the purpose of lowering the cholesterol level in a consumer's bloodstream (the "Class").

2.   An extraordinary incidence of serious adverse reactions, including death, have been associated with the use of Baycol.  This action seeks equitable relief, including medical monitoring on behalf of all Class members, to assure the early diagnosis and treatment of individuals exposed to adverse reactions associated with Baycol use and monetary damages, including but not limited to, a full refund of all costs associated with the purchase and/or use of Baycol.  Plaintiff also seeks revised patient warnings and

emergency notice to the Class so that Class members will be apprised of the potentially life-threatening reactions which have been associated with use of Baycol.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332.  The amount in controversy exceeds $75,000, exclusive of interest and costs, because the Class has a common and undivided interest in obtaining monetary damages and injunctive/equitable relief including medical monitoring, emergency notice and revised drug warnings, far exceeding $75,000 in value, and there is complete diversity of citizenship between the named plaintiff and the defendants.

4.  Venue is properly laid in this District.  Plaintiff resides in, purchased and took the relevant product in this District.

## THE PARTIES

5.  Plaintiff, Evelyn Sternberg, is a resident of the State of New York.  Plaintiff purchased and medicated with Baycol beginning on or about July 6, 2001, pursuant to a physician's prescription.  Shortly thereafter, plaintiff suffered from Rhabdomyolysis attributable to Baycol use and required hospitalization.

6.  (a)    Defendant Bayer A.G. is a German company engaged in, among other businesses, the manufacture, marketing and sale of pharmaceutical products in the United States and throughout the world.

(b)    Defendant Bayer Corporation, a corporation organized and existing under the laws of the State of Pennsylvania, is a wholly owned subsidiary of Bayer A.G., through which Bayer A.G. runs its United States operations.  Bayer Corporation has offices and facilities throughout the United States with its headquarters located in

2

Pittsburgh, Pennsylvania. Defendants Bayer A.G. and Bayer Corporation shall be collectively referred to herein as "defendants" or "Bayer."

## FACTUAL BACKGROUND

7.  On August 8, 2001, the Food and Drug Administration ("FDA") announced that Bayer was voluntarily withdrawing Baycol (cerivastatin) from the United States market due to reports of sometimes fatal rhabdomyolysis, a severe adverse reaction from this product.

8.  Rhabdomyolysis is a condition that results in muscle cell breakdown and release of the contents of muscle cells into the bloodstream. Symptoms of rhabdomyolysis may include muscle pain, weakness, tenderness, malaise, fever, dark urine, nausea and vomiting. The pain may involve specific groups of muscles or may be generalized throughout the body. Most frequently the involved muscle groups are the calves and lower back. In rare cases the muscle injury is so severe that patients develop renal failure and other organ failure, which can be fatal.

9.  The FDA approved Baycol in 1997. The drug is a member of a class of cholesterol lowering drugs that are commonly referred to as "statins." Statins lower cholesterol levels by blocking a specific enzyme in the body that is involved in the synthesis of cholesterol. According to the FDA, all statins have been associated with very rare reports of rhabdomyolysis. However, cases of fatal rhabdomyolysis in association with the use of Baycol have been reported significantly more frequently than has been the case with other approved statins. This is particularly so when Baycol is used at "higher doses," when used by elderly patients, and when used in combination with gemfibrozil (LOPID and generics) – another lipid-lowering drug. The FDA received

3

reports of at least thirty-one deaths in the United States due to severe rhabdomyolysis associated with use of Baycol. Twelve of those deaths involved concomitant use of gemfribrozil. There are reports of many more deaths outside of the United States associated with Baycol use.

10. Despite knowledge of the dangerous propensities of Baycol, defendants continuously and deliberately concealed from and misrepresented to the consuming public the real facts concerning safety and efficacy of Baycol. In fact, according to a report in the August 13, 2001 issue of the German magazine *Der Spiegel*, in 1995 – one year and a half before Bayer introduced Baycol to the market – Bayer learned that Baycol might have caused the death of a patient who had taken Baycol.

11. The FDA has now recommended that patients who are taking Baycol consult with physicians about switching to alternate medications to control their cholesterol levels.

## CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action as a class action for monetary damages, equitable, injunctive and declaratory relief pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of a Class consisting of all persons who purchased and/or ingested the drug Baycol.

13. Plaintiff is a member of the Class she seeks to represent. The members of the Class are so numerous that joinder of all members is impracticable.

14. The issues in the action are common to all members of the Class. Each purchaser of Baycol has been affected in the same manner by defendants' practice of

4

concealing, suppressing and/or omitting the serious risk of life-threatening and/or serious adverse reactions associated with the use of Baycol.

15. There are questions of law and fact common to the Class including, but not limited to:

a.    Whether defendants designed, manufactured and/or marketed dangerously defective products for which they are strictly liable;

b.    Whether defendants negligently designed, manufactured, labeled and/or marketed the relevant products;

c.    Whether use of Baycol causes Rhabdomyolysis and/or other serious adverse reactions or diseases;

d.    Whether the Class members' increased risk of sustaining Rhabdomyolysis or other injury makes periodic diagnostic and medical examinations (medical monitoring) effective and reasonably necessary;

e.    Whether defendants conducted, either directly or indirectly, appropriate pre-release testing of the relevant product;

f.    Whether defendants failed to adequately warn of the adverse effects of the relevant product;

g.    Whether revised patient warnings and emergency notice should be disseminated to Class members;

h.    Whether the equitable, injunctive and declaratory relief requested herein should be granted;

i.    Whether defendants' allegedly knowing or intentional concealment, suppression, or omission of material information in connection with the sale of the

5

relevant products constitutes fraudulent and/or deceptive acts and practices within the meaning of New York General Business Law §349, Consumer Protection from Deceptive Acts and Practices, ("GBL §349"); and

j.     Whether the Class has been injured by virtue of defendants' violations of GBL §349.

16. The claims of the named plaintiff are typical of the claims of the Class in that the named plaintiff and the members of the Class used the relevant product which was designed, manufactured, supplied, distributed, sold and/or placed in the stream of interstate commerce by defendants, and as a result now suffer an increased risk of harm for which medical monitoring relief is appropriate.

17. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in complex class actions and products liability litigation. Plaintiff's interests are coincident with, and not antagonistic to, those of the Class members.

18. Notice can be provided to Class members by a combination of published notice and first class mail using techniques and forms of notice similar to those customarily used in drug-related product liability, personal injury and fraud class actions.

19. Plaintiff seeks monetary damages, including but not limited to the cost of purchasing the relevant products.

20. Plaintiffs also seek injunctive/equitable relief in the form of a court-ordered and supervised medical monitoring program, funded by defendants, to assist plaintiff and the Class members in the detection and treatment of adverse reaction associated with Baycol use. Plaintiffs also seek additional equitable relief in the form of revised drug warnings

and emergency notice to more adequately advise Class members and potential users of the relevant products of adverse reactions posed by use of the relevant product.

21. Class certification is appropriate under Fed. R. Civ. P. Rule 23(b)(1) because, inter alia, the prosecution of separate actions by individual members of the Class would create a risk of incompatible standards of conduct for defendants and inconsistent or varying adjudications for all parties.

22. Class certification is also appropriate pursuant to Fed. R. Civ. P. Rule 23(b)(2) because defendants have acted, or refused to act, on grounds generally applicable to the Class, making appropriate preliminary and final injunctive and declaratory relief consisting of medical monitoring, revised patient warnings and emergency notice with respect to plaintiff and the Class members.

**FIRST CLAIM FOR RELIEF
STRICT PRODUCT LIABILITY
(FAILURE TO WARN)**

23. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth here and further alleges as follows:

24. Defendants are manufacturers and/or suppliers of the relevant product.

25. The relevant product manufactured and/or supplied by defendants were not and are not accompanied by proper warnings regarding possible Rhabdomyolysis or other injuries associated with the use of the relevant product. The warnings given did not accurately reflect the risks, incidents, symptoms, scope or severity of such injuries.

26. Defendants failed to perform adequate testing in that adequate testing would have shown that the relevant product, used individually and/or in any combination thereof, posed a serious risk of Rhabdomyolysis or other injuries with respect to which

7

full, adequate and proper warnings should have been made, both with respect to the use of the drug, individually and with respect to any combination use of Baycol with other drugs.

27. The relevant product manufactured and/or supplied by defendants were defective due to inadequate post-marketing warning or instruction because, after the defendants knew or should have known of the risk of Rhabdomyolysis or other injury from the relevant product, they failed to provide adequate warnings to users or consumers of the product.

28. As the producing cause and legal result of the defective condition of the relevant product as manufactured and/or supplied by defendants, and as a direct and legal result of the negligence, carelessness, other wrongdoing and actions(s) of defendants described herein, plaintiffs have suffered a significantly increased risk of Rhabdomyolysis or other adverse reaction for which medical monitoring, in the form requested herein, is necessary, appropriate and beneficial.

## SECOND CLAIM FOR RELIEF
## STRICT PRODUCT LIBILITY

29. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth here and further alleges as follows:

30. Defendants are manufacturers and/or suppliers of the relevant product.

31. The relevant product manufactured and/or supplied by defendants was defective in design or formulation in that, when it left the hands of the defendants, the foreseeable risks exceeded the benefits associated with its design or formulation.

8

32. Alternatively, the relevant product manufactured and/or supplied by defendants was defective in design or formulation, in that, when it left the hands of the defendants, it was unreasonably dangerous, more dangerous than an ordinary consumer would expect.

33. As a direct and proximate result of the defective and unreasonably dangerous condition of the relevant product, as manufactured and/or supplied by defendants, and as a direct result of the negligence, carelessness, other wrongdoing and/or action(s) of defendants described herein, plaintiff and the Class have suffered a significantly increased risk of sustaining Rhabdomyolysis and/or other disease for which the medical monitoring relief sought below is necessary, appropriate and beneficial.

### THIRD CLAIM FOR RELIEF
### NEGLIGENCE

34. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth here and further alleges as follows:

35. Defendants had a duty to exercise reasonable care in the manufacture, sale and/or distribution of the relevant product into the stream of commerce, including a duty to assure that the product did not cause users to suffer from unreasonable, dangerous side effects when used alone or in combination.

36. Defendants failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, and/or distribution of the relevant products into interstate commerce in that defendants knew or should have known that the relevant product created a high risk of unreasonable, dangerous side effects including Rhabdomyolysis which can cause extraordinary suffering and death.

37. Defendants were negligent in the design, manufacture, testing, advertising, warning, marketing and/or sale of the relevant product in that they:

32. Alternatively, the relevant product manufactured and/or supplied by defendants was defective in design or formulation, in that, when it left the hands of the defendants, it was unreasonably dangerous, more dangerous than an ordinary consumer would expect.

33. As a direct and proximate result of the defective and unreasonably dangerous condition of the relevant product, as manufactured and/or supplied by defendants, and as a direct result of the negligence, carelessness, other wrongdoing and/or action(s) of defendants described herein, plaintiff and the Class have suffered a significantly increased risk of sustaining Rhabdomyolysis and/or other disease for which the medical monitoring relief sought below is necessary, appropriate and beneficial.

## THIRD CLAIM FOR RELIEF
## NEGLIGENCE

34. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth here and further alleges as follows:

35. Defendants had a duty to exercise reasonable care in the manufacture, sale and/or distribution of the relevant product into the stream of commerce, including a duty to assure that the product did not cause users to suffer from unreasonable, dangerous side effects when used alone or in combination.

36. Defendants failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, and/or distribution of the relevant products into interstate commerce in that defendants knew or should have known that the relevant product created a high risk of unreasonable, dangerous side effects including Rhabdomyolysis which can cause extraordinary suffering and death.

37. Defendants were negligent in the design, manufacture, testing, advertising, warning, marketing and/or sale of the relevant product in that they:

9

a.    Failed to use due care in designing and manufacturing the relevant product so as to avoid the aforementioned risks to individuals;

b.    Failed to accompany their product with proper warnings regarding all possible adverse effects associated with the use of the relevant product alone or in combination;

c.    Failed to conduct adequate pro-clinical and clinical testing and post-marketing surveillance to determine the safety of the relevant product;

d.    Failed to provide adequate training and instruction to medical care providers for appropriate use of the relevant product either individually or in combination;

e.    Failed to warn plaintiff and the Class prior to actively encouraging the sale of the relevant product either directly or indirectly, orally or in writing, about the following:  (1) the need for comprehensive, regular medical monitoring to ensure early discovery of potentially fatal side effects; and/or (2) the possibility of becoming disabled as a result of the use of the relevant product, and/or (3) the possibility of requiring hospitalization as a result of adverse reactions associated with use of Baycol.

f.    Failed to adequately test and/or warn about the reaction or interaction of the relevant product including, without limitation, the possible adverse side effects caused by the reaction or interaction between the drugs as a result of combination use;

g.    Failed to warn that the risks associated with the relevant product would exceed the risks of other comparable drugs; and

h.    Were otherwise careless or negligent.

38. Despite the fact that defendants knew or should have known that the relevant product caused unreasonable, dangerous side effects defendants continued to market the relevant product to consumers including plaintiff despite the availability of safer alternative drugs.

39. Defendants knew or should have known that consumers such as plaintiff and the Class would foreseeably suffer injury as a result of defendants' failure to exercise ordinary care as described above.

40. Defendants' negligence was a proximate cause of plaintiff's and the Class' increased risk of harm as previously set forth herein.

## FOURTH CLAIM FOR RELIEF
## BREACH OF IMPLIED WARRANTY

41. Plaintiff incorporates by reference all paragraphs of this complaint as if fully set forth here and further alleges as follows:

42. At the time defendants marketed, sold and/or distributed the relevant products for use by plaintiff and the Class, defendants knew the use for which the relevant product was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

43. Plaintiff, the Class and their physicians reasonably relied upon the skill and judgment of defendants as to whether the relevant products and combination use thereof were of merchantable quality and safe and fit for its intended use.

44. Contrary to such implied warranty, the relevant product was not of merchantable quality or safe or fit for their intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used as described above.

45. As a direct and proximate result of the defendants' breaches of implied warranty, plaintiff and the Class suffered an increased risk of harm as previously described above.

## FIFTH CLAIM FOR RELIEF
## VIOLATION OF GBL §349

46. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth here and further alleges as follows:

47. Defendants omitted, suppressed or concealed the danger posed by the relevant product in order to increase sales.

48. The defendants knew or should have known, and would have known had appropriate testing been done, that use of the relevant product caused serious and potentially life threatening adverse effects including Rhabdomyolysis.

49. The widespread misuse of the relevant product is the direct result of defendants' calculated silence implicitly and explicitly endorsing the drug for the profess purpose of lowering cholesterol levels, despite the fact that the defendants either knew or should have known that use of the relevant product had been linked with serious, irreversible and sometimes fatal illnesses.

50. Despite defendants' knowledge of the growing public acceptance of misinformation and misrepresentations regarding both the safety and efficacy of the use of the relevant product, defendants engaged in and maintained a calculated silence regarding their use because the prospect of future profits outweighed health and safety issues to the detriment of the public, the plaintiff and the Class herein.

51. The defendants purposefully downplayed the adverse effects or provided misinformation about adverse reactions and potential harms from the use of the relevant

product, and succeeded in persuading large segments of the medical community to prescribe the drug despite a lack of efficacy and the significant dangers set forth herein.

52. The defendants had a clear post-manufacture duty to warn which arose when they knew, or with reasonable care should have known, that the relevant product was unsafe.

53. Defendants' knowing omission, suppression and/or concealment of material facts in connection with the marketing and/or distribution of the relevant products constitutes deceptive acts or practices in violation of GBL §349.

54. Neither plaintiff nor the Class could have discovered the truth about the relevant product through a reasonable inquiry or inspection, particularly since plaintiff and the Class relied upon defendants' silence as a representation that there were no serious, let alone deadly, risk associated with use of the relevant product.

55. The concealed, suppressed, omitted and/or misrepresented information was precisely the type of information that, had plaintiff and the Class been aware, would have caused them to act differently.  Plaintiff and the Class, however, were at the defendants' mercy to the extent defendants controlled the type of information available to the public about the relevant products.

56. Defendants' violations of GBL §349 are the direct or proximate cause of plaintiff's and the Class' significantly increased risk of sustaining Rhabdomyolysis or other serious adverse reactions and/or death.

57. As a result of these violations of GBL §349, plaintiff and the Class have suffered ascertainable losses, including all costs incurred by plaintiff and the Class in purchasing the relevant product.

58. As a result of these violations of GBL §349, defendants are liable to plaintiff and the Class for treble their actual damages. GBL §349(h)

59. As a further result of defendants' violations of GBL §349, defendants are liable to plaintiffs and the Class for their reasonable attorneys' fees, filing fees and costs. GBL §349(h).

## CLASS ACTION INJUNCTIVE AND EQUITABLE RELIEF

### 1.   MEDICAL MONITORING

60. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth here and further alleges as follows on behalf of herself and all others similarly situated:

61. As a direct and proximate result of defendants' acts, omissions, and conduct as set forth above, plaintiff and each Class member has been exposed to a hazardous substance and, as a result, suffer a significantly increased risk of contracting serious injury or disease, including Rhabdomyolysis. This increased risk makes periodic diagnostic and medical examinations reasonable and necessary.

62. Early detection and diagnosis of these diseases is clinically invaluable since it can prevent, reduce and/or significantly delay resulting discomfort, suffering and/or death.

63. Easily administered, cost-effective monitoring and testing procedures exist which make the early detection and treatment of such injuries or disease possible and beneficial. Early diagnosis of these diseases and conditions will allow prompt and effective treatment, which will reduce the risk of morbidity and mortality which these

14

patients would suffer if treatment was delayed until their conditions became overtly symptomatic.

64. The recommended testing procedures will be subject to expert testimony at the time of Class certification and/or trial;

65. Many individuals at risk for Rhabdomyolysis cannot afford to get appropriate testing and/or have not been advised and do not otherwise know of the need to undergo testing. Class members also need to be advised of the availability of non-invasive testing as a diagnostic tool and treatment which will prevent even graver injury.

66. The increased susceptibility to injuries and irreparable threat to the health of plaintiff and other Class members resulting from their exposure to the relevant product can only be mitigated or addressed by the creation of a comprehensive medical monitoring program including:

a. Notifying individuals who use or used the relevant product;

b. Funding further studies of the long term effects of using the relevant product;

c. Funding research into possible cures for the detrimental effects of using the relevant product;

d. Gathering and forwarding to treating physicians information related to the diagnosis and treatment of injuries which may result from using the relevant product; and

e. Aiding in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of the relevant product users.

67. The relevant product users have no adequate remedy at law in that monetary damages alone do not compensate for the continuing nature of the harm to them. A

15

monitoring program which notifies them of possible injury and aids in their treatment can prevent the greater harms which may not occur immediately and which may be preventable is proper research is conducted and the health risks are diagnosed and treated before they occur or become worse.

68. Without a court-approved medical monitoring program, the relevant product users will not receive prompt medical care which could detect and prolong their productive lives, increase prospects for improvement and minimize disability.

2. **UPDATED PATIENT WARNIGNS AND EMERGENCY NOTICE**

69. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth here and further alleges as follows:

70. Defendants have a continuing duty to warn plaintiff, the Class and the public of all potential risks and dangers of which they become or should become aware. As a proximate result of the defendants' conduct described herein, plaintiffs, on behalf of themselves and all others similarly situated, are entitled to damages and/or equitable relief in the form of revised drug warnings, or equivalent remedial and corrective action, to accurately reflect the known adverse side effects of the relevant products, at defendants' expense.

71. Defendants should be required to provide continuously updated product warnings to individuals who use and/or have previously used the relevant product to apprise them with timely information concerning effective testing and treatment options for those suffering from, or at risk for, Rhabdomyolysis or other serious adverse reactions caused by the relevant product.

WHEREFORE, PLAINTIFF PRAYS FOR RELIEF AS FOLLOWS:

16

1.      That this action be certified as a class action on behalf of the proposed Class of all persons who purchased and/or ingested Baycol, that the named plaintiff be designated as representative of the Class and that named counsel be designated Class Counsel.

2.      Creation of a comprehensive, court-supervised medical monitoring program which will:

a.      Ensure early diagnosis and treatment of resulting Rhabdomyolysis and other injuries through ongoing testing and monitoring of the relevant product users;

b.      Notify individuals who use or used the relevant product of the potential harm from the relevant product;

c.      Fund further studies of the long term effects on the relevant product;

d.      Fund research into possible cures for the detrimental effects of using the relevant product;

e.      Gather and forward to treating physicians information related to the diagnosis and treatment of injuries which may result from the use of the relevant product; and

f.      Provide Class members with revised drug warnings and emergency notice.

3.      Monetary damages, including but not limited to, a full refund of all costs associated with the purchase of the relevant products;

4.      Compensatory damages;

5.      Treble damages;

6.      Attorneys' fees, expenses and costs of this action; and

7.      Such other and further relief as may be just and proper.

17

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues so triable.


Dated: August 16, 2001

Respectfully submitted,

KAPLAN FOX & KILSHEIMER LLP


_____

Frederic S. Fox (FF-9102)
Laurence D. King (LK-7190)
Joel B. Strauss (JS-6585)
William J. Pinilis (WP-2130)
805 Third Avenue
22nd Floor
New York, New York 10022
Telephone: (212) 687-1980
Fax: (212) 687-7714

and

GIRARD & GREEN LLP
Robert Green
160 Sansome Street
Suite 300
San Francisco, CA 94104
Telephone: (415) 981-4800
Fax: (415) 981-4846

Attorneys for Plaintiff