# ORIGINAL


MDL 1431

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 22 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON

MULTIDISTRICT LITIGATION

In re: )
)
BAYCOL LITIGATION )
)
_____ )

MDL DOCKET NO. _____

## MOTION FOR TRANSFER AND COORDINATION
## OR CONSOLIDATION UNDER 28 U.S.C. §1407

Kenneth B. Moll, Esq.
Hal J. Kleinman, Esq.
Sonia S. Kinra, Esq.
KENNETH B. MOLL & ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112

Attorneys for Individual and Representatives
RONALD COHEN, MARJORIE FREDEN, PREM
GUPTA, LARRY JULIEN, WILLIAM KUTA,
BRENDA MATZNER, KALID PERVAIZ and
ADRIAN ZUCKERMAN



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

## OFFICIAL FILE COPY

IMAGED AUG 27 '01

RECEIVED CLERK'S OFFICE
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
AUG 21 A 10: 40

PLEADING NO. 2

Plaintiffs, RONALD COHEN, MARJORIE FREDEN, PREM GUPTA, LARRY JULIEN, WILLIAM KUTA, BRENDA MATZNER, KALID PERVAIZ and ADRIAN ZUCKERMAN, seek transfer and coordination or consolidation under 28 U.S.C. §1407 of all related Baycol litigation filed in the federal courts.  Plaintiffs request that these actions be transferred to the United States District Court for the Northern District of Illinois.  Alternatively, Plaintiffs would defer to the Panel to select the District with the docket and resources as well as the Transferee Judge with the experience, expertise and energy to most quickly and fairly handle and resolve the public health emergency arising out of the manufacture and sale of the deadly drug Baycol to over 6 million persons worldwide.

## I. INTRODUCTION

1.     This Motion involves <u>Cohen, et al. v. Bayer AG, et al.</u> (Cohen), Civil Action No. 01 C 6257, which was filed on August 15, 2001 in the Northern District of Illinois, Eastern Division, where it was assigned to Judge Wayne Andersen.

2.     This Motion also involves over 6 class action complaints known to moving Plaintiffs filed in 6 federal districts, in 6 states, nationwide.  Copies of 4 of the complaints listed on the <u>Schedule of Actions Included for Transfer and Coordination or Consolidation Under 28 U.S.C. §1407</u> are attached hereto.

3.     The moving Plaintiffs' action, as well as more than 6 other known pending federal actions, seek individual or class-wide relief by way of, among other things, compensatory and punitive damages for persons who were prescribed,



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL:  312.558.6444
FAX:  312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

purchased and consumed Baycol and have suffered or claim to have suffered injury as a consequence of this product.

4.      Bayer Corporation is named as a common Defendant in the moving Plaintiffs action and the other 6 federally filed actions.  Bayer AG is named as a common Defendant in the moving Plaintiffs action and one other federally filed action.

5.      The moving Plaintiffs' action as well as more than 6 other known pending federal actions arise out of similar alleged conduct and raise some identical issues.  In each case the legal and factual issues raised by the pending actions of the moving Plaintiffs are virtually identical to those raised by the more than 6 similar actions filed in federal district courts across the nation.   All actions seek compensatory and punitive damages for persons or a statewide class of persons who have suffered or claim to have suffered injury as a consequence of a product manufactured, marketed or sold by common Defendants.  Similarly, all complaints contain common allegations arising out of the following issues common in all actions:

      a.     whether Baycol was and is toxic and unsafe;

      b.     whether persons who took Baycol are at increased risk of developing serious injuries, including, but not limited to rhabdomyolysis;

      c.     whether there exist monitoring and testing procedures which make early detection and treatment of rhabdomyolysis caused by exposure to Baycol possible and beneficial;

      d.     whether medical monitoring is appropriate;

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. §1407

e.      whether, in marketing and selling Baycol, Defendants failed to disclose the dangers and risks to the health of persons ingesting the drug;

f.      whether defendants failed to warn adequately of the adverse effects of Baycol;

g.      whether defendants falsely and fraudulently misrepresented in their advertisements, promotional materials and other materials, among other things, the safety and potential side effects of Baycol;

h.      whether defendants designed and manufactured a drug that was dangerously defective because its use leads to serious adverse health effects including, but not limited to, rhabdomyolysis;

i.      whether defendants knew or should have known that the use of Baycol leads to serious adverse health effects;

j.      whether defendants adequately tested Baycol prior to distribution and sales in the market place;

k.      whether defendants continued to manufacture, market, distribute, and sell Baycol notwithstanding their knowledge of the drug's dangerous nature;

l.      whether the warnings and information defendants provided with Baycol were adequate in warning of the potential hazards resulting from its use;

m.      whether defendants knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of Baycol from government regulators, the medical community and/or the consuming public;

n.      whether defendants' actions support a cause of action for medical monitoring;

o.      whether defendants' conduct constituted an unfair, deceptive and/or unconscionable practice within the meaning of all states' Consumer Protection Statutes ;

p.      whether defendants' conduct constituted the knowing or intentional concealment, suppression, or omission of material


KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL:  312.558.6444
FAX:  312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

3

information intended to be relied upon by others in connection with the sale of Baycol within the meaning of all states' Consumer Protection Statutes; and

q.     whether the Class has been injured by virtue of defendants' violations of all states' Consumer Protection Statutes.

6.     Transfer and coordination is particularly appropriate at this time because no known formal discovery has begun in any of the actions, and no court has, as yet, issued rulings on the common factual or legal issues involved. Thus, coordination and transfer will obviously save time and resources, will not delay the proceedings and will eliminate potential confusion among class members.

7.     It is noted that there may in the future be potential "tag along" cases that have substantially completed discovery and have set trial dates.  Those cases may, pursuant to Rule 14 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, be remanded back to the transferee district court either by Motion of any party, suggestion of the transferee district court or on the Panel's own initiative.

8.     Discovery conducted in the moving Plaintiffs' action as well as the other 6 cases filed around the nation will be substantially the same because certain charging allegations and many of the parties and witnesses are identical.

9.     Plaintiffs in the <u>Cohen</u> class action and in two other cases seek court supervised medical monitoring which will:

A.     Ensure early diagnosis and treatment of resulting physical, mental or emotional injuries through ongoing testing and monitoring of Baycol users.

B.     Notify Baycol users of the extent of the harm to which they may be susceptible;



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

4

C.   Fund further studies of the long-term health effects of Baycol use; and

D.   Fund research into possible cures for the detrimental effects of Baycol.

10.   Under these circumstances, early transfer and coordination or consolidation of pretrial proceedings in these actions in a single district will certainly promote the convenience of the parties and witnesses and the just and efficient conduct of the action.  It will also avoid the potential for duplication of discovery and inconsistent rulings, particularly on class action issues and, on the part of the common defendants, exposure to multiple claims arising out of the same general course of conduct.  The result will be a significant saving of time and expense, the expedited, comprehensive and consistent implementation of early equitable relief, development of a consistent law of the case and the fair and economical adjudication of the actions.

DATED:  August 20, 2001

RESPECTFULLY SUBMITTED,

BY: _____

Kenneth B. Moll, Esq.
Hal J. Kleinman, Esq.
Sonia S. Kinra, Esq.
KENNETH B. MOLL & ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL:  312.558.6444
FAX: 312.558.1112
Attorneys for Moving Plaintiffs

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL:  312.558.6444
FAX:  312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 2 2 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON

MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re: | ) | MDL DOCKET NO. _____ |
| | ) | |
| BAYCOL LITIGATION | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. §1407

Kenneth B. Moll, Esq.
Hal J. Kleinman, Esq.
Sonia S. Kinra, Esq.
KENNETH B. MOLL & ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL:   312.558.6444
FAX:   312.558.1112

Attorneys for Individual and Representatives
RONALD COHEN, MARJORIE FREDEN, PREM GUPTA, LARRY JULIEN, WILLIAM KUTA, BRENDA MATZNER, KALID PERVAIZ and ADRIAN ZUCKERMAN



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2001 AUG 21  A 10: 40

RECEIVED
CLERK'S OFFICE

Plaintiffs, RONALD COHEN, MARJORIE FREDEN, PREM GUPTA, LARRY JULIEN, WILLIAM KUTA, BRENDA MATZNER, KALID PERVAIZ and ADRIAN ZUCKERMAN,, seek transfer and coordination or consolidation under 28 U.S.C. §1407 of all related Baycol litigation filed in the federal courts. Plaintiffs request that these actions be transferred to the United States District Court for the Northern District of Illinois. Alternatively, Plaintiffs would defer to the Panel to select the District with the docket and resources as well as the Transferee Judge with the experience, expertise and energy to most quickly and fairly handle and resolve the public health emergency arising out of the manufacture and sale of the deadly drug Baycol to over 6 million persons worldwide.

## I. INTRODUCTION

1.      The Plaintiffs in <u>Cohen. et al. v. Bayer AG, et al.,</u> Case No. 01 C 6257(N.D. Ill.) (Andersen, J.) file this memorandum pursuant to 28 U.S.C. §1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation in support of the motion for transfer and coordination or consolidation of federal actions pending against Bayer AG, Bayer Corporation and Bayer Pharmaceutical Corporation, (hereafter referred to as "Defendants") arising out of the allegedly defective drug Baycol.

2.      Prompt transfer and coordination of the rapidly-multiplying product liability-based litigations involving Defendants will serve the interests of justice and efficiency. For example, the various actions now and soon to be pending necessarily share core common questions of fact, and will invariably generate



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

duplicative and overlapping discovery requests and disputes which, absent transfer and coordination, will unnecessarily overtax the federal judicial system's and the litigants' finite resources.  More importantly, given the urgent issue at the heart of the litigation-defective, dangerous, and potentially deadly drugs that have shown a propensity to cause rhabdomyolysis, resulting in hundreds of injuries and at least 52 reported fatalities.  It is imperative that the litigation be centralized and streamlined so that it may proceed toward resolution in the most expeditious and effective manner possible.

3.      For the reasons discussed below, the <u>Cohen</u> Plaintiffs request that the scheduled actions be transferred to the Honorable Wayne Andersen of the Northern District of Illinois, whose courtroom is ideally geographically located.  Alternatively, Plaintiffs would defer to the Panel to select the Transferee Court.

4.      Plaintiffs in the actions subject to the pending motion all allege that Defendants have designed, manufactured and sold to consumers throughout the World millions of defective medication, Baycol, which has an unreasonably dangerous propensity to cause rhabdomyolysis.

## II. PENDING ACTIONS

5.      In addition to their own case, <u>Cohen</u> Plaintiffs are aware of several federal actions that have been filed against Bayer; all of these actions are listed on the accompanying <u>Schedule of Actions</u>.  <u>Cohen v. Bayer AG, et al.</u>, Civil Action No. 01 C 6257 (N.D. Ill.) (filed August 15, 2001) is pending in the Northern District of Illinois and is assigned to the Honorable Wayne R. Andersen.  <u>Sparks v. Bayer</u>



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

Corporation, Civil Action No. 01-1265-T (W.D. Ok.) (filed August 10, 2001) is pending in the Western District of Oklahoma and is assigned to the Honorable Ralph Thompson.  Seiffer v. Bayer Corporation, Civil Action No. 01 C 1583 (W.D. Pa.) (filed August 17, 2001) is pending in the Western District of Pennsylvania and is assigned to the Honorable Donald Lee.  Rosenthal v. Bayer Corporation, Civil Action No. 01 C 1574 (W.D. Pa.) (filed August 16, 2001) is pending in the Western District of Pennsylvania and is assigned to the Honorable Donald Lee.[1]

### A. ALL OF THE ACTIONS INVOLVE CLAIMS AGAINST A COMMON DEFENDANT

6.     All of these cases involve claims against a common defendant, Bayer Corporation.  In addition, two cases involve the parent corporation Bayer AG. Furthermore, one case involves a division of Bayer Corporation, Bayer Pharmaceutical Division.

### B. THE ACTIONS INVOLVE COMMON LEGAL THEORIES AND REQUESTS FOR RELIEF

7.     Cohen Plaintiffs are aware that several of these cases seek similar or identical class-wide injunctive relief and damages on behalf of a nationwide class, and/or are based on similar or identical legal theories. The information presently available to Cohen Plaintiffs shows, for example:

      a.     Plaintiffs in all of the actions assert negligence claims against Bayer;



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

---

[1]     Cohen Plaintiffs have been advised that a Complaint has been filed in the United States District Court for the Northern District of California, the United States District Court for the District of New Jersey and the United States District Court for the Southern District of New York.  Copies of these Complaints have been requested from the Plaintiffs' attorneys and will be submitted to the MDL Panel when received, along with any additional filings.

Memorandum in Support of Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. §1407

b.    Plaintiffs in all of the actions assert strict products liability-based claims against Bayer;

c.    Plaintiffs in three of the actions assert express warranty-based claims against Bayer;

d.    Plaintiffs in three of the actions assert implied warranty-based claims against Bayer; and

e.    Plaintiffs in three of the actions request medical monitoring.

## C. THE ACTIONS SHARE COMMON ISSUES OF FACT

8.    The scheduled Bayer actions satisfy 28 U.S.C. section 1407's threshold requirement that civil actions appropriate for transfer share one or more common questions of fact. Such common questions include (but are not limited to):

a.    whether Baycol was and is toxic and unsafe;

b.    whether persons who took Baycol are at increased risk of developing serious injuries, including, but not limited to rhabdomyolysis;

c.    whether there exist monitoring and testing procedures which make early detection and treatment of rhabdomyolysis caused by exposure to Baycol possible and beneficial;

d.    whether medical monitoring is appropriate;

e.    whether, in marketing and selling Baycol, Defendants failed to disclose the dangers and risks to the health of persons ingesting the drug;

f.    whether Defendants failed to warn adequately of the adverse effects of Baycol;

g.    whether Defendants falsely and fraudulently misrepresented in their advertisements, promotional materials and other materials, among other things, the safety and potential side effects of Baycol;



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

**4**

h.      whether Defendants designed and manufactured a drug that was dangerously defective because its use leads to serious adverse health effects including, but not limited to, rhabdomyolysis;

i.      whether Defendants knew or should have known that the use of Baycol leads to serious adverse health effects;

j.      whether Defendants adequately tested Baycol prior to distribution and sales in the market place;

k.      whether Defendants continued to manufacture, market, distribute, and sell Baycol notwithstanding their knowledge of the drug's dangerous nature;

l.      whether the warnings and information Defendants provided with Baycol were adequate in warning of the potential hazards resulting from its use;

m.      whether Defendants knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of Baycol from government regulators, the medical community and/or the consuming public;

n.      whether Defendants' actions support a cause of action for medical monitoring;

o.      whether Defendants' conduct constituted an unfair, deceptive and/or unconscionable practice within the meaning of all states' Consumer Protection Statutes ;

p.      whether Defendants' conduct constituted the knowing or intentional concealment, suppression, or omission of material information intended to be relied upon by others in connection with the sale of Baycol within the meaning of all states' Consumer Protection Statutes; and

q.      whether the Class has been injured by virtue of Defendants' violations of all states' Consumer Protection Statutes.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

Memorandum in Support of Motion for Transfer and Coordination or Consolidation
Under 28 U.S.C. §1407

## III. TRANSFER AND COORDINATION OR CONSOLIDATION WILL PROMOTE §1407'S GOALS OF INSURING THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS, AND AVOIDING INCONSISTENT OR CONFLICTING SUBSTANTIVE AND PROCEDURAL DETERMINATIONS

9.     The underlying purpose of 28 U.S.C. §1407 is to insure the just, efficient and consistent conduct and adjudication of actions pending in multiple districts by providing for the centralized management of pretrial proceedings under a single court's supervision.  In re New York City Mun. Sec. Litig., 572 F.2d 49,50 (2d Cir. 1978).  Transferring actions to a single court under §1407 is warranted where, as here, it will prevent duplication of discovery requests and disputes, and, more importantly, eliminate the possibility of overlapping or inconsistent procedural determinations by courts of coordinate jurisdiction.  In re Litig. Arising from Termination of Retirement Plan for Emolovees of Fireman's Fund Ins. 422 F. Supp. 287, 290 (J.P.M.L. 1976); In re LTV com. Sec. Litig., 470 F.Supp. 859,862 (J.P.M.L. 1979); In re Exterior Siding and Aluminum Coil Litig., 538 F. Supp. 45,47 (D.C. Minn. 1982); In re "Agent Orange" Prod. Liab. Litig., 597 F. Supp. 740,752 (E.D.N.Y. 1984), aff'd, 818 F.2d 145 (2d Cir. 1987), cert. denied, 484 U.S. 1004 (1988), on remand, 689 F. Supp. 1250 (E.D.N.Y. 1988).

10.     The cornerstone for transferability and coordination under §1407 is the presence of common questions of fact.  In re Fed. Election Campaign Act Litig., 511 F. Supp. 821, 823 (J.P.M.L. 1979).  As discussed in Section II.C., supra, all of the scheduled (and as-yet-unknown), actions filed in the last week that arise from the allegedly defective drug raise common factual questions.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

11.     In addition, transfer and coordination or consolidation is particularly appropriate here because it will promote the just and efficient conduct of the remainder of the subject litigation. Centralized pretrial proceedings will conserve the time, effort, and expense of the parties and the judiciary, and eliminate the possibility of conflicting rulings in parallel proceedings that would otherwise interfere with the orderly administration of justice. See In re Longhorn Secs. Litig., 552 F. Supp. 1003,1004 (J.P.M.L. 1982) (holding §1407 transfer necessary in part to prevent inconsistent rulings and to conserve the resources of the parties, counsel and judiciary); In re Hotel Tel. Charge Antitrust Litig., 341 F. Supp. 771,772 (J.P.M.L. 1972) ("We have frequently held that the . . . threat of inconsistent judicial decisions of . . . class and other issues requires transfer of multidistrict litigation to a single judge under Section 1407."). Absent coordination before a single court with a single calendar, scheduling conflicts will likely abound, and, more critically, different judges could reach contradictory conclusions regarding such crucial issues as preliminary injunctive relief, emergency notice under Federal Rule of Civil Procedure 23(e), and provisional class certification under Federal Rule of Civil Procedure 23(b).

12.     Of central concern to Cohen Plaintiffs is the potential for disruption, confusion and prejudice created by the pendency of a multiplicity of variously-venued actions seeking nationwide class relief. Each action effectively seeks a judicial determination regarding class definition, class certification and class notice for the same or essentially the same Plaintiff Class. The Panel has consistently

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

Memorandum in Support of Motion for Transfer and Coordination or Consolidation
Under 28 U.S.C. §1407

held transfer of actions to a single district for coordinated or consolidated pretrial proceedings is necessary where, as here, the risk of overlapping or inconsistent class determinations exists, in order to eliminate the possibility of inconsistent pretrial rulings, especially concerning class issues. In re Bristol Bav. Salmon Fishery Antitrust Litig., 424 F. Supp. 504 at 506 (J.P.M.L. 1976); In re Litig. Arising from Termination of Retirement Plan for Employees of Fireman's Fund Ins. Co., 422 F. Supp. 287 at 290 (J.P.M.L. 1976); In re Nat'l Airlines. Inc., etc., 399 F. Supp. 1405 at 1407 (J.P.M.L. 1975); In re Roadway Express, Inc. Employment Practices Litig., 384 F. Supp. 612 at 613 (J.P.M.L. 1974). This is true even when only two actions are involved. In re First Nat'l Bank. etc., 451 F. Supp. 995, 997 (J.P.M.L. 1978). At a minimum, assignment of all class action litigation against Bayer arising out of Baycol usage would "surely [be] the most efficient way to resolve the questions of proper class representation and the effect of each of these actions on the other." In re Litig. Arising from Termination, 422 F. Supp. 287 at 290.

13.    Transfer and coordination of the federal actions also will enable the Transferee Court to coordinate with the state court actions that is anticipated to proliferate, since MDL courts are uniquely suited to take a lead role in organizing and coordinating joint proceedings with state courts.

14.    Moreover, because each of the cases appearing on the accompanying schedule of actions have been filed within the last week, they are of necessity similarly procedurally postured; no factual or legal issues have yet been adjudicated, and there are no practical impediments to expedient coordination and



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

the implementation of uniform preliminary injunctive relief or other emergency measures.

15.    In addition to providing the federal court system an opportunity to constructively and prospectively manage a budding litigation explosion, transfer, coordination or consolidation at this early stage will also benefit the parties and witnesses - particularly if it is to take place in the Northern District of Illinois - by providing a convenient, geographically central hub for the parties and witnesses to converge before a judge who can devote a relatively sizable amount of attention to the litigation.  From that hub, the court, could impose uniform pre-trial procedures, deadlines, and collaborative discovery procedures that would conserve the resources, time and energy and of all litigants and witnesses.

16.    In sum, coordination and transfer at this early juncture will conserve time and resources, will not delay the proceedings, and will eliminate potential confusion among courts, litigants, and class members.  Accordingly, the motion should be granted.

## IV.  FORUM SELECTION CRITERIA UNDER §1407

17.    The Judicial Panel on Multidistrict Litigation has articulated the following criteria for transfer under §1407:

A.    Transfer best serves the convenience of the parties and witnesses and promotes the just and efficient conduct of the litigation;

B.    Analysis of the effective complaints reveals that they share common factual questions concerning intricate events and methods of operation, which are sufficiently complex to warrant transfer; and



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

C.   Placement of the affected actions under the control of a single judge insures that duplicative discovery of complex factual questions is prevented, and the possibility of conflicting pretrial rulings is eliminated. See <u>In re Gen. Tire & Rubber Co. See. Litig.</u>, 429 F. Supp. 1032 at 1034 (J.P.M.L. 1977).

18.   The answer to the threshold question of whether transfer and coordination will effectuate Section 1407's purposes seems clear.  However, the answer to the question of where transfer and coordination should occur is less obvious.  The Judicial Panel has used various criteria to determine the most appropriate forum.  Among the factors the Panel considers are the convenience of the parties and witnesses, the relative progress which has been achieved in actions pending in various districts, the respective caseloads of the proposed transferee courts, the location of parties, witnesses and documents, the expertise of a particular court in the areas of law and procedures which govern the actions and, when no clear-cut choice emerges from analysis of the foregoing, the preference of the majority of the parties. <u>In re New Mexico Natural Gas Antitrust Litig.</u>, 482 F. Supp. 333, 337 (J.P.M.L. 1979).

## A. LOCATION OF PARTIES, WITNESSES AND DOCUMENTS

19.   The moving Plaintiffs' action as well as the other federally filed cases represent plaintiffs from every State in the United States.  The Common Defendants are located in Pennsylvania, Connecticut and Germany.

20.   Selection of any single forum will undoubtedly create inconvenience to some parties.  However, this may be properly ameliorated by the transferee judge, who is authorized to arrange for the conduct of depositions in other districts.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

Memorandum in Support of Motion for Transfer and Coordination or Consolidation
Under 28 U.S.C. §1407

In re IBM Peripheral EDP Devices Antitrust Litig., 411 F. Supp. 791 (J.P.M.L. 1976). Moreover, the practice of establishing and maintaining central document depositories, recommended by the Manual for Complex Litigation 3d (Federal Judicial Center 1995), §§31.13, 21.444, and the ease with which documents may now be shipped cross-country overnight, scanned, stored, retrieved and analyzed by computer, renders the present physical location of the documents far less determinative a factor than it was when 28 U.S.C. §1407 was enacted.

21. In short, regardless of their potential volume, these documents are portable and may be ordered, transferred, stored and made accessible to all in a convenient location in any district court by the transferee judge.

22. Given these circumstances, the most important factor in forum selection becomes this Panel's choice of a transferee judge and district willing and able to manage the litigation on an efficient and prioritized basis. This selection process is uniquely and exclusively the province of the Panel.

## B.  ADVANCEMENT OF PROCEEDINGS

23. If the proceedings in one particular forum are significantly more advanced than in parallel proceedings elsewhere, that forum is generally the appropriate selection for transferee status. In this case, all of actions are in their nascent stages. As of this date, Cohen Plaintiffs have no reason to believe that formal discovery or initial disclosures have materially advanced in any of the other federal actions.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

## C.  THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS IS THE MOST APPROPRIATE AND CONVENIENT FORUM FOR COORDINATION OF THESE CASES

24.    The Northern District of Illinois is the appropriate transferee court because of the centrality of its location and the resulting convenience of the parties and witnesses.  Parties, witnesses and evidence have easy accessability to the Court due to Chicago's O'Hare International Airport.  O'Hare is the commercial aviation capital of the world with over 50 airlines providing domestic and international service through its more than 160 gates.  An average of 190,000 travelers pass through O'Hare Airport each day.  In addition, to O'Hare Airport, Chicago's Midway Airport handles over 255,000 flights per year.  15 airlines provide service to 70 different cities.

25.    The importance of this criteria should not be overlooked, particularly given the national and international interest in this litigation.  The <u>Cohen</u> Plaintiffs' counsel represent citizens of many foreign countries, including Venezuela, Germany, Jamaica and Canada, who seek inclusion in this action for injuries similar to those suffered by United States citizens.  The necessity to conduct discovery regarding these foreign putative class members requires that this matter be transferred to an accessible geographic location, with a major International Airport, such as Chicago.  This would certainly aid in the availability of parties, witness and evidence germane to these claims.

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL:  312.558.6444
FAX:  312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

Memorandum in Support of Motion for Transfer and Coordination or Consolidation
Under 28 U.S.C. §1407

26.     Judge Andersen, who is assigned the <u>Cohen</u> case, is one of several Judges in the Northern District of Illinois (including Judges Aspen, Kocoras, Leinenweber and Moran), who are well qualified to preside over the proposed MDL.

27.     Plaintiffs' primary object in filing this motion is to obtain pre-trial coordination and/or consolidation and to avoid inconsistent rulings and duplication of effort. With that in mind, Plaintiffs would alternatively defer to the Panel for selection of the district with the docket and resources and the Transferee Judge with the experience, expertise and energy to most quickly and fairly handle and resolve the public health emergency arising out of the manufacture and sale of the deadly drug Baycol to over 6 million persons worldwide.

### V.  CONCLUSION

28.     For the foregoing reasons, the <u>Cohen</u> Plaintiffs respectfully request that the scheduled actions be transferred and coordinated and/or consolidated pursuant to 28 U.S.C. §1407, ideally in the Northern District of Illinois (Andersen, J.) and that all related individual or class actions also be transferred to the designated Transferee Court as "tag along actions." Alternatively, Plaintiffs would defer to the Panel to select the District with the docket and resources as well as the

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL:  312.558.6444
FAX:  312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

Memorandum in Support of Motion for Transfer and Coordination or Consolidation
Under 28 U.S.C. §1407

Transferee Judge with the experience, expertise and energy to most quickly and fairly handle and resolve the public health emergency arising out of the manufacture and sale of the deadly drug Baycol to over 6 million persons worldwide.

DATED:  August 20, 2001

RESPECTFULLY SUBMITTED,

BY:  _____

Kenneth B. Moll, Esq.
Hal J. Kleinman, Esq.
Sonia S. Kinra, Esq.
KENNETH B. MOLL & ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL:  312.558.6444
FAX: 312.558.1112
Attorneys for Moving Plaintiffs



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL:  312.558.6444
FAX:  312.558.1112
TOLL FREE  888.882.3453
kbmoll.com

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 2 2 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON

MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re: | ) | MDL DOCKET NO. _____ |
| | ) | |
| BAYCOL LITIGATION | ) | |
| | ) | |
| _____ | ) | |

## SCHEDULE OF ACTIONS INCLUDED FOR
## TRANSFER AND COORDINATION
## OR CONSOLIDATION UNDER 28 U.S.C. §1407

Kenneth B. Moll, Esq.
Hal J. Kleinman, Esq.
Sonia S. Kinra, Esq.
KENNETH B. MOLL & ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL:   312.558.6444
FAX:   312.558.1112

Attorneys for Individual and Representatives
RONALD COHEN, MARJORIE FREDEN, PREM
GUPTA, LARRY JULIEN, WILLIAM KUTA,
BRENDA MATZNER, KALID PERVAIZ and
ADRIAN ZUCKERMAN



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2001 AUG 21   A 10: 40

RECEIVED
CLERK'S OFFICE

## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

Ronald Cohen, Marjorie Freden, Prem Gupta, Larry Julien, William Kuta, Brenda Matzner, Kalid Pervaiz and Adrian Zuckerman, individually and on behalf of all others similarly situated, v. Bayer AG, a Foreign Corporation, Bayer Corporation, a Subsidiary of Bayer AG, and Bayer Pharmaceutical Division, a Division of Bayer Corporation
Civil Action No. 01 C 6257; The Honorable Wayne Andersen

## WESTERN DISTRICT OF OKLAHOMA

Steven Parks v. Bayer Corporation
Civil Action No. 01 CV-1265-T; The Honorable Ralph Thompson.

## WESTERN DISTRICT OF PENNSYLVANIA

Diane Rosenthal v. Bayer Corporation, a Division of Bayer AG
Civil Action No. 01 C 1574; Judge: Donald Lee.

## WESTERN DISTRICT OF PENNSYLVANIA

Arnold Seiffer, v. Bayer Corporation and Bayer AG
Civil Action No. 01 C 1583; Judge: Donald Lee.

DATED:  August 20, 2001

RESPECTFULLY SUBMITTED,

BY: _____
Kenneth B. Moll, Esq.
Hal J. Kleinman, Esq.
Sonia S. Kinra, Esq.
KENNETH B. MOLL & ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL:  312.558.6444
FAX: 312.558.1112
Attorneys for Moving Plaintiffs

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

1
Schedule of Actions Included for Transfer and Coordination
or Consolidation Under 28 U.S.C. §1407

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 2 2 2001

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON

MULTIDISTRICT LITIGATION

In re:                                    )       MDL DOCKET NO. _____
                                          )
BAYCOL LITIGATION                         )
                                          )
_____  )

## **PROOF OF SERVICE BY U.S. MAIL**

Kenneth B. Moll, Esq.
Hal J. Kleinman, Esq.
Sonia S. Kinra, Esq.
KENNETH B. MOLL & ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL:   312.558.6444
FAX:   312.558.1112

Attorneys for Individual and Representatives
RONALD COHEN, MARJORIE FREDEN, PREM
GUPTA, LARRY JULIEN, WILLIAM KUTA,
BRENDA MATZNER, KALID PERVAIZ and
ADRIAN ZUCKERMAN



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

I am employed in the County of Cook, City of Chicago, State of Illinois. I am over the age of eighteen (18) years and not a party to the within action; my business address is Three First National Plaza, 54TH Floor, Chicago, Illinois 60602.

I am readily familiar with KENNETH B. MOLL & ASSOCIATES, LTD's practice for collection and processing of documents for mailing with the United States Postal Service, and that practice is that the documents are deposited with the United States Postal Service with postage fully prepaid the same day as the day of collection in the ordinary course of business.

On August 20, 2001, I served the within document(s) described as:

1. **MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. §1407;**

2. **MEMORANDUM IN SUPPORT OF TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. §1407; and**

3. **SCHEDULE OF ACTIONS INCLUDED FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. §1407**

along with this **PROOF OF SERVICE** on the persons listed below by placing the document(s) in a sealed envelope for same day deposit with the United States Postal Service addressed as follows:

[see service list attached]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Chicago, Illinois on August 20, 2001.

_____
SONIA S. KINRA

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

## SERVICE LIST

<u>PLAINTIFFS' ATTORNEYS:</u>

Alfred G. Yates, Jr., Esq.
Gerald L. Rutledge, Esq.
LAW OFFICES OF ALFRED G.
YATES, JR
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, Pennsylvania 15219

Andrew L. Barroway, Esq.
Marc A. Topaz, Esq.
SCHIFFRIN & BARROWS, LLP.
Three Bala Plaza East
Suite 400
Bala Cynwyd, Pennsylvania 19004

Paul J. Geller, Esq.
CAULEY GELLER BOWMAN &
COATES, LLP
225 Glade Road
Suite 421A
Boca Raton, Florida 33431

Brian Felgoise, Esq.
THE LAW OFFICES OF BRIAN
FELGOISE
230 South Broad Street
Philadelphia, Pennsylvania 19102
        For:   Diane Rosenthal

Melvyn I. Weiss, Esq.
Brad N. Friedman, Esq.
Regina LaPolla, Esq.
MILBERG WEISS BERSHAD HYNES
& LERACH, LLP
One Pennsylvania Plaza
New York, New York 10019

David J. Manogue, Esq.
SPECTOR, SPECTOR, EVANS &
MANOGUE, P.C.
26th Floor
Koppers Building
Pittsburgh, Pennsylvania 15219

Chris Seeger, Esq.
SEEGER WEISS, LLP
One Williams Street
New York, New York 10004
        For:   Arnold Seiffer

Don S. Strong, Esq.
G. Stephen Martin, II, Esq.
STRONG, MARTIN & ASSOCIATES,
P.L.L.C.
2518 First National Center
120 North Robinson
Oklahoma City, Oklahoma 73102

William B. Federman, Esq.
Stuart W. Emmons, Esq.
FEDERMAN & SHERWOOD
120 North Robinson
Suite 2720
Oklahoma City, Oklahoma 73102
        For:   Steven Sparks

Bruce H. Nagel, Esq.
NAGEL, RICE, DRIEFUSS & MAZIE
301 South Livingston Avenue
Suite 201
Livingston, New Jersey 07039
        For:   Salvatore Galasso

Frederic S. Fox, Esq.
Joel Strauss, Esq.
Laurence D. King, Esq.
KAPLAN FOX & KILSHEIMER, LLP
805 3rd Avenue
22nd Floor
New York, New York 10022
        For:   Plaintiffs filed in the
                Western District of New
                York



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL:  312.558.6444
FAX.  312.558.1112
TOLL FREE  888.882.3453
kbmoll.com

Robert S. Green, Esq.
GIRRARD & GREEN, LLP
160 Sansome Street
Suite 300
San Francisco, California 94104
  For: Plaintiffs filed in the Northern District of California

<u>DEFENDANTS:</u>

BAYER AG
D-51368 Leverkusen
Federal Republic of Germany

BAYER CORPORATION
C/O Registered Agent
C T Corporation System
1635 Market Street
Philadelphia, Pennsylvania 19103

BAYER PHARMACEUTICAL DIVISION
C/O Registered Agent
C T Corporation System
One Commercial Plaza
Hartford, Connecticut 06103

<u>CLERKS OF THE U.S. DISTRICT COURTS:</u>

Clerk of the Court for the Northern
District of California
450 Golden Gate
16th Floor, Room 1111
San Francisco, California 94102

Clerk of the Court for the Northern
District of Illinois
219 South Dearborn
Chicago, Illinois 60604

Clerk of the Court for the District of
New Jersey
50 Walnut Street
Room 4015
Newark, New Jersey 07101

Clerk of the Court for the Southern
District of New York
500 Pearl Street
New York, New York 10007

Clerk of the Court for the Western
District of Oklahoma
200 N.W.4th Street
Room 1210
Oklahoma City, Oklahoma 73102

Clerk of the Court for the Western
District of Pennsylvania
Post Office Box 1805
Pittsburgh, Pennsylvania 15230



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED

AUG 1 5 2001

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

RONALD COHEN, MARJORIE FREDEN, )
PREM GUPTA, LARRY JULIEN, )
WILLIAM KUTA, BRENDA MATZNER, )
KALID PERVAIZ and ADRIAN )
ZUCKERMAN, individually and on )
behalf of all others similarly situated, )
                                )
       Plaintiffs,          )
                                )
     v.                 )
                                )
BAYER AG, a Foreign Corporation, )
BAYER CORPORATION, a Subsidiary )
of BAYER AG, and BAYER )
PHARMACEUTICAL DIVISION, a )
Division of BAYER CORPORATION, )
                                )
       Defendants.       )

No. **01C 6257**

Jury Demanded

MAGISTRATE JUDGE SCHENKIER

JUDGE ANDERSEN

## CLASS ACTION COMPLAINT

NOW COME the Plaintiffs, RONALD COHEN, MARJORIE FREDEN, PREM GUPTA, LARRY JULIEN, WILLIAM KUTA, BRENDA MATZNER, KALID PERVAIZ and ADRIAN ZUCKERMAN, individually and on behalf of all others similarly situated, by and through their attorneys, KENNETH B. MOLL & ASSOCIATES, LTD., and complaining of the Defendants, BAYER AG, a Foreign Corporation, BAYER CORPORATION, a Subsidiary of BAYER AG, and BAYER PHARMACEUTICAL DIVISION, a Division of BAYER CORPORATION, and state as follows:



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

## I. INTRODUCTION

1.    Plaintiffs bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on their own behalf and as representatives of a class of persons consisting of all persons in the World who were prescribed the drug Baycol (Lipobay, outside the United States), or their estates, administrators or other legal representatives, heirs or beneficiaries.

2.    Plaintiffs bring this action individually and as a class representatives to recover damages for deaths and personal injuries, restitution, refunds, and/or for equitable, injunctive and declaratory relief against defendants BAYER AG, a Foreign Corporation, BAYER CORPORATION, a Subsidiary of BAYER AG, and BAYER PHARMACEUTICAL DIVISION, a Division of BAYER CORPORATION, (collectively, "Bayer" or "Defendants"), which tested, marketed, distributed, promoted and sold Baycol.

3.    Baycol has been linked to over 52 deaths worldwide, including cases of fatal rhabdomyolysis.

4.    Rhabdomyolysis is a condition that results in muscle cell breakdown and release of the contents of muscle cells into the bloodstream.

5.    The primary goals of this class action are to (1) inform the public that consumers of Baycol are at an increased risk of rhabdomyolysis, (2) establish a medical monitoring fund so that every consumer may be tested and treated for the adverse effects of Baycol, (3) reimburse monies paid for the recalled product and (4) provide compensation to all victims for personal injuries and death.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

2

## II.  PARTIES

### A.  PLAINTIFFS

6.      Plaintiff, RONALD COHEN, is a resident of the State of Illinois residing in Northbrook, Illinois.   Plaintiff was prescribed, purchased and used Baycol. Plaintiff was prescribed and ingested .4mg of Baycol each day since on or about October, 1999.  Plaintiff has suffered personal injuries as a proximate result of his ingestion of Baycol.

7.      Plaintiff, MARJORIE FREDEN, is a resident of the State of Minnesota residing in Pequot, Minnesota.   Plaintiff was prescribed, purchased and used Baycol.  Plaintiff was prescribed and has taken .8mg of Baycol each night since January, 2001.  Plaintiff has not been diagnosed as having rhabdomyolysis at this time, but may be at some increased risk for developing such condition as a proximate result of her ingestion of Baycol.

8.      Plaintiff, PREM GUPTA, is a resident of the State of North Carolina residing in Wilmington, North Carolina.  Plaintiff was prescribed, purchased and used Baycol.  Plaintiff began taking .4mg of Baycol each day from January, 2001 through  August  10,  2001.    Plaintiff  has  not  been  diagnosed  as  having rhabdomyolysis at this time, but may be at some increased risk for developing such condition as a proximate result of her ingestion of Baycol.

9.      Plaintiff, LARRY JULIEN, is a resident of the State of Texas residing in Garland, Texas.  Plaintiff was prescribed, purchased and used Baycol.  Plaintiff began taking .4mg of Baycol each day from February, 2001 through August, 2001.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

Plaintiff has not been diagnosed as having rhabdomyolysis at this time, but may be at some increased risk for developing such condition as a proximate result of his ingestion of Baycol.

10.    Plaintiff, WILLIAM KUTA, is a resident of the State of Illinois residing in Davis, Illinois.  Plaintiff was prescribed, purchased and used Baycol.  Plaintiff began taking .4mg of Baycol each day from February, 2000 through May, 2001 when the dosage was increased to .8mg of Baycol each day.  Plaintiff has suffered personal injuries as a proximate result of his ingestion of Baycol.

11.    Plaintiff, BRENDA MATZNER, is a resident of the State of Florida residing in Ft. Lauderdale, Florida.  Plaintiff was prescribed, purchased and used Baycol. Plaintiff began taking .4mg of Baycol each day from October, 1999 through October, 2000 when the dosage was increased to .8mg. Plaintiff discontinued using Baycol in late October, 2000 when she was hospitalized for five days suffering from kidney failure.

12.    Plaintiff, KALID PERVAIZ, is a resident of the State of California residing in Northridge, California.  Plaintiff was prescribed, purchased and used Baycol.  Plaintiff began taking .4mg of Baycol each day from February, 2001 through August, 2001.  Plaintiff has not been diagnosed as having rhabdomyolysis at this time, but may be at some increased risk for developing such condition as a proximate result of his ingestion of Baycol.

13.    Plaintiff, ADRIAN ZUCKERMAN, is a resident of the State of New York residing in Poughkeepsie, New York.  Plaintiff was prescribed, purchased and used



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

Baycol. Plaintiff began taking .4mg of Baycol each day from August, 2000 through August, 2001. Plaintiff has not been diagnosed as having rhabdomyolysis at this time, but may be at some increased risk for developing such condition as a proximate result of his ingestion of Baycol.

## B. DEFENDANTS

14.    Defendant, BAYER AG, is a foreign corporation headquartered and with its principal place of business in Leverkusen, Germany.   Bayer AG manufactures, markets and distributes Baycol throughout the world, including Illinois.

15.    Defendant, BAYER CORPORATION, is an Indiana corporation and a wholly owned subsidiary of Bayer AG.  The corporate headquarters for Bayer Corporation is Pittsburgh, Pennsylvania. Bayer Corporation manufactures, markets and distributes Baycol throughout the world, including Illinois.

16.    Defendant, BAYER PHARMACEUTICAL DIVISION, is a division of Bayer Corporation.  The corporate headquarters for Bayer Pharmaceutical Division is West Haven, Connecticut. Bayer Pharmaceutical Division manufactures, markets and distributes Baycol throughout the world, including Illinois.

17.    At all times relevant hereto, Defendants, BAYER, were engaged in the business of marketing, distributing, promoting, testing, labeling and/or selling the pharmaceutical Baycol.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

5

### III.  JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceed $75,000 exclusive of interest and costs, and because this is an action by individuals and representative Plaintiffs who are citizens of different states from the Defendant.

19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391. Plaintiff purchased Baycol in the Northern District of Illinois. Defendants advertised in this District and made material omissions and misrepresentations and breaches of warranties in this District.

### IV.  FACTUAL BACKGROUND

20.    Baycol, also known as Cerivastatin, is a medication commonly prescribed to patients to aid in lowering cholesterol and triglycerides. Baycol lowers cholesterol levels by blocking a specific enzyme in the body that is involved in the synthesis of cholesterol.

21.    Baycol is a member of a class of cholesterol lowering drugs referred to as "statins." According to the FDA, while all statins have been associated with reports of rhabdomyolysis, the number of cases of fatal rhabdomyolysis are significantly higher in association with the use of Baycol. A majority of the reported fatal cases were high dosage cases involving elderly patients, particularly when Baycol was used in combination with a lipid lowering drug called gemfibrozil (Lopid and its generic).



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

22.     Rhabdomyolysis is a condition that results in muscle cell breakdown and release of the contents of muscle cells into the bloodstream.  Symptoms of rhabdomyolysis include muscle pain, weakness, tenderness, malaise, fever, dark urine, nausea and vomiting.  In severe cases, patients develop potentially fatal kidney failure.

23.     The FDA approved Baycol for use in the United States in 1997.

24.     An estimated 6,000,000 people worldwide, including 700,000 Americans, use Baycol everyday.  Baycol is sold outside the United States as Lipobay.

25.     Last year, sales of Baycol exceeded $550 Million and BAYER predicted that this year's sales would top $900 Million.

26.     On August 8, 2001, the United States Food and Drug Association announced that Bayer voluntarily withdrew Baycol from the U.S. market in light of 31 reported cases of deaths due to severe rhabdomyolysis in association with the use of Baycol.  In addition to the 31 American deaths, the FDA has reports of at least 9 Baycol related deaths in foreign countries.

27.     On August 9, 2001, Noel Wathion, head of the European Medicines Evaluation Agency ("EMEA"), stated that 480 reports of rhabdomyolysis had been received globally from patients taking Baycol.  In light of these reported cases, EMEA began to investigate the side effects of Baycol in July, 2001.

28.     Health Canada has received reports of 32 cases of serious associated with use of Baycol, including 10 cases of kidney failure and one death.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

29.    On July 16, 2001, France's drug control agency, AFSSAPS, issued a warning of problems related to Baycol after learning that there were three reported deaths in Spain.

30.    It has been reported that at least 52 deaths worldwide have been associated with Baycol.

## V. CLASS ACTION ALLEGATIONS

31.    Plaintiffs move this Court to enter an order certifying this cause as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

### A. PROPOSED CLASS

32.    Plaintiffs seek certification of the following Class:

All persons, their estates, administrators or other legal representatives, throughout the world who were prescribed, purchased, used and/or ingested the drug Baycol, manufactured, distributed and/or sold by Defendants.

33.    Plaintiffs seek certification of the following Subclasses:

(A)    All persons, their estates, administrators or other legal representatives, throughout the world who suffered personal injuries ("Personal injury subclass");

(B)    All persons, or other legal representatives, throughout the world who seek treatment and reimbursement under a medical monitoring program ("Medical monitoring subclass");

(C)    All persons, their estates, administrators or other legal representatives, heirs or beneficiaries, throughout the world who seek reimbursement for the purchase price of Baycol ("Reimbursement subclass").



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

## B.  CLASS ACTION LAW

34.   This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)(1)-(4), and the predominance and superiority requirements of Rule 23(b)(3) and the requirements of Rule 23(b)(2).

35.   Federal Rule of Civil Procedure 23(a) establishes four threshold requirements for class certification:

a.   The class is so numerous that joinder of all members is impracticable;

b.   there are questions of law or fact common to the class;

c.   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

d.   the representative parties will fairly and adequately protect the interest of the class.  FED.R.CIV.P. 23(a).

36.   Class certification under Rule 23(b)(2) requires one finding: that the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.  FED.R.CIV.P. 23(b)(2).

37.   Class certification under Rule 23(b)(3) requires two findings: that common questions of law and fact predominate and that a class action is superior to other forms available for fair and efficient adjudication.  FED.R.CIV.P. 23(b)(3).



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

## C. THE BAYCOL CLASS MEETS THE REQUIREMENTS FOR CLASS CERTIFICATION

38.     The Plaintiff Class satisfies the numerosity standards.  The Class is believed to number in the hundreds of thousands of persons.  As a result, joinder of all Class members in a single action is impracticable Class members may be informed of the pendency of this Class Action by published and broadcast notice.

39.     There are questions of fact and law common to the Class which predominate over any questions affecting only individual members.  The questions of law and fact common to the Class arising from Defendants' actions include, without limitation, the following:

     a.      whether Baycol was and is toxic and unsafe;

     b.      whether persons who took Baycol are at increased risk of developing serious injuries, including, but not limited to rhabdomyolysis;

     c.      whether there exist monitoring and testing procedures which make early detection and treatment of rhabdomyolysis caused by exposure to Baycol possible and beneficial;

     d.      whether medical monitoring is appropriate;

     e.      whether, in marketing and selling Baycol, Defendants failed to disclose the dangers and risks to the health of persons ingesting the drug;

     f.      whether defendants failed to warn adequately of the adverse effects of Baycol;

     g.      whether defendants falsely and fraudulently misrepresented in their advertisements, promotional materials and other materials, among other things, the safety, potential side effects and convenience of Baycol;



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

h.  whether defendants designed and manufactured a drug that was dangerously defective because its use leads to serious adverse health effects including, but not limited to, rhabdomyolysis;

i.  whether defendants knew or should have known that the use of Baycol leads to serious adverse health effects;

j.  whether defendants adequately tested Baycol prior to distribution and sales in the market place;

k.  whether defendants continued to manufacture, market, distribute, and sell Baycol notwithstanding their knowledge of the drug's dangerous nature;

l.  whether the warnings and information defendants provided with Baycol were adequate in warning of the potential hazards resulting from its use;

m.  whether defendants knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of Baycol from government regulators, the medical community and/or the consuming public;

n.  whether defendants' actions support a cause of action for medical monitoring;

o.  whether defendants' conduct constituted an unfair, deceptive and/or unconscionable practice within the meaning of all states' Consumer Protection Statutes [1];

---

[1] Ala. Code 8-19-5; Alaska Stat. 45.50.4711; Ariz. Rev. Stat. Ann. 44-1522.A; Ark. Code Ann. 4-88-107(a)(1); Cal. Civ. Code 1770; Colo. Rev. Stat. 6-1-105(1); Conn. Gen. Stat. 42-1 0b(a); Del. Code Ann. Tit. 6,2513(a); D.C. Code Ann. 28-3904; Fla. Stat. Ann. 501.204(1); Ga. Code Ann. 10-1-393(a); Haw. Rev. Stat. 480-2(a); Idaho Code 48-603; 815 ILCS 505/2; Ind. Code 24-5-0.5.3(a); Ind. Code 24-5-0.5-4; Iowa Code 714.16.2(a); Kan. Stat. Ann. 50-626(b); Ky. Rev. Stat. Ann. 367.170(1); La. Rev. Stat. Ann. 51:1405; Me. Rev. Stat. Ann. Tit. 5 207; Md. Com. Law Code Ann. 13-301; Mass. Gen. L. Ch. 93A, 2; Mich. Stat. Ann. 19.418(3); Minn. Stat. 325D.44; Miss. Code Ann. 75-24-5; Mo-Rev. Stat. 407.020.1; Mont. Code Ann. 30-14-103; Neb. Rev. Stat. 59-1602; Nev. Rev. Stat. 598.410; N.J. Rev. Stat. 56:8-2; N.H. Rev. Stat. Ann. 358-A: 2; N.M. Stat. Ann. 57-12-3; N.Y. Gen. Bus. Law 349(a); N.D. Cent. Code 51-15-02; N.C. Gen. Stat. 57-1.1; Ohio Rev. Code Ann. 1345.02(a); Okla. Stat. Tit. 15,753; Ore. Rev. Stat. 646.608(1); Pa. Stat. Ann. Tit. 73,201-2(4); R.I.Gen. Laws 16-13.1-1(c); S.C. Code Ann. 39-5-20; S.D. Codified Laws Ann. 37-26-6; Term. Code Ann.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

p.    whether defendants' conduct constituted the knowing or intentional concealment, suppression, or omission of material information intended to be relied upon by others in connection with the sale of Baycol within the meaning of all states' Consumer Protection Statutes; and

q.    whether the Class has been injured by virtue of defendants' violations of all states' Consumer Protection Statutes.

40.    The questions set forth above predominate over any questions affecting only individual persons, and a Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the controversy.

41.    A Class Action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests.

42.    The Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the members of the Class they seek to represent. The interests of the members of the Class will be fairly and adequately protected by the Plaintiffs and their undersigned counsel.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

47-18-104; Tex. Bus. & Com. Code Ann. 1746(a); Utah Code Ann. 13-11-4; Vt. Stat. Ann. Tit. 9, 2453; Va. Code Ann. 59.1-200; Wash. Rev. Code 19.86.020; W. Va. Code 46A-6-104; Wis. Stats. Ann. 100.18(1); Wyo. Stat. 40-12-105(a).

43.   Plaintiffs seek a refund of and restitution for monies paid as a result of their purchase of Baycol, as well as all other ascertainable economic loss that occurred as a result of Defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of Baycol. Plaintiffs therefore seek to disgorge Defendants of the monies inappropriately acquired by them as a result of their sale of Baycol.

44.   Plaintiffs, on behalf of themselves and the Class, seek equitable relief in the form of a Court-ordered and supervised medical monitoring program, funded by Defendants, to assist Plaintiffs and the Class members in the early detection and treatment of illnesses caused by Baycol. Such a program would include the following:

    a.    A method to notify individuals who ingested Baycol of the increased risk of harm that they have suffered as a result of the ingestion of Baycol;

    b.    Provision for the accumulation and analysis of relevant medical and demographic information from Class members including, but not limited to, the results of all appropriate diagnostic tests performed on Class members as part of a medical research and education fund;

    c.    Provision for the creation, maintenance and operation of a medical registry in which relevant demographic and medical information concerning all Class members is gathered, maintained and analyzed;

    d.    Provision for medical research concerning the incidence, prevalence, natural course and history, diagnosis and treatment of Baycol induced personal injuries; and

    e.    Publication of, and other dissemination of, all such information to members of the Class and their physicians.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

45.     Class certification with respect to plaintiffs' claims for relief through creation of a Court-supervised fund to provide medical research, education, monitoring and screening is appropriate because defendants have acted, or refused to act, on grounds generally applicable to the Class, making appropriate preliminary and final injunctive and declaratory relief consisting of medical monitoring and notice with respect to plaintiffs and the Class members.

46.     Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the Class who has suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

47.     Notice can be provided to class members by using techniques and forms of notice similar to those customarily used in other drug-related products liability cases and complex class actions.

## VI.  CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY PURSUANT TO
### §402A OF THE RESTATEMENT (SECOND) OF TORTS

48.     Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

49.     The Defendants were engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing BAYCOL in interstate commerce, which they sold and distributed throughout the world, including the State of Illinois, to Plaintiffs and Class members.

50.     The Plaintiffs, were using BAYCOL in a manner for which it was intended or in a reasonably foreseeable manner.

51.     BAYCOL was expected to and did reach the Plaintiffs and Class members without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, warned, and otherwise distributed.

52.     The Plaintiffs and the members of the Class were not aware of, and reasonably could not have discovered, the dangerous nature of BAYCOL.

53.     The Defendants' BAYCOL caused increased risks of rhabdomyolysis upon consumption, and therefore constitute a product unreasonably dangerous for normal use due to their defective design, defective manufacture, and the Defendants' misrepresentations and inadequate facts disclosed to the Plaintiffs and the members of the Class.

54.     As a direct and proximate result of Defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing BAYCOL in interstate commerce, Plaintiffs and class members are at an increased risk of developing



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

15

rhabdomyolysis and have suffered compensatory and punitive damages in an amount to be proven at trial.

55.     The Defendants, therefore, are strictly liable to the Plaintiffs. Additionally, Defendants' conduct was so outrageous as to constitute ill will, bad motive and reckless indifference to the interests of the consumers.  The Plaintiffs, therefore, are entitled to punitive damages.  All of the Defendants are liable to Plaintiffs and to members of the Class jointly and severally for all general, special, and equitable relief to which the Plaintiffs and the Class are entitled by law.

## COUNT II
## NEGLIGENCE

56.     Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

57.     It was the duty of the Defendants to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing BAYCOL.

58.     Contrary to their duty, the Defendants were guilty of one or more of the following careless and negligent acts and/or omissions:

    a.     Failed to adequately and properly test and inspect BAYCOL so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

    b.     Failed to utilize and/or implement a reasonably safe design in the manufacture of BAYCOL;



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

    c.    Failed to manufacture BAYCOL in a reasonably safe condition for which it was intended;

    d.    Failed to adequately and properly warn Plaintiffs and Class members purchasing BAYCOL of the risks of complications when used in a manner for which it was intended;

    e.    Failed to adequately and properly warn Plaintiffs and Class members purchasing BAYCOL of the risks of diseases when used in a manner for which it was intended;

    f.    Failed to adequately and properly label BAYCOL so as to warn the Plaintiffs and Class members of the risks of complications;

    g.    Failed to adequately and properly label BAYCOL so as to warn the Plaintiffs and Class members of the risks of rhabdomyolysis;

    h.    Manufactured BAYCOL which constituted a hazard to health;

    i.    Manufactured BAYCOL which caused adverse side effects; and

    j.    Were otherwise careless and negligent.

59.    As a direct and proximate result of Defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing BAYCOL in interstate commerce, Plaintiffs and class members are at an increased risk of developing rhabdomyolysis and have suffered compensatory and punitive damages in an amount to be proven at trial.

**COUNT III**
**NEGLIGENCE PER SE**

60.    Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

17

61.   Defendants had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of Baycol.

62.   Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq., related amendments and codes and federal regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, and other applicable laws, statutes and regulations.

63.   Plaintiffs, as purchasers and consumers of Baycol, are within the class of persons the statutes and regulations described above are designed to protect and Plaintiffs' injuries are the type of harm these statutes are designed to prevent.

64.   Defendants' acts constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331 and constitutes a breach of duty subjecting Defendants to civil liability for all damages arising therefrom, under theories of negligence per se.

65.   Defendants failed to meet the standard of care set by the following statutes and regulations, which were intended for benefit of individuals such as Plaintiffs, making Defendants negligent per se:

(a)   The labeling lacked adequate information on the use of the drug Baycol [21 C.F.R. Section 201.56(a) and (d);

(b)   The labeling failed to provide adequate warnings of severe and disabling medical conditions including, without limitations, muscle pain, weakness, tenderness, malaise, fever, dark urine, nausea, vomiting, fatal kidney failure, rhabdomyolysis and other adverse



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54™ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

18

medical conditions as soon as there was reasonable evidence of their association with the drug [21 C.F.R. 201.57(e)];

(c)     There was inadequate information for patients for the safe and effective use of Defendants' drug [21 C.F.R. 201.57(f)(2)];

(d)     There was inadequate information regarding special care to be exercised by the doctor for safe and effective use of Defendants' drug [21 C.F.R. 201.57(f)(1)]; and

(e)     The labeling was misleading and promotional [21 C.F.R. 201.56(b)].

66.     As a result of the violations of the statutes described above, Plaintiffs suffered injuries and damages as alleged herein.

### COUNT IV
### VIOLATIONS OF ALL STATES' CONSUMER PROTECTION STATUTES

67.     Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

68.     Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of any and all state consumer protection statutes when they represented, through their advertising, warranties, and other express representations, that Baycol had benefits or characteristics that it did not actually have. Defendants further violated state consumer protection statutes when they falsely represented that Baycol was of a particular standard or quality when it was not. Finally, Defendants violated state consumer protection statutes when they advertised Baycol with the intent not to sell it as advertised, and when, in so doing, they concealed and suppressed facts material to the true characteristics, standards, and quality of Baycol.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

19

69.   Defendants' deceptive practices were specifically designed to induce Plaintiffs and the Classes to buy Baycol.

70.   As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and the Classes have suffered actual damages and members of the Classes are threatened with irreparable harm by undue risk of physical injuries or death.

## COUNT V
## UNJUST ENRICHMENT

71.   Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

72.   As the intended and expected result of their conscious wrongdoing, Defendants have profited and benefitted from the purchase Baycol by the Plaintiffs and the Class.

73.   Defendants have voluntarily accepted and retained these profits and benefits, derived from the Plaintiffs and the Plaintiff Class, with full knowledge and awareness that, as a result of Defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs and the Plaintiff Class were not receiving a product of the quality, nature, or fitness that had been represented by Defendants or that Plaintiffs and the Plaintiff Class, as reasonable consumers, expected.

74.   By virtue of the conscious wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of the Plaintiffs and the Plaintiff Class, who are entitled to in equity, and hereby seek, the disgorgement and



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy the Defendants' unjust enrichment.

### COUNT VI
### MEDICAL MONITORING

75.    Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

76.    Plaintiffs and class members have been significantly exposed to proven hazardous substances through the intentional, negligent, or wrongful actions of the Defendants.

77.    As a proximate result of this exposure, Plaintiffs and class members suffer significantly increased risks of developing serious, latent diseases.

78.    That increased risk makes periodic diagnostic medical examinations reasonably necessary.

79.    Monitoring and testing procedures exist which make the early detection and treatment of disease possible and beneficial.

80.    Defendants' actions render them liable to pay all costs of a comprehensive court-supervised medical monitoring program, to provide diagnostic and treatment services for the benefit of the class.

81.    As a direct and proximate result of Defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing BAYCOL in interstate



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE. 888.882.3453
kbmoll.com

commerce, Plaintiffs and class members are at an increased risk of developing rhabdomyolysis and have suffered compensatory and punitive damages in an amount to be proven at trial.

## COUNT VII
## BREACH OF EXPRESS WARRANTY

82.     Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

83.     Defendants expressly warranted to Plaintiffs, by and through statements made by Defendants or their authorized agents or sales representative, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Baycol was safe, effective, fit and proper for its intended use.

84.     In using Baycol, Plaintiffs relied on the skill, judgment, representations and foregoing express warranties of the Defendants.   Said warranties and representations were false in that the aforementioned product was not safe and was unfit for the uses for which it was intended.

85.     As a direct and proximate result of Defendants' breaches of warranties, Plaintiffs and class members are at an increased risk of developing rhabdomyolysis and have suffered compensatory and punitive damages in an amount to be proven at trial.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

## COUNT VIII
## BREACH OF IMPLIED WARRANTY

86.   Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

87.   Prior to the time that Baycol was used by Plaintiffs, Defendants impliedly warranted to Plaintiffs that Baycol was of merchantable quality and safe and fit for the use for which it was intended.

88.   Plaintiffs were and are unskilled in the research, design and manufacture of Baycol and reasonably relied entirely on the skill, judgment and implied warranty of the Defendants in using Baycol.

89.   Baycol was neither safe for its intended use nor of merchantable quality, as warranted by Defendants, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

90.   As a direct and proximate result of Defendants' breaches of warranties, Plaintiffs and class members are at an increased risk of developing rhabdomyolysis and have suffered compensatory and punitive damages in an amount to be proven at trial.

## COUNT IX
## CORPORATE RESPONSIBILITY:
## JOINT VENTURES, PARENT/SUBSIDIARIES,
## AND/OR SUCCESSOR CORPORATION

91.   Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

92.    As a result of their participation in various joint ventures, parent/subsidiary relationships, and/or successor corporations, Defendants are liable to the Plaintiffs.

93.    As a result of their negligent supervision and actual supervision of various joint ventures, parent/subsidiary relationships, and/or successor corporations, Defendants are liable to Plaintiffs.

94.    As a result of the invalidity of various indemnification agreements, Defendants are liable to Plaintiffs.

95.    Defendants are liable to Plaintiffs, as alter egos of their joint ventures, parent/subsidiary relationships, and/or successor corporations.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray that the Court enter judgment against BAYER AG, BAYER CORPORATION, and BAYER PHARMACEUTICAL DIVISION and in favor of the Plaintiffs and the Classes, and to award the following relief:

a.    Certification of the proposed Classes and Subclasses under Rule 23 of the Federal Rules of Civil Procedure;

b.    Appoint Kenneth B. Moll of KENNETH B. MOLL & ASSOCIATES, LTD. as lead class counsel;

c.    Appoint Hal J. Kleinman and Sonia S. Kinra KENNETH B. MOLL & ASSOCIATES, LTD. members of the Plaintiffs' Steering Committee;

d.    Declare that Baycol is dangerous and defective, and that Bayer is financially responsible for notifying all members of the Class of the defective drugs;

e.    Declare that Bayer must disgorge, for the benefit of the Class, all or part of their ill-gotten gains and benefits received from the sale of



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

24

Baycol, and/or make full restitution to Plaintiffs and the members of the Class;

f.  Determine each Defendant's liability for punitive/exemplary damages to the extent necessary and appropriate to punish and deter the conduct complained of herein;

g.  Award compensatory and punitive damages for the acts complained of herein, in an amount to be proven at trial;

h.  Award attorneys' fees and costs, plus interest, as allowed by law, and/or from a common fund created hereby;

i.  Provide worldwide consumer notice, at Defendants' expense, regarding medical monitoring;

j.  Order Defendants to fund Court-supervised or Court-approved programs to medically monitor Class members, to pay or reimburse the cost of medical treatment of Class members; and

k.  Order such other or further judicial determinations, and relief, as may be appropriate under the circumstances under the Court's exercise of its equitable jurisdiction and inherent authority in this proceeding.

RESPECTFULLY SUBMITTED,

By: _____

Kenneth B. Moll, Esq.
Hal J. Kleinman, Esq.
Sonia S. Kinra, Esq.
KENNETH B. MOLL & ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
kbmoll.com



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

----------------------------------------------------x

Arnold Seiffer,
                    Plaintiff,

v.

Bayer Corporation, and Bayer AG,
                    Defendants.

----------------------------------------------------x

Civ. No . **01   1583**

*Receipt #5024*
*No Summonses Is*

*1532*

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF

## INTRODUCTION

Plaintiff, for his complaint, alleges as follows, based on personal knowledge as to his own

acts, and upon information and belief as well as upon his attorneys' investigation as to

defendants' acts:

1.     This is a class action against the defendants on behalf of plaintiff individually and

as representative of a class consisting of all persons who ingested the drug Baycol® (cerivastatin

sodium).  Baycol is a "statin," one of a class of drugs which is believed to lower LDL cholesterol

and triglyceride levels by blocking a certain liver enzyme.  Baycol is completely synthetically

derived, unlike most other statins which are fungally derived.  Baycol is also more potent than

other statins.  For example, Baycol is approximately 100 times more potent than lovastatin.

Baycol is also unlike other statins in the way that it is metabolized within the body.

2.     Though other statins have been linked with muscle cell damage in rare cases,

Baycol users experienced the problem much more frequently.  With Baycol, reports of serious

rhabdomyolysis occurred approximately ten times more often than with other statins.

Rhabdomyolysis is the breakdown of muscle fibers due to muscle cell death.

3.      As Dr. Scott Grundy of the University of Texas Southwestern Medical Center stated, "Baycol really stood out as being different. Baycol did not offer any benefits beyond those of other statins. But it carried a potential risk, and that leads to a conclusion that it is no longer safe to be marketed." Dr. Sidney C. Smith Jr., a cardiologist with the American Heart Association, said that the five other statins on the market have an impressive safety record, and noted: "One reason Baycol was withdrawn is that its safety profile isn't similar to other statins."

4.      It is estimated that more than 700,000 people took this drug in the United States. Unfortunately for patients prescribed Baycol, it has been associated with significantly more adverse events and fatalities than other available statins. These adverse events include those related to the drug's toxic effect on muscle cells, which may set off a chain reaction of cell necrosis, myopathy, rhabdomyolysis, and renal failure. The drug may cause long term degeneration of muscle fibers, renal damage and liver lesions. In addition, muscle cell necrosis and inflammation, myopathy, rhabdomyolysis, and kidney damage, as well as damage to other major organs, may occur asymptomaticly. Thus, patients who took Baycol may not be aware that their health is at risk or that they may have already sustained an injury which may shorten their lives without diagnosis and treatment.

## THE PARTIES

5.      Upon information and belief, Defendant Bayer Corporation ("Bayer") is an Indiana corporation that maintains its national corporate headquarters at 100 Bayer Road, Pittsburgh, Pennsylvania. These headquarters are the location of the management and administrative personnel for all manufacturing, warehousing, and sales divisions nationwide. Bayer's wrongful acts complained of herein originated, occurred, emanated from and/or were

orchestrated from Pennsylvania where Bayer maintains its headquarters. Bayer's Corporate

Strategic Planning/Organization, Corporate Quality and Corporate Legal departments are located

within this State -- the oversight and administration of the drug's development occurred at

headquarters. The sales and marketing materials for the drug were developed and approved in

Pennsylvania and emanated from this State. The training materials provided to the sales people

or "detailers" were developed, created and approved in Pennsylvania. The drug's labels and its

changes were developed and approved in Pennsylvania. The decision to maintain this drug on

the market in the United States, despite the rising injury and death toll, was made here. Bayer

marketed and distributed Baycol throughout the United States.

6.   Defendant Bayer AG ("Bayer AG") is a global diversified chemical company

based in Germany. Healthcare products, including products sold through defendant Bayer,

compromise more than 30% of its business. Baycol was marketed and distributed worldwide

(with the exception of the United States) by Bayer AG under the trade name Lipobay®.

7.   Defendant Bayer is a wholly owned subsidiary of Defendant Bayer AG. The two

companies share many of the same officers and directors. The drug marketed and distributed in

the United States by Bayer was manufactured by Bayer AG.

8.   Plaintiff Arnold Seiffer, a resident of California, was prescribed, purchased and

ingested Baycol from approximately July through August, 2001.

## JURISDICTION AND VENUE

9.   Plaintiff asserts jurisdiction pursuant to 28 U.S.C. § 1332. There is complete

diversity of citizenship between plaintiff and defendants Bayer and Bayer AG. The amount in

controversy for the plaintiff and each individual member of the putative class exceeds $75,000

exclusive of interest and costs because the plaintiff and each member of the class has an

undivided interest in obtaining the injunctive and equitable relief as set forth hereinafter, which

includes a medical monitoring program the value of which exceeds $75,000.

## FACTUAL BACKGROUND

10.     Cholesterol is a waxy substance produced in the liver which plays a crucial role in

maintaining cell membranes and building certain hormones.  Cholesterol is generally described

as either "good cholesterol" (when it is a component of high density lipoproteins or HDL) or

"bad cholesterol" (when it is a component of low density lipoproteins or LDL).  LDL is

considered bad because as it travels through the body it tends to leave deposits in the vascular

system.  HDL is considered good because it is believed to be able to collect the deposits left by

the LDL and return them to the liver.  Statin drugs work to lower LDL levels by blocking the

liver's ability to manufacture cholesterol.

11.     The market for cholesterol lowering drugs is huge.  Millions of Americans are

prescribed drugs to lower their cholesterol levels.  Although Baycol had less than 4% of the

market, the withdrawal of Baycol will likely reduce revenues by hundreds of millions of dollars.

Defendants viewed Baycol as a significant factor in their forecasted sales and revenue growth.

12.     In June 1997 the Food and Drug Administration approved Baycol for marketing in

the United States.  At the time of its approval, it was touted as an "exciting new alternative

treatment option" because of the "ultra-low doses needed to achieve cholesterol reduction."  The

recommended dose was .3 mg once-daily.  When the drug was introduced to the U.S. market,

David Ebsworth, President of Bayer's Pharmaceutical Division, remarked upon the "excellent

side effect profile of BAYCOL" and defendants claimed that the percentage of patients

discontinuing in connection with adverse events in the clinical trials was the same for Baycol treated patients as for patients receiving a placebo.

13.     However, Bayer was well aware that its drug was not any more efficacious at the approved doses than other statins already on the market. Indeed, the FDA specifically stated that Bayer could not make efficacy claims for Baycol compared to other marketed statins. Bayer knew that the drug, at the approved dosage levels, did not perform any better, and in some ways failed to perform as well as, other available statins. Indeed, in its new drug application, Bayer proposed limiting marketing of Baycol to just the .2 mg and .3 mg doses, and abandoning the .1 mg and .05 mg doses, "apparently based on the limited potency of the lower dosage forms."

14.     Thus, for Bayer to gain a piece of the statin market, Baycol's performance had to be improved so Bayer could claim that it was better than other statins on the market. Despite the clear signal in the clinical trials that adverse events increased in number and severity as the dosage levels were increased, Bayer began the approval process to market higher doses of Baycol.

15.     Defendants first became aware that Baycol was linked to a rhabdomyolysis fatality in 1998. The first reported death occurred in Germany. The fatality was reported to the Bundesinstitut fuer Arzneimittel und Medizinprodukte, BfArM, the German equivalent to the FDA.

16.     Bayer has admitted that the first discussions it had with the FDA concerning the safety of Baycol did not occur until January 1999. Post-marketing experience had shown a disturbing trend of users experiencing rhabdomyolysis, including the reported death.

17.    In January 1999, the FDA required that the drug's labeling be changed to include a warning that cases of rhabdomyolysis (some withe acute renal failure) had been linked specifically to use of Baycol.  However, the language of the warning characterized these incidents as "rare."

18.    The January 1999 labeling change also included information about the drug's post-marketing experience.  However, the language once again was phrased so that it did not implicate Baycol as a cause of these adverse events:

> The following events have been reported since market introduction.  While these events were temporally associated with the use of Baycol, *a causal relationship to the use of Baycol cannot be readily determined* due to the spontaneous nature of reporting of medical events, and the lack of controls: hepatitis [liver inflammation], myositis [muscle inflamation], rhabdomyolysis [the destruction of muscle cells], some with associated renal failure (most cases involved concomitant gemfibrozil), urticaria [hives], angioedema [excessive fluid retention in the vascular system], visual disturbance, blurred vision." (emphasis and bracketed matter added).

19.    However, the Company should have been aware that at least some of these adverse events were causally related to ingestion of Baycol because they mirrored experiences that occurred in controlled studies.

20.    In a study of *healthy normocholesterolemic* young men, seven of the 20 test subjects experienced elevated creatine kinase levels and elevated liver enzyme levels.  When muscle cells die, they spill their enzymatic contents into the blood stream.  Increases in serum creatine kinase ("CK") levels indicate that a large number of muscle cells are being destroyed.  Similarly, when liver cells die, they also release their contents into the blood stream.  Increased

- 6 -

liver enzyme levels (ALTs or ASTs) indicate that the liver is sustaining a serious injury. The elevations recorded in this study all occurred in *healthy young* volunteers.

21.     In another study, thirty-two healthy volunteers received Baycol at the rate of .2 mg daily for seven days. Eighteen of the thirty-two subjects (56%) receiving Baycol experienced adverse events. Nine of these thirty-two subjects, more than 30%, experienced increases in their liver enzyme levels. Another volunteer experienced "treatment-emergent elevation" of creatine kinase.

22.     Bayer was well aware that the increases in the CK and liver enzymes meant that the drug was likely damaging patients' muscles and livers, which could lead to rhabdomyolysis, kidney damage and/or failure, liver damage and/or failure, or death.

23.     Despite this knowledge, Bayer pushed ahead seeking approval to market a .4 mg dose. To do so, Bayer undertook additional studies to demonstrate the safety and efficacy of the drug. However, the studies demonstrated that adverse events were more frequent and severe as the dosage amount increased.

24.     The comparison study of .2 mg Baycol doses versus .4 mg Baycol doses demonstrated that higher doses of Baycol were likely to cause significant cell death. In this study, eight patients receiving a .4 mg dose of Baycol and five patients receiving a .2 mg dose of Baycol withdrew from the study due to adverse effects. The incidence of adverse events that were linked as having a probable or possible relationship to Baycol was 21.4% in the .4 mg group and 19.8% in the .2 mg group. Elevated CK levels were reported in six patients in the .2 mg group and in twelve patients in the .4 mg group. Similarly, abnormal liver function tests were reported for seven patients in the .2 mg group and 12 patients in the .4 mg group. Although

no patients in the .2 mg group experienced CK elevations greater than 3 times the upper limit of normal, nine patients in the .4 mg group experienced CK elevations at this level.

25.    Nevertheless, Bayer pushed ahead and sought approval to market a .4 mg dose. The FDA granted that approval in May 1999.

26.    Reports of adverse events in the patient population continued.  By January 2000, it was undisputed that Baycol-induced rhabdomyolysis caused a patient to die in the United States.

27.    Despite the serious adverse events that had occurred in the post-marketing patient population, including fatality reports, and the signal that the drug could cause significant cell necrosis, particularly at higher doses, Bayer once again sought approval to market a higher strength tablet (.8 mg), permission to increase the daily dose to .8 mg, and approval of the drug as a treatment for additional disorders.

28.    In order to receive approval, the Company was required to undertake three "formulary switch conversion studies."  These studies again demonstrated the dangers of the drug and that the increased dose resulted in greater numbers of adverse events.  Patients receiving the .4 mg dose and the .8 mg dose continued to suffer serious adverse effects from the drug.

29.    In the large, pivotal study for the increased dose, six patients at the .4 mg level withdrew from the study because of adverse events.  **Thirty** patients in the .8 mg group withdrew from the study because of adverse events.  The six patients in the .4 mg group who withdrew from the study cited CK elevations, elevated liver function tests, leg cramps and myalgia [muscle pain].  The thirty patients in the .8 mg group who withdrew from the study cited elevated CK levels (10 events), elevated liver enzymes (seven events), leg cramps, myaglia, and myasthenia

[muscular debilitation]. The researchers characterized several of the adverse events experienced in each group as "serious."

30.     In this study, significant elevations in liver enzyme levels were seen in several patients. In the .4 mg group, three patients experienced liver enzymes test of greater than 3 times the upper limit of normal, indicating serious liver injury. In the .8 mg group, this number jumped to 18 patients with elevated liver enzymes greater than 3 times the upper limit of normal. Significant CK elevations were also found in study patients. Six patients in the .4 mg group had elevated CK levels; **twenty** patients in the .8 mg group had elevated CK levels. Notably, most of these patients were asymptomatic; their muscle injury was only diagnosed through laboratory monitoring of patients in the study.

31.     These increases in serum CK and liver enzymes levels should have signaled that the drug was causing significant cell death in the patients. Over ten patients in this study experienced increased CK elevations greater than *ten times* the upper limits of normal. By comparison, in this same study, the placebo group reported no elevations of either CK or liver enzymes.

32.     Despite this information, Bayer moved ahead with its plans to market Baycol at higher dose levels.

33.     In July 2000, Bayer received approval to market a new higher strength dose of Baycol.

34.     Bayer continued to receive notices of adverse events associated with the drug, both directly from doctors and from the FDA. These adverse events occurred more frequently with dose levels at .4 mg and above.

35.     By the Fall of 2000, a sufficient number of adverse events had been reported to the Arznei Telegram, a drug safety information bulletin based in Germany, that the drug was put on its watch list.  Bayer AG is a subscriber to, and receives, the Arznei Telegram.

36.     The number of adverse events continued to increase and to be reported.  By March 2001, the Arznei Telegram published a warning concerning use of the drug.  This warning was sent to the publication's subscribers, including Bayer AG, and the BfArM.

37.     The adverse events which were reported to the Arznei Telegram were also reported by the individual doctors to the BfArM.  The BfArM, like the FDA, informs the drug's manufacture of every adverse event report received relating to the drug.

38.     Because Bayer and Bayer AG share many of the same officers, both companies were well aware of the problems with the drug in 1998, 1999 and 2000 which had been experienced by the post-marketing population.  In addition, they were aware that the drug could cause dangerous, asymptomatic medical conditions from their own clinical studies and studies conducted by other researchers.

39.     In April 2001, Bayer again revised the label to strengthen warnings about prescribing Baycol with a certain other drug, gemfibrozil.  In addition to the label change, the Company issued a "Dear Doctor" letter in May 2001 to further alert doctors not to prescribe Baycol with gemfibrozil.  However, these warnings were ineffectual because as the mounting fatalities showed, the deaths were not due solely or always to drug interaction.  In the United States, two-thirds of the deaths occurred in patients who took Baycol alone.  In Germany, where five deaths had been reported, four of those patients were not taking gemfibrozil.  However, neither the "Dear Doctor" letter nor the revised label included this information.  Instead, the

changes emphasized the drug interaction problem with gemfibrozil and down-played any dose

dependent toxic effect.  Defendants were well aware that the higher doses posed a danger to

patients -- the signal existed in the studies they conducted, the signal existed in the adverse

events reported to the defendants, and Bayer admittedly stopped distributing "free samples" of

Baycol .8 mg tablets in March 2001.

40.    Although Bayer was well aware of the nature and extent of the danger posed by

Baycol by March 2001, if not before, it continued to market the drug to unsuspecting patients and

doctors.

41.    In its marketing and sales materials the Company repeatedly failed to explain the

risks Baycol patients faced.  For example, the FDA warned Bayer to stop using sales material

that implied Baycol was superior to, and possessed a clinical advantage over, other statins.  The

sales material also implied that Baycol had a positive effect on cardiovascular morbidity and

mortality which had never been demonstrated.  The FDA also specifically cited Bayer for a "lack

of fair balance" because it failed to discuss the risk information associated with the drug,

adequately or appropriately.  The FDA was especially disturbed that "Bayer present[ed] the most

important risk information (risk of myopathy, rhabdomyolysis, etc. . . . ) with much less

emphasis" than required.

42.    When defendants received approval to market Baycol at a .4 mg daily dose level,

they quickly placed advertisements in medical journals trumpeting Baycol's "proven

performance," "exceptional value," and its "powerful new strength."  Notably, the

advertisements barely discussed the risks associated with the drug,  particularly the increased

risks seen in the studies when Baycol dosage amounts were increased.  Defendants instead

continued to characterize rhabdomyolysis (the "important risk information" according to the

FDA) as "rare."  Rather than disclose the true rate of adverse events that were linked to the drug

in the formulary studies, defendants lumped all adverse events experienced by all patients in the

studies together so that they could state the "most common adverse events *regardless of causality*

were pharyngitis, rhinitis, headache and sinusitis" (emphasis added).  Defendants chose not to

disclose the experience or incident rate of adverse events they linked to the drug, including

elevated liver enzymes and CK elevations, both indicating serious events of cell necrosis.

43.     Similarly, defendants touted the introduction of the .8 mg daily dose of Baycol

without disclosing the true risks the drug posed at this higher level.  While large, colorful print

advised doctors that Baycol was "more powerful" and so effective "84% of patients" reached

their cholesterol level goals, the risks of the drug were buried in fine print.  And, even these

disclosures were misleading.  For example, rather than discuss the adverse reactions to Baycol at

a .8 mg dose, the defendants lumped all the clinical studies together, including those from the

initial new drug application for doses at .2 mg and below, and asserted "in clinical trials with

over 5000 patients, the most common adverse events, *regardless of causality*, were pharyngitis,

rhinitis, headache and sinusitis" (emphasis added).  As they had done before, defendants

purposefully failed to inform the prescribing doctors about the serious adverse reactions the

defendants had causally connected to use of the drug, or the several deaths that the defendants

were aware of that had been linked to Baycol.

44.     In the face of the increasing number of serious adverse events, Bayer finally

relented and removed Baycol from the market on August 8, 2001.  Despite its knowledge that

Baycol alone could and did cause rhabdomyolysis in the majority of cases reported (including

more than 50 fatalities, many of which did not involve gemfibrozil), Bayer posited that it was withdrawing the drug from the market due to its inability to stop the co-prescription of Baycol with gemfibrozil.

45.     Bayer continues to deny any responsibility for the damage caused by Baycol. Despite its knowledge in 1998 of Baycol-induced rhabdomyolysis, and the loud warning bell from the formulary change studies, Bayer pressed ahead with its plans. Placing market share ahead of patient safety, Bayer twice created and marketed a higher dose version of Baycol. Rather than admit its wrongdoing, Bayer has attempted to blame the doctors for failing to prescribe the drug properly, claiming that the doctors prescribed it in combination with another drug, gemfibrozil, which caused the deaths and injuries. However, nearly 66% of the reported fatalities in the United States, and 80% of the deaths reported in Germany, occurred in patients receiving Baycol alone.

46.     Bayer's failure to warn the patient population and prescribing doctors about the risks of this drug, and failure to pull the drug from the market in the face of mounting injuries and fatalities, have caused several foreign regulators to call for an investigation of defendants' knowledge and actions.

Baycol's Adverse Effects

47.     Baycol has been strongly causally associated with rhabdomyolysis. In rhabdomyolysis, the cellular contents of muscle cells are leaked into the blood stream. One of the cellular contents, myoglobin, can, on its own, block structures within the kidneys and cause kidney damage and/or failure. Myoglobin also breaks down into toxic compounds which may cause kidney damage and/or failure. The presence of myoglobin may resolve early in the

rhabdomyolysis process or appear sporadically. The presence of creatine kinase levels greater

than two times the upper limit of normal is another indication that rhabdomyolysis is in process.

Some patients complain of pain in their muscles, joints and bones. However, many patients may

not experience any overt manifestations or symptoms. A study by Gabow, et al., entitled "The

Spectrum of Rhabdomyolysis" determined that only 50% of patients who were diagnosed with

rhabdomyolysis initially complained of pain, and a small minority reported discoloration of their

urine. Dr. Larbi, in an article entitle "Drug-Induced Rhabdomyolysis" states that less than 10%

of patients diagnosed with the disease manifest muscle pain, weakness and dark urine. However,

if the disease process is not identified and treated, it could progress to renal damage and/or

failure. Even if the disease process is identified and treated, the patient may still experience (i)

liver problems; (ii) "compartment syndrome" (a group of symptoms that indicate a nerve or

tendon is being squeezed or restricted, and may include pain and loss of motion); (iii)

disseminated intravascular coagulation ("DIC") (systemic activation of the coagulation system

simultaneously leads to intravascular thrombus formation (compromising blood supply to various

organs) and exhaustion of platelets and coagulation factors (resulting in hemorrhage)); (iv)

hyperkalemia (a potentially life-threatening illness that can lead to sudden death from cardiac

arrhythmias); (v) pulmonary edema; and (vi) persistent kidney damage including tubular

necrosis.

48.    Importantly, despite defendants' knowledge that the drug caused significant

muscle cell death, patients were never told or advised to monitor their CK levels.

49.    In addition, concerns have been raised that the muscle damage caused by Baycol

may be covert -- that is, the muscle cells may not die at a high enough rate such that their

enzymatic contents would be detectably elevated. Thus, major muscle damage may have occurred undetected.

50. Contrary to defendants' representations, the muscle damage caused by Baycol is not limited to "skeletal" muscles, like the calf or arm. Defendants are aware that the muscle damage can occur with every muscle in the body from the smallest muscles governing eye movement, to the largest skeletal muscles, to one of the most important muscles, the heart.

51. Defendants falsely and deceptively misrepresented or omitted a number of material facts regarding Baycol, including, but not limited to, the adverse health effects caused by Baycol including the frequency, severity and rapidity of adverse events.

52. Moreover, despite knowing that Baycol was harmful to health and often caused life-threatening illness to persons that consumed it, defendants, through their agents and employees, continued to promote the use of Baycol to physicians who unwittingly prescribed the drug to persons such as plaintiff and the members of the proposed class. Defendants failed to fully and timely inform the consuming public, federal authorities, the FDA and/or medical professionals of their knowledge that this was a harmful drug.

53. Plaintiff and class members did not know of the full extent of the risks and dangers associated with Baycol and were not made aware of these risks and dangers by defendants. Defendants intended to deceive the consuming public and medical professionals into believing that Baycol was safe when they knew or should have reasonably known the true nature and extent of the serious side effects. Defendants failed to provide adequate warnings to plaintiff and/or the plaintiff's physicians and medical professionals regarding these dangerous side effects.

- 15 -

54.     Had plaintiff known of the full extent of the risks and dangers associated with Baycol, plaintiff would not have purchased or ingested Baycol.

55.     Defendants knew or should have known that Baycol created significant risks of serious injuries or disorders, including damage to the kidneys, liver and heart, as to which Bayer failed to make proper, reasonable or adequate warnings.  Defendants failed to warn the public and physicians about the special risks and serious problems associated with the use of Baycol.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this class action pursuant to Federal Rules of Civil Procedures Rules 23(a)(1)-(4) and 23(b)(2) on behalf of a class consisting of all persons who have ingested Baycol that was designed, manufactured, supplied, distributed, sold and/or placed in the stream of interstate commerce by defendants (the "Class").

57.     Excluded from the Class are defendants, including any parent, subsidiary, affiliate, or controlled person of Bayer, and any person who has suffered death or been diagnosed with serious personal injury causally linked to the ingestion of Baycol.

58.     Plaintiff is a member of the class he seeks to represent.  More than 700,000 prescriptions were filled for Baycol in the United States and its territories.  The members of the Class are geographically dispersed and number in the hundreds of thousands.  They are so numerous that joinder of all of them is impractical.

59.     There are questions of law or fact common to the class as required by Fed. R. Civ. P. 23(a)(2), including, but not limited to:

a.   whether defendants designed and manufactured a drug that was dangerously defective because its use leads to serious adverse health effects;

b.   whether defendants continued to manufacture, market, distribute, and sell Baycol notwithstanding their knowledge of the drug's dangerous nature;

c.   whether Baycol is a dangerous substance and, as a result, whether class members are at increased risk of developing serious health problems related to the use of Baycol;

d.   whether defendants knew or should have known that the use of Baycol leads to serious adverse health effects;

e.   whether defendants adequately tested Baycol prior to selling it;

f.   whether defendants are strictly liable for sale of a defective product;

g.   whether defendants acted negligently in promoting and selling Baycol;

h.   whether defendants misrepresented in  advertisements, promotional materials and other materials, among other things, the safety profile, risk factors or side effects of Baycol;

i.   whether, in marketing and selling Baycol, Bayer failed to disclose the dangers and risks to the health of persons ingesting the drug;

j.   whether the warnings and information Bayer provided with Baycol were adequate in warning of the potential hazards resulting from its use;

k.      whether there exist monitoring and testing procedures which make early

detection and treatment of the serious health damage caused by exposure

to Baycol possible and beneficial; and

l.      whether class members are aware of their injuries requiring a need for

warning and monitoring as certain of the adverse effects of Baycol create

an asymptomatic occurrence.

60.      The claims of the representative plaintiff are typical of the claims of the class in

that the plaintiff and the members of the class ingested Baycol and did suffer or may suffer harm

as a result.

61.      Plaintiff will fairly and adequately represent and protect the interests of the

members of the class.  Plaintiff has no interests which are adverse to the interests of the class.

Plaintiff has retained counsel competent and experienced in complex class actions and medical

and pharmaceutical products liability litigation.

62.      Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because

defendants have acted on grounds generally applicable to the class, making appropriate equitable

and injunctive relief in the form of screening and medical monitoring with respect to plaintiff and

the class members.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

## NEGLIGENCE

63.      Plaintiff repeats and realleges the allegations set forth in the paragraphs above as

if fully set forth herein.

- 18 -

64.     Defendants had a duty to exercise reasonable care in the manufacture, sale and/or distribution of Baycol into the stream of commerce, including a duty to assure that this drug did not cause users to suffer from unreasonable, dangerous side-effects.  Defendants failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, marketing and/or distribution into interstate commerce of Baycol, in that defendants knew or should have known that this drug created a high risk of unreasonable, dangerous side-effects, some of which are fatal.

65.     Defendants breached their duties to plaintiff and the other class members and were negligent in the licensing, testing, design, manufacture, packaging, warning, advertising, promotion, distribution and sale of Baycol, in that they:

a.      failed to use ordinary care in designing and manufacturing Baycol so as to avoid the aforementioned risks to individuals ingesting Baycol;

b.      failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety and side effects of Baycol;

c.      failed to provide adequate training, warnings and/or information  to medical care providers for appropriate use of Baycol;

d.      failed to adequately test and/or warn about the serious side effects of Baycol;

e.      failed to include adequate warnings with Baycol that would alert consumers, physicians, hospitals, clinics, and other users to the potential risks and the nature, scope, severity, and duration of any serious side-effects of Baycol;

- 19 -

f.      negligently failed to inform the FDA in a timely manner of new information as they became aware of it regarding the potential risks and the nature, extent, scope, severity and duration of the serious side effects of Baycol;

g.      negligently continued to promote the efficacy and safety of Baycol while providing inadequate warnings and failing to disclose the full extent of the risks that defendants knew existed;

h.      continued to promote the efficacy and safety of Baycol, while providing little or no warnings, and downplaying any risks, even though defendants knew the drug posed risks of kidney damage, liver damage, heart damage and/or death;

i.      delayed warnings of, and then failed to provide adequate warnings about kidney damage, liver damage, heart damage and/or death, which may have dissuaded medical providers from prescribing Baycol and depriving medical providers of the ability to weigh the true risks against the benefits of prescribing Baycol; and

j.      were otherwise careless or negligent or negligent per se.

66.     Although defendants knew or should have known that Baycol caused unreasonably dangerous side effects, defendants continued to market Baycol to consumers, including plaintiff and the other class members when there were safer alternative methods to lower cholesterol levels, including other safer, more effective drugs.

67.     Bayer knew or should have known that consumers such as plaintiff and the other class members would suffer injury as a result of defendants' failure to exercise ordinary care as described above.

68.     As a direct, proximate and legal result of the negligence, carelessness, other wrongdoing and actions of defendants described herein, plaintiff and the other class members have been damaged.

## SECOND CAUSE OF ACTION

## STRICT PRODUCT LIABILITY

### (Pursuant to Restatement Second of Torts 402a (1965))

69.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

70.     The Baycol manufactured and/or distributed and/or supplied by defendants was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design or formulation.

71.     Alternatively, the Baycol manufactured and/or distributed and/or supplied by defendants was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than other cholesterol lowering treatment drugs.

72.     There existed, at all times material hereto, safer alternative medications.

73.     Defendants did not perform adequate testing on Baycol. Adequate testing would have shown that Baycol caused serious adverse effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope, incidence rates and severity should have been made.

74.    The Baycol manufactured, designed, marketed, distributed and/or sold by defendants was unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of Baycol, and the severity and duration of such adverse effects; the warnings given did not accurately reflect the symptoms, scope or severity of adverse effects and did not accurately relate the relative lack of efficacy.

75.    Defendants did not warn the FDA of material facts regarding the safety and efficacy of Baycol, which facts defendants knew or should have known.

76.    The Baycol manufactured and/or distributed and/or supplied by defendants was defective due to inadequate post-marketing warning or instruction because, after defendants knew or should have known of the risk of injury from Baycol, they failed to provide adequate warnings to users or consumers of Baycol and continued to promote Baycol.

77.    As a result of the defective condition of Baycol, plaintiff and class members have been damaged.

## THIRD CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

78.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

79.    Defendants expressly warranted that Baycol was safe and well accepted by patient studies.

80.    Baycol does not conform to these express representations because Baycol is not safe and has high levels of serious, life-threatening side effects.

81.     As a direct and proximate result of the breach of said warranties, plaintiff and Class members have been damaged.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

82.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

83.     At the time defendants marketed, sold and distributed Baycol for use by plaintiff and Class members, defendants knew of the use for which Baycol was intended and impliedly warranted Baycol to be of merchantable quality and safe and fit for such use.

84.     Plaintiff and the Class members reasonably relied upon the skill and judgment of defendants as to whether Baycol was of merchantable quality and safe and fit for its intended use.

85.     Contrary to such implied warranty, Baycol was not of merchantable quality or safe or fit for its intended use, because Baycol was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used as described above.

86.     As a direct and proximate result of the breach of implied warranty, plaintiff and Class members have been damaged.

## FIFTH CAUSE OF ACTION

## MEDICAL MONITORING, INJUNCTIVE AND EQUITABLE RELIEF

87.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

88.     The foregoing wrongful and negligent acts, omissions and conduct by defendants constitute actionable negligence under the common law.

- 23 -

89.     Defendants' negligent and wrongful acts are a proximate cause of the plaintiff's and class members suffering an increased risk of serious injury and disease, which they will continue to suffer.  Plaintiff and Class members have been exposed to a hazardous product and suffer a significantly increased risk of contracting serious injury or latent disease, including problems with kidney, liver and heart function.  This increased risk makes periodic diagnostic and medical examinations reasonable and necessary.

90.     Medical monitoring is particularly appropriate, and, indeed, imperative, with respect to this action due to the following:

a.     Baycol has been found to cause major organ damage;

b.     It has been discovered, both through scientific research and through review of Adverse Event Reports made to the FDA, that the injury and damage caused by Baycol is often latent, asymptomatic and/or undiscovered.

91.     Early detection and diagnosis of these diseases is clinically invaluable since it can prevent, reduce and/or significantly delay resulting discomfort, suffering and/or death and since these conditions can often be asymptomatic absent proper testing.

92.     Easily administered, cost-effective monitoring and testing procedures exist which make the early detection and treatment of such injuries or disease possible and beneficial.  For example, administration of the several readily available non-invasive tests readily diagnose the functionality and extent of damage or disease process present in Baycol users' kidneys, livers and hearts, even in asymptomatic individuals.  Early diagnosis of these diseases and conditions will allow prompt and effective treatment which will reduce the risk of morbidity and mortality which

these patients would suffer if treatment were delayed until their condition became overtly symptomatic.

93.    The recommended testing procedures will be subject to expert testimony at the time of Class certification and/or trial.  Appropriate testing regimes will likely include the following non-invasive, readily administrable initial tests and procedures: urinalysis, blood screen tests, diagnostic imaging, echocardiograms, and electrocardiograms.

94.    Many individuals at risk cannot afford to get appropriate testing and/or have not been advised, and do not otherwise know, of the need to undergo testing.  Class members also need to be advised of the availability of non-invasive testing as a diagnostic tool and treatment.

95.    The increased susceptibility to injuries and irreparable threat to the health of plaintiff and the Class members resulting from their exposure to Baycol can only be mitigated or addressed by the creation of a comprehensive medical monitoring program:

a.    Notifying individuals who use or used Baycol of the potential harm from Baycol either alone or in combination with other drugs;

b.    Providing for further studies of the long term effects of Baycol either alone or in combination with other drugs;

c.    Aiding in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of the users of Baycol;

d.    Providing for medical examinations for all members of the class;

e.    Providing for accumulation and analysis of relevant medical and demographic information from class members including, but not limited to, the results of tests performed on class members;

f.      Providing for the creation, maintenance, and operation of a registry in which relevant demographic and medical information concerning all class members is gathered, maintained and analyzed;

g.      Providing for medical research concerning the incidence, prevalence, natural course and history, diagnosis and treatment of Baycol induced diseases; and

h.      Publishing and otherwise disseminating all such information to members of the Class and their physicians.

96.    Plaintiff and members of the Class have no adequate remedy at law in that monetary damages alone do not compensate for the continuing nature of the harm to them. A monitoring program will enable Class members to ascertain the presence of injury and/or disease which are presently asymptomatic or only slightly symptomatic. Early detection and warnings aids in Class members' treatment and may prevent greater harms if the adverse conditions caused by Baycol are treated before they become worse.

97.    Without a court-approved medical monitoring program, the users of Baycol will not receive prompt medical care which could prolong their productive lives, increase prospects for improvement and minimize disability. The Class does not have an adequate remedy at law.

98.    By reason of the foregoing, defendants are liable, jointly and/or severally, to plaintiff and every Class member for injunctive and equitable relief including periodic medical monitoring, as well as the other relief set forth herein.

99.    Defendants have a continuing duty to warn the Class and the public of all potential risks and dangers of which they become or should become aware. As a proximate result of defendants' conduct described herein the Class is entitled to equitable relief in the form

of remedial and corrective notification to accurately reflect the known adverse side effects of

Baycol, at defendants' expense.

100.    Defendants should be required to provide continuously updated product warnings

to individuals who have previously used Baycol to apprize them with timely information

concerning effective testing and treatment options for those suffering from, or at risk for, injury

caused by Baycol.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff on behalf of himself and the class members he seeks to

represent, request the following relief:

      a.    an Order declaring this action to be a proper class action pursuant to

Federal Rule of Civil Procedure 23 and finding that plaintiff is a proper representative of the

Class;

      b.    an Order requiring a Court supervised medical monitoring program to

deliver services, including, but not limited to, testing, preventative screening and surveillance for

conditions resulting from, or potentially resulting from, consumption of Baycol, as well as

provide medical research, patient and doctor education, and a medical/legal registry;

      c.    an Order awarding plaintiff and the Class their costs and expenses in this

litigation, including, but not limited to, expert fees and reasonable attorneys' fees; and

d.      and Order awarding plaintiff and the Class such other and further relief as

may be just and proper.

Dated: New York, New York
       August 17, 2001

_____

Melvyn I. Weiss
Brad N. Friedman
Regina LaPolla
Milberg Weiss Bershad Hynes & Lerach LLP
One Pennsylvania Plaza
New York, NY  10019
Telephone: (212) 594-5300

David J. Manogue, Pa. I.D. #42119
Specter. Specter Evans & Manogue, P.C.
26th Floor, Koppers Building
Pittsburgh, PA  15219
Telephone: (412) 642-2300

Chris Seeger
Seeger Weiss, LLP
One William Street
New York, NY  10004
Telephone: (212) 584-0700

08/14/2001  11:10  4056047523

STRONG MARTIN

# FILED

AUG 1 0 2001

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STEVEN L. SPARKS, On Behalf of Himself and All Others Similarly Situated,

        Plaintiff,

vs.

BAYER CORPORATION, a foreign corporation,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

CIV-01-1265-T

CASE NO. _____

## ORIGINAL COMPLAINT – CLASS ACTION

Steven L. Sparks, personal representative of the Estate of Lilbert O. Sparks, Jr., Deceased, ("Plaintiff"), for his multiple causes of action against the above-named Defendant, alleges and states the following:

### PARTIES

1.     Lilbert O. Sparks, Jr., Deceased, was at the time the events referenced herein occurred, a citizen of the State of Oklahoma.

2.     Lilbert O. Sparks, Jr. died on the 24th day of January, 2001, at Presbyterian Hospital, Oklahoma City, Oklahoma.

3.     Steven L. Sparks, a citizen of the State of Oklahoma, was appointed Personal Representative of the Estate of Lilbert O. Sparks, Jr., Deceased, on or about the 2nd day of March, 2001 in the District Court of Oklahoma County, Oklahoma.

4.     Defendant, Bayer Corporation ("Defendant"), is an Indiana corporation with, on information and belief of Plaintiff, its principal place of business in Indiana, and is authorized to

A:\complaint-ss.wpd

conduct business and is in good standing in the State of Oklahoma. Defendant is engaged in the manufacture of certain pharmaceuticals for distribution and sale in the State of Oklahoma.

## JURISDICTION AND VENUE

5.     Jurisdiction in this matter is established through Title 28 of the United States Code, Section 1332. There is complete diversity of citizenship between the Plaintiff and Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney's fees.

6.     Venue is proper in this Court pursuant to Title 28 of the United States Code, Section 1391.

7.     Plaintiff is the proper party to bring suit in this matter pursuant to 12 Okla. Stat. (2001 Supp.) §1053.

## STATEMENT OF FACTS

8.     As a predicate to the claims herein, Defendant manufactured and distributed and/or offered for sale or caused to be sold in the State of Oklahoma, a certain cerivastatin sodium medication known as "Baycol" for the purpose of, *inter alia*, being used and administered by physicians and other health care professionals to lower plasma cholesterol levels in patients. Plaintiff's Decedent was administered Baycol for its stated purposes and subsequently died as a direct result thereof.

## CLASS ALLEGATIONS

9.     Plaintiff brings this action as a class action under rule 23 of the Federal Rules of Civil Procedure on behalf of the class of all persons or entities who purchases or otherwise used Baycol between the date this Complaint is filed and at least two (2) previous calendar years, inclusive.

08/14/2001  11:18    4056047583                    STRONG MARTIN

10.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds of members of the Class located throughout Oklahoma and the United States. Class members may be identified from records maintained by Defendants and may be easily notified of the pendency of this action, using a form of notice similar to that customarily used in other class actions.

11.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class are similarly affected by Defendants' product.

12.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class litigation.

13.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    whether the product was properly formulated and tested prior to distribution and sale by the Defendants;

b.    whether the Defendants' product was put through tests which proved it was dangerous prior to distribution and sale by the Defendants; and

c.    to what extent members of the Class have sustained damages as a result of using this dangerous product and the proper measure of damages.

14.    A class action is superior to all other available methods of the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Further, as the damages suffered by some individual Class members may be relatively small, the expense and

08/14/2001  11:18    4e5ee4765δ

burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## COUNT I.
### Products Liability

15.    Plaintiff restates and realleges paragraphs 1 through 14 of this Complaint and in addition, states matters as set forth below:

16.    The subject medication was prescribed to Plaintiff's Decedent on or about the 6th day of December, 2000. On information and belief of Plaintiff, Plaintiff's Decedent began taking the prescribed Baycol within 24 hours of the prescription date.

17.    Defendant warranted that said medication was safe for the ordinary purposes for which said medication was manufactured and sold; to wit: for use as a plasma cholesterol lowering agent, notwithstanding that Defendant was in possession of information that said medication had caused serious injuries and death to individuals who had taken it as prescribed.

18.    Plaintiff was a person who used and was reasonably expected to use said medication.

19.    The subject medication was defective at the time of its manufacture, distribution and sale, and said medication was unreasonably dangerous to a person taking the medication pursuant to a physician or other health care professional's orders.

20.    Additionally, Defendant failed to adequately warn physicians, other health care professionals and consumers of the dangers of taking said medication and failed to make public complaints and incidents involving serious injury or death to others with respect to said medication. The injuries and ultimate death suffered by Plaintiff's Decedent was a direct and proximate cause of the acts of omission or commission on the part of Defendant.

4

A:\complaint-wk.wpd

21.     As a result of the actions and conduct of Defendant, Defendant is liable to Plaintiff for the damages arising from the manufacture, distribution and sale of said defective product.

22.     The full extent of Plaintiff's injuries caused by said acts of Defendant exceed the sum of $75,000.00, exclusive of interest and costs for which Plaintiff is entitled to recover, together with a reasonable attorney's fees.

## COUNT II
## NEGLIGENCE

23.     Plaintiff restates and realleges paragraphs 1 through 22 of this Complaint and in addition, states matters as set forth below:

24.     Defendant owed a duty to Plaintiff's Decedent in the manufacture, distribution and/or sale of the medication to be prescribed by healthcare professionals for the purpose for which it was intended.

25.     Defendant breached said duty by negligently supervising and/or controlling the formula and manufacturing process of said medication, and in failing to adequately warn the medical profession and the public as to the inherent dangers of prescribing and taking said medication.

26.     Moreover, Defendant failed to properly and promptly act by removing the subject Baycol from the market after it became known to Defendant that said medication could cause serious injury and death.

27.     The injuries and death of Plaintiff's Decedent were a direct and proximate result of the negligent conduct of Defendant, Bayer Corporation.

28.    As a direct and proximate result of the negligence of Defendant, Plaintiff has suffered injuries and damages in excess of $75,000.00, exclusive of interest and costs, and a reasonable attorney's fees, which Plaintiff is entitled to recover from Defendant.

## COUNT III.
## PUNITIVE DAMAGES

29.    Plaintiff restates and realleges paragraphs 1 through 28 of this Complaint and in addition, states matters as set forth below:

30.    Defendant's conduct and actions, the awareness of the Defendant of the serious, immediate and life-threatening hazard of said medication, and the failure by Defendant to fully disclose and publicize the dangers of said medication, subject Defendant to exemplary damages to the fullest extent of the law.

31.    As a direct and proximate result of the conduct of Defendant and the imminent hazard posed to the general public as a result thereof, Plaintiff should be awarded exemplary damages in excess of $75,000.00 and in the maximum amount allowed by law.

## COMBINED PRAYER

WHEREFORE, Plaintiff prays for judgment against the Defendant on the claims set forth above, and that Plaintiff be awarded actual and compensatory damages exceeding $75,000.00; consequential damages in excess of $75,000.00; exemplary damages in the maximum amounts allowed by law and in excess of $75,000.00; actual damages for all losses sustained under the applicable law, as well as damages for mental anguish, interest, costs and attorney fees; that the case be certified as a class action and that Plaintiff be appointed as representative of the Plaintiff class; and for such other and further relief as may be deemed just and equitable by the Court.

A.\complaint.ae.wpd

STRONG MARTIN

Plaintiff demands a jury trial.

Respectfully submitted,

Don S. Strong, OBA No. 13874
G. Stephen Martin, II, OBA No. 17091

— Of the Firm —

**STRONG, MARTIN & ASSOCIATES, P.L.L.C.**
2518 First National Center
120 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 604.7500
Facsimile: (405) 604.7503

– and –

William B. Federman, OBA #2853
Stuart W. Emmons, OBA #12281
FEDERMAN & SHERWOOD
120 N. Robinson, Suite 2720
Oklahoma City, OK 73102
405-235-1560/FAX: 405-239-2112

– and –

2926 Maple Avenue, Suite 200
Dallas, TX 75201
214-696-1100/FAX: 214-740-0112
**ATTORNEYS FOR PLAINTIFF**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT PENNSYLVANIA

| | | |
|---|---|---|
| DIANE ROSENTHAL, on behalf of herself and all others similarly situated, | : | Civil Action No.: 01 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CLASS ACTION COMPLAINT |
| | : | FOR INJUNCTIVE RELIEF AND |
| BAYER CORPORATION, A Division of BAYER AG, | : | DAMAGES |
| | : | |
| Defendant. | : | JURY TRIAL DEMANDED |

Plaintiff, by and through her attorneys, alleges as follows:

## SUMMARY OF CLAIMS

1.      This is a class action brought on behalf of a nationwide class of all persons who have taken the statin drug Baycol (cerivastatin). This action seeks, among other relief, the establishment of a medical monitoring program on behalf of all class members to ensure prompt diagnosis and treatment for individuals exposed to the potentially life-threatening side effects and diseases caused by Baycol.

## PARTIES

2.      Plaintiff Diane Rosenthal is a resident of, and citizen of Palm Beach County, Florida. Plaintiff has been damaged as a result of her Baycol use, and she has suffered an increased susceptibility to injury and disease, including, but not limited to, rhabdomyolysis.

3.      Defendant Bayer Corporation ("Bayer") is a wholly owned subsidiary of Bayer AG, a corporation organized and existing under the laws of Germany. Bayer's principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, PA 15205. Upon information and belief, at all times relevant hereto Bayer manufactured, promoted, marketed,

distributed, developed, and sold Baycol in this District and in interstate commerce.

## JURISDICTION AND VENUE

4.    Plaintiff alleges an amount in controversy in excess of $75,000 exclusive of interest and costs, as to herself and each member of the class.

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 as to plaintiff and each member of the class and there is complete diversity of citizenship between the named plaintiff and defendant Bayer.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Bayer conducts business in this District and the contacts of Bayer with this District are sufficient to subject Bayer to personal jurisdiction herein.

## FACTUAL ALLEGATIONS

7.    At all times relevant hereto, Bayer, itself or by the use of others, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn, and otherwise distribute in interstate commerce the product Baycol (cerivastatin).

8.    Baycol, which was initially approved for sale in the United States in 1997, is a member of a class of cholesterol-lowering drugs that are commonly referred to as "statins." Statins lower cholesterol levels by blocking a specific enzyme in the body that is involved in the synthesis of cholesterol.

9.    More than 700,000 Americans have taken Baycol, many in combination with gemfibrozil (Lopid and generics), another lipid-lowering drug.

10.    Rhabdomyolysis is a condition that results in muscle cell breakdown and release of the contents of muscle cells into the bloodstream. Symptoms of rhabdomyolysis include muscle pain, weakness, tenderness, malaise, fever, dark urine, nausea and vomiting. The pain

may involve specific groups of muscles or may be generalized throughout the body. Most frequently the involved muscle groups are the calves and lower back; however, some patients report no symptoms of muscle injury. In some cases the muscle injury is so severe that patients develop renal failure and other organ failure, which can be fatal.

11.    Cases of fatal rhabdomyolysis in association with the use of Baycol have been reported significantly more frequently than for other approved statins. The United States Food and Drug Administration ("FDA") has received reports of 31 U.S. deaths due to severe rhabdomyolysis associated with the use of Baycol, 12 of which involved concomitant gemfibrozil use.

12.    On or about October 25, 1999, the FDA Division of Drug Marketing, Advertising, and Communications ("DDMAC") wrote to Bayer as follows:

> As part of its routine monitoring program, the [DDMAC] has become aware of promotional material for Baycol (cerivastatin sodium) that is false, lacking in fair balance, or otherwise misleading. Reference is made to a Sales Aid (QO 1068), submitted under cover of Form FDA 2253. The dissemination of this material by Bayer Corporation (Bayer) and/or their agents, violates the Federal Food, Drug, and Cosmetic Act and its implementing regulations. DDMAC requests that the use of the above referenced material and those containing the same or similar violations cease immediately. Specifically, DDMAC has the following objections:
>
>                         . . .
>
> **Lack of Fair Balance**
>
> The presentation of risk information in this promotional piece lacks fair balance. Promotional materials may be lacking in fair balance, or otherwise misleading if they fail to present information relating to side effects and contraindications with a prominence and readability reasonably comparable to the presentation of efficacy information. In the Sales Aid, Bayer uses several pages, various color patterns, charts, graphs, and the like, to provide emphasis for efficacy information. However, the page seemingly devoted to the presentation of risk information titled, "Baycol offers a proven record of safety" contains mostly additional benefit (safety) claims for Baycol and very little risk information. In fact, **Bayer presents the most important risk information (risk of myopathy, rhabdomyolysis, etc.) with much less emphasis, in the middle of the Sales Aid.**

3

Bayer should immediately cease this, and all other promotional materials for Baycol that contain the same or similar violations. . . .

(Emphasis added).

13.    The concerns that the FDA raised in October of 1999 with respect to the risks associated with Baycol proved to be well-founded. On August 8, 2001, Bayer announced that it was voluntarily withdrawing Baycol from the market worldwide. In conjunction therewith, Bayer issued the following warning to healthcare professionals:

> Rhabdomyolysis is a serious, potentially fatal, adverse effect of all statin drugs, including Baycol. It can occur with statin monotherapy, though the risk appears to be increased significantly by concomitant use of gemfibrozil (Lopid).
>
> Our ongoing scrutiny of post-marketing reports of rhabdomyolysis, including fatalities, has revealed an increased reporting rate of rhabdomyolysis with Baycol relative to other statins, especially when gemfibrozil is co-prescribed. These data also suggest an increased reporting rate of rhabdomyolysis at the 0.8 mg dose of Baycol alone.
>
> Bayer Corporation has already placed a contraindication in the Baycol product prescribing information sheet against co-prescription with gemfibrozil and issued letters to healthcare professionals warning against co-prescription of these two drugs. Despite these and other actions, Bayer has continued to receive reports of rhabdomyolysis when gemfibrozil is prescribed as a co-medication. Since the co-prescription of Baycol and gemfibrozil has continued despite communications by Bayer against this practice, the company has decided to take the following voluntary action to prevent further cases of rhabdomyolysis:
>
> **Effective immediately, Bayer has discontinued the marketing and distribution of all dosage strengths of Baycol. Patients who are currently taking Baycol should have their Baycol discontinued and be switched to an alternative therapy.**
>
> Bayer is taking this action as part of an ongoing commitment to patients and their healthcare providers to ensure patient safety.

(Emphasis original).

14.    On August 8, 2001, Bayer issued the following statement to the press:

• Starting in 1999, Bayer and the FDA have had a shared, ongoing concern over the practice of co-prescribing statins, including Baycol, with gemfibrozil to achieve more aggressive effects on lipid levels.

• Relative to other statins, the reporting rate of rhabdomyolysis with Baycol appears to be more pronounced when gemfibrozil is co-prescribed and also with high-dose therapy alone, especially when not used as directed. Rhabdomyolysis is a rare condition characterized by generalized muscle weakness.

• Recently, Bayer concluded that labeling agreed upon with the FDA, as well as communication campaigns conducted by the company during the past two years, have not been effective enough to prevent rhabdomyolysis through the reduction of co-prescribing.

• During recent discussions with the FDA, Bayer proposed the following actions:
  – Suspend marketing and distribution of Baycol
  – Conduct voluntary market withdrawal

• Naturally, we are disappointed to be removing Baycol from the market.

• Nonetheless, we believe this is the responsible course of action for patients and we remain committed to providing innovative and vital therapies to fight cardiovascular disease.

• We realize that this decision will affect many patients on Baycol therapy and we regret the difficulties resulting from this course of action.

15.    On August 9, 2001, *The Los Angeles Times* reported:

Baycol, one of a family of popular cholesterol-lowering drugs, was pulled from the U.S. market by its manufacturer Wednesday because of reports linking the pill to 31 deaths.

According to the manufacturer, Bayer Corp., all of the deaths involved rhabdomyolysis, a painful disorder that destroys muscle tissue. The "vast majority" of those who died had developed kidney failure, a company executive said.

. . .

Dr. Beatrice Alexandra Golomb, a UC San Diego specialist who is conducting a five-year study of two other statin drugs under a grant from the National Institutes of Health, said awareness of rhabdomyolysis is low among both physicians and patients.

"The issue of rhabdomyolysis obviously requires concern because people die from it," Golomb said. "Awareness needs to be enhanced. . . . They're wonderful drugs – in the right people."

FDA records show that when he recommended approval of Baycol on May 29, 1997, an agency medical officer, Dr. David G. Orloff, cited rhabdomyolysis as one of four "potentially serious adverse effects" that concerned him. However, no instances of

rhabdomyolysis were reported in Bayer's original clinical studies of the drug among 3,343 patients in the U.S., Japan and China.

According to Dr. Paul MacCarthy, Bayer's vice president of U.S. medical science, the company voluntarily approached the FDA in December 1999 with a proposal to warn against prescribing Baycol in combination with Lopid, a drug that lowers a fatty substance in the blood, because of reports of rhabdomyolysis. Bayer informed doctors and other health care providers of the safety-labeling change in a mass-mailed letter.

In an interview from company offices in West Haven, Conn., MacCarthy said that Bayer again approached the FDA in April of this year after fatal cases of rhabdomyolysis persisted. The labeling was changed, effective in June, to warn doctors not to place patients on the maximum dose of 0.8 milligram without first trying lower doses. An accompanying letter to health care providers warned anew against prescribing the drug with Lopid.

The withdrawal announced Wednesday came just two months after the latest safety-labeling change. MacCarthy said the company found that, despite the explicit warnings, doctors had continued to prescribe Baycol with Lopid and to start patients at the maximum dose.

"Since this involved fatalities, we determined that this [the withdrawal] is the appropriate thing to do in the interest of patient safety," MacCarthy said, adding that Bayer was "likely to close" ongoing clinical studies of Baycol, including experiments assessing the drug's effect on bone density and stroke prevention. The company is withdrawing the drug worldwide except for Japan, where neither the 0.8-milligram dose nor the other drug, Lopid, is used.

But the danger is not limited to the combined use of Baycol and Lopid. Nineteen of the 31 U.S. deaths cited by the FDA involved the use of Baycol without Lopid. And because side effects from prescription drugs are reported voluntarily in the U.S., epidemiologists believe the incidence of harm is consistently underreported.

## CLASS ACTION ALLEGATIONS

16.     Plaintiff brings this action as a class action for equitable, injunctive and other

relief pursuant to Federal Rules of Civil Procedure 23(b)(1) and (b)(2) on behalf of a class

consisting of all persons in the United States or United States Territories who have suffered

injury or may suffer injury as a result of using Baycol designed, manufactured, supplied,

distributed, sold, and/or placed in interstate commerce by Bayer.

FROM 610-667-7050

17.    Plaintiff is a member of the class she seeks to represent.  Upon information and belief, plaintiff estimates that there are hundreds of thousands of individuals in the class, making joinder impracticable.

18.    There are questions of law and fact common to the class, including, but not limited to:

a.    Whether Baycol causes injury, either alone or in combination with gemfibrozil;

b.    Whether Baycol is a dangerously defective product;

c.    Whether Bayer is strictly liable for sales and distribution of a dangerously defective product;

d.    Whether Bayer negligently designed, manufactured, warned about, promoted, advertised, marketed, and/or distributed Baycol;

e.    Whether Bayer conducted appropriate testing of Baycol; and

f.    Whether the serious side effects, injuries and damages from the use of Baycol support the need for medical monitoring of persons who have used the drug.

19.    The named plaintiff asserts claims that are typical of the class because she used Baycol and has incurred or may incur injury and damages as a result thereof.

20.    The named plaintiff will adequately represent the interests of the members of the class and has retained counsel competent and experienced in complex class actions.

21.    Notice can be provided to the class by a combination of published notice and first class mail using techniques and forms of notice similar to those customarily used in drug-related product liability class actions.

22.    Plaintiff seeks, *inter alia*, injunctive relief in the form of a court-ordered and supervised medical monitoring program, funded by Bayer, to assist plaintiff and the class

7

members in the detection and treatment of injuries caused by Baycol.

23.     Class certification is appropriate pursuant to Fed.R.Civ.P. 23(b)(2) because Bayer

has acted, or refused to act, on grounds generally applicable to the class, making appropriate the

injunctive relief sought herein.

24.     Class certification is also appropriate pursuant to Fed.R.Civ.P. 23(b)(1) because,

*inter alia*, the prosecution of separate actions by individual members of the class would create a

risk of incompatible standards of conduct and inconsistent or varying adjudications.

**FIRST CLAIM FOR RELIEF**
**STRICT PRODUCT LIABILITY**
**(FAILURE TO WARN)**

25.     Plaintiff incorporates by reference all other paragraphs of this complaint as if set

forth fully herein.

26.     Bayer is the manufacturer and/or supplier of Baycol.

27.     The Baycol manufactured and/or supplied by Bayer was and is unaccompanied by

proper warnings regarding injuries associated with the use of Baycol, including, but not limited

to, rhabdomyolysis, and the severity and duration of such injuries.  The warnings provided by

Bayer did not accurately reflect the symptoms, scope or severity of such injuries.

28.     The Baycol manufactured and/or supplied by Bayer was defective due to

inadequate post-marketing warning or instruction because after Bayer knew or should have

known of the risk of rhabdomyolysis and/or other injury from the use of Baycol, Bayer failed to

provide adequate warnings to users or consumers of Baycol and continued to aggressively

promote Baycol.

29.     As the producing cause and legal result of the defective condition of Baycol as

manufactured and/or supplied by Bayer, plaintiff and the members of the class require reasonable

8

and necessary health care, attention and services and did and will incur medical, health, incidental and related expenses. Plaintiff is informed and believes and thereon alleges that plaintiff may in the future be required to obtain medical and/or hospital care, attention, and services in an amount which is presently unknown.

## SECOND CLAIM FOR RELIEF
## STRICT PRODUCT LIABILITY
## (DEFECTIVE DESIGN)

30.     Plaintiff incorporates by reference all other paragraphs of this complaint as if set forth fully herein.

31.     Bayer is the manufacturer and/or supplier of Baycol.

32.     The Baycol manufactured and/or supplied by Bayer was defective in design or formulation in that, when it left the hands of Bayer, the foreseeable risks exceeded the benefits associated with the design or formulation of Baycol.

33.     Alternatively, the Baycol manufactured and/or supplied by Bayer was defective in design or formulation in that, when it left the hands of Bayer, it was unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other similar statin drugs.

34.     Bayer failed to perform adequate testing of Baycol in that adequate testing would have shown that Baycol, alone or in combination with gemfibrozil, caused serious injuries, including, but not limited to, rhabdomyolysis.

35.     As the producing cause and legal result of the defective condition of Baycol as manufactured and/or supplied by Bayer, plaintiff and the members of the class require reasonable and necessary health care, attention and services and did and will incur medical, health, incidental and related expenses. Plaintiff is informed and believes and thereon alleges that

plaintiff may in the future be required to obtain medical and/or hospital care, attention, and services in an amount which is presently unknown.

## THIRD CLAIM FOR RELIEF
### NEGLIGENCE

36.     Plaintiff incorporates by reference all other paragraphs of this complaint as if set forth fully herein.

37.     Bayer had a duty to exercise reasonable care in the manufacture, sale, and/or distribution of Baycol into the stream of interstate commerce, including a duty to ensure that Baycol did not cause users to suffer from unreasonable, dangerous side effects.

38.     Bayer failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, and/or distribution of Baycol into interstate commerce in that Bayer knew or should have known that Baycol created a high risk of unreasonable, dangerous side effects, including, but not limited to, rhabdomyolysis.

39.     Bayer was negligent in the design, manufacture, testing, advertising, warning about, marketing, sale, and/or distribution of Baycol in that Bayer failed to: (i) use due care in designing and manufacturing Baycol so as to avoid the aforementioned risks to class members who used Baycol; (ii) accompany Baycol with proper warnings regarding all possible adverse side effects associated with the use of Baycol and the severity and duration of such adverse effects; (iii) conduct adequate pre-clinical and clinical testing and post-marketing oversight to determine the safety of Baycol; (iv) provide adequate training and instruction to medical care providers for appropriate use of Baycol, alone or in combination with gemfibrozil; (v) warn, prior to actively encouraging the sale of Baycol, regarding the possibility of developing serious and potentially fatal side effects, including, but not limited to, rhabdomyolysis, and the need for

comprehensive, regular medical monitoring to ensure early discovery of such conditions; (vi) adequately test and/or warn about the interaction of Baycol with gemfibrozil and the possible adverse side effects caused by such interaction, including, but not limited to, rhabdomyolysis; and (vii) otherwise use due care in designing, manufacturing, testing, warning about, advertising, marketing, and/or distributing Baycol.

40.    Bayer knew or should have known that consumers such as plaintiff and the members of the class would foreseeably suffer injury as a result of Bayer's failure to exercise due care as described above.

41.    Due to Bayer's negligence, plaintiff and the members of the class require reasonable and necessary health care, attention and services and did and will incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and thereon alleges that plaintiff may in the future be required to obtain medical and/or hospital care, attention, and services in an amount which is presently unknown.

## FOURTH CLAIM FOR RELIEF
### BREACH OF EXPRESS WARRANTY

42.    Plaintiff incorporates by reference all other paragraphs of this complaint as if set forth fully herein.

43.    Bayer expressly warranted that Baycol was safe for use by patients.

44.    Baycol does not conform to Bayer's express representations because Baycol is not safe and has unreasonably high levels of serious side effects, including life-threatening rhabdomyolysis.

45.    As a direct and proximate result of the breach of the aforementioned warranties, plaintiff and the members of the class require reasonable and necessary health care, attention and

services and did and will incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and thereon alleges that plaintiff may in the future be required to obtain medical and/or hospital care, attention, and services in an amount which is presently unknown.

## FIFTH CLAIM FOR RELIEF
## BREACH OF IMPLIED WARRANTY

46.    Plaintiff incorporates by reference all other paragraphs of this complaint as if set forth fully herein.

47.    At the time Bayer marketed, sold, and distributed Baycol, Bayer knew of the use for which Baycol was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

48.    Plaintiff and members of the class and their physicians reasonably relied upon the skill and judgment of Bayer as to whether Baycol was of merchantable quality and safe and fit for its intended use.

49.    Contrary to such implied warranty, Baycol was not of merchantable quality or safe or fit for its intended use because Baycol was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used.

50.    As a direct and proximate result of the breach of implied warranty, plaintiff and the members of the class require reasonable and necessary health care, attention and services and did and will incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and thereon alleges that plaintiff may in the future be required to obtain medical and/or hospital care, attention, and services in an amount which is presently unknown.

12

## SIXTH CLAIM FOR RELIEF
## MEDICAL MONITORING

51.    Plaintiff incorporates by reference all other paragraphs of this complaint as if set forth fully herein.

52.    As a direct and proximate result of Bayer's acts and omissions as set forth herein, plaintiff and the members of the class have been exposed to a hazardous substance and, as a result, suffer a significantly increased risk of contracting serious injury or latent disease, including rhabdomyolysis. This increased risk makes periodic diagnostic and medical examinations reasonable and necessary. Easily administered, cost-effective monitoring and testing procedures exist which make the early detection and treatment of such injuries or disease possible and beneficial.

53.    The recommended testing and monitoring procedures will be subject to expert testimony at the time of class certification and/or trial.

54.    The increased susceptibility to injuries and irreparable threat to the health of plaintiff and the members of the class resulting from their exposure to Baycol can only be mitigated or addressed by the creation of a comprehensive medical monitoring program that: (i) notifies individuals who used Baycol of the potential harm from Baycol; (ii) funds further studies of the long-term effects of Baycol use; (iii) funds research into possible cures for the detrimental effects of Baycol use; (iv) gathers and forwards to treating physicians information related to the diagnosis and treatment of injuries and diseases which may result from using Baycol; and (v) aids in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of Baycol users.

55.     Plaintiff and the members of the class have no adequate remedy at law in that monetary damages alone cannot compensate for the continuing nature of the harm to them, and a monitoring program which notifies them of possible injury and aids in their diagnosis and treatment can prevent the greater harms which may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur or worsen.

56.     The susceptibility of plaintiff and the members of the class to rhabdomyolysis is the sole result of their use of Baycol. Early detection and diagnosis of this disease is clinically invaluable because it can prevent and/or significantly delay resulting pain, suffering and/or death.

57.     Without a court-approved and supervised medical monitoring program, Baycol users will not receive prompt medical care which could detect injury and disease and prolong their productive lives, increase prospects for improvement, and minimize disability.

WHEREFORE, plaintiff prays for relief as follows:

A.   Certifying this action as a class action on behalf of the proposed class and designating the named plaintiff as representative of the class and the named plaintiff's counsel as class counsel;

B.   For general damages in a sum in excess of the Jurisdictional minimum of this Court;

C.   Medical, incidental, hospital and service expenses according to proof;

D.   Creating a comprehensive court-supervised medical monitoring program as described herein;

E.   Awarding plaintiff and the members of the class attorneys' and experts' fees, costs, and expenses;

F.   Pre-judgment and post-judgment interest as provided by law;

G.   Full refund of all purchase costs Plaintiff and the members of the class expended in their purchases of Baycol;

14

H.     Awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 16, 2001

LAW OFFICE OF ALFRED G. YATES JR

By:

Alfred G. Yates Jr, Esq.
PA ID #17419
Gerald L. Rutledge, Esq.
PA ID #62027
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, Pennsylvania 15219
(412) 391-5164

SCHIFFRIN & BARROWAY, LLP
Andrew L. Barroway
Marc A. Topaz
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004
(610) 667-7706

Paul J. Geller, Esq.
CAULEY GELLER BOWMAN & COATES, LLP
2225 Glades Road
Suite 421A
Boca Raton. FL 33431
(561) 750-3000

Brian Felgoise, Esq.
THE LAW OFFICES OF BRIAN FELGOISE
230 South Broad
Street, Philadelphia, PA 19102
(215) 735-6810

*Counsel for Plaintiff*

15