JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 27 2001

FILED
CLERK'S OFFICE

**MDL 1431**



## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

-------------------------------------------------------X
                        :

In re Baycol Product Liability Litigation   :     MDL Docket No.

                        :
-------------------------------------------------------X

### PLAINTIFF OTIS SMITHE'S MOTION TO
### TRANSFER PURSUANT TO 28 U.S.C. § 1407

Plaintiff Otis Smithe ("Plaintiff" or "Smithe"), by his undersigned attorneys, respectfully

moves the Panel for an Order, pursuant to 28 U.S.C. §1407, to transfer five related putative class

actions (collectively, "the Baycol Product Liability Litigation") to the United States District

Court for the District of Connecticut, where a putative class action recently filed by Smithe is

currently pending and which raises identical or virtually identical issues.

In support of his motion, and as set forth in greater detail in the accompanying

memorandum of law, Plaintiff avers the following:

1.      The Baycol Product Liability Litigation involves six putative class actions.  The

six actions are pending in six different district courts.  The Baycol Product Liability Litigation

involves the manufacture, promotion and sale by defendants Bayer Corporation and Bayer AG

(collectively, the "Defendants") of the dangerous cholesterol lowering medication known by the

## OFFICIAL FILE COPY   IMAGED AUG 30 '01

trade name Baycol. Bayer Corporation is named as a defendant in all of the actions and Bayer

AG is named as a defendant in four of the six actions, including the Smithe action.

    2.      The complaints in the Baycol Product Liability Litigation allege common

questions of law and fact. All of the actions seek to represent partially or wholly overlapping

classes, and seek relief based upon similar factual allegations and legal theories.

    3.      The complaints in the Baycol Product Liability Litigation allege the following

common questions of fact:

          (a)      Whether Defendants designed, manufactured and/or marketed Baycol in a

                    negligent manner or with knowledge that it was a dangerous product;

          (b)      Whether Defendants conducted, either directly or indirectly, adequate

                    testing of Baycol;

          (c)      Whether Defendants failed to adequately warn consumers of the adverse

                    health hazards caused by using Baycol; and

          (d)      Whether medical monitoring of Plaintiff and the proposed class who used

                    Baycol is reasonably necessary.[1]

    4.      This motion seeks the transfer of five of the actions which are pending in the

following districts: (i) the Western District of Pennsylvania, (ii) the Eastern District of New

York, (iii) the District of New Jersey (iv) the Northern District of Illinois, and (v) the Western

District of Oklahoma. Accordingly, Plaintiff seeks consolidation of the five actions with his

action in the District of Connecticut (the "Smithe action").

---

     [1] The Sparks complaint seeks only compensatory and punitive damages and does not
expressly seek medical monitoring.

5.      In accordance with Rule 7.2(a)(ii) of the Rules of Procedure before the Judicial

Panel on Multidistrict Litigation, a schedule of cases for which transfer is sought accompanies

this motion.[2]

6.      Because each of the actions comprising the Baycol Product Liability Litigation

presents one or more common defendants, common types of plaintiffs, and similar factual and

legal issues, coordinated pretrial proceedings in one judicial district are appropriate.  Absent the

centralization of the Baycol Product Liability Litigation, the parties and the courts are likely to

face the burden and expense of needlessly duplicative discovery and discovery disputes and

potentially inconsistent pretrial rulings with respect to motions for class certification.

7.      Transfer of the Baycol Product Liability Litigation to the District of Connecticut

would best serve the convenience of the parties and witnesses and promote the just and efficient

conduct and resolution of the actions.  The District of Connecticut is the most appropriate venue

because:

(a)      One of the actions comprising the Baycol Product Liability Litigation is already

pending in that Court;

(b)      Both Defendants are before that Court, and Defendants maintain a strong presence

in that jurisdiction.  Indeed, upon information and belief, as of August 16, 2001, and at all times

relevant to the complaints in the Baycol Product Liability Litigation, Defendants maintained their

Pharmaceuticals Division headquarters in West Haven, Connecticut where they employ more

than 2,000 people and where Defendants maintain their three worldwide research centers;

---

[2] Copies of the complaints in each of these actions except the <u>Sternberg</u> complaint are
annexed as exhibits to the accompanying memorandum of law in support of Plaintiff's motion.

(c)     The District of Connecticut is an easily accessible jurisdiction that would provide the most convenient forum for counsel, the parties, and witnesses; and

(d)     The status of the docket for the District of Connecticut is preferable to the other relevant districts.

WHEREFORE, Plaintiff respectfully requests an Order transferring the following actions to the District of Connecticut and consolidating them with the <u>Smithe</u> action for coordinated pretrial proceedings, and such other relief as the Panel deems just and proper.

1.     <u>Rosenthal v. Bayer Corporation, et al.</u>, No. 01-1574 (W.D. Pa)

2.     <u>Sternberg v. Bayer AG et al.</u>, No. 01-5557 (E.D. N.Y.)

3.     <u>Galasso v. Bayer Corporation, et al.</u>, No. 01-3885 (D. N.J.)

4.     <u>Cohen, et al. v. Bayer AG</u>, No. 01-6257 (N.D. Ill.)

5.     <u>Sparks v. Bayer Corporation</u>, No. 01-1265 (W.D. Ok)

DATED: August 23, 2001

Respectfully submitted,

Kenneth G. Gilman
Edward L. Manchur
John C. Martland
Daniel D'Angelo
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850

Walter A. Twachtman, Esq.
BOATMAN, BOSCARINO, GRASSO &
TWACHTMAN
628 Hebron Avenue, Building 3
Glastonbury, CT 06033-5007
Telephone: (860) 659-5657


**COUNSEL FOR PLAINTIFF
OTIS SMITHE**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 2 7 2001

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON
# MULTIDISTRICT LITIGATION

```
-----------------------------------------------------X
                                         :
In re Baycol Product Liability Litigation    :      MDL Docket No.
                                         :
-----------------------------------------------------X
```

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO TRANSFER PURSUANT TO 28 U.S.C. § 1407

Plaintiff Otis Smithe ("Plaintiff" or "Smithe") respectfully submits this memorandum of

law in support of his motion, pursuant to 28 U.S.C. § 1407, to transfer several related actions

(collectively, the "Baycol Product Liability Litigation"), to the United States District Court for

the District of Connecticut, where a putative class action recently filed by Smithe is currently

pending and which raises identical or virtually identical issues.

The cases present common questions of law and fact, common defendants, and common

types of plaintiffs (individuals who have ingested the prescription drug, cerivastatin, otherwise

known by its trade name, "Baycol."). For the reasons stated herein, transfer and consolidation of

all existing actions, and all other subsequently filed related cases in the District of Connecticut

would best serve the convenience of the parties and witnesses and promote the just and efficient

conduct of the litigation.

## STATEMENT OF FACTS

### A.    Claims Asserted in the Related Actions

Smithe and the class that he seeks to represent are individuals in the United States who

purchased and/or ingested the prescription drug known as Baycol, designed, manufactured,

marketed, sold and/or placed in the stream of interstate commerce by Bayer Corporation and

Bayer, AG ("Defendants").  The actions, all of which are putative class actions, that are subject

to the instant motion for transfer and consolidation seek to redress the unlawful promotion and

sale of the dangerous Baycol drug by Defendants.  Those actions have been brought against

Defendants under a variety of similar or identical state law claims, and each save the Sparks

action[1] seeks to hold Defendants responsible for medical monitoring and testing procedures to

promote early detection and treatment of injuries and diseases associated with Baycol.

Defendant Bayer Corporation is a wholly owned subsidiary of Defendant Bayer AG and

an Indiana corporation.  Bayer Corporation and Bayer AG maintain the headquarters for their

Pharmaceuticals Division in New Haven, Connecticut. Bayer AG, a foreign corporation,

maintains its principal place of business in Bayerwerk, Germany.  At all times material to the

actions that are subject to the instant motion, Defendants manufactured, promoted, marketed and

distributed Baycol throughout the United States.

Baycol is a member of a class of cholesterol lowering drugs commonly referred to as

statins.  Statins lower cholesterol levels in the body by blocking a specific enzyme that is

involved in the synthesis of cholesterol.  Defendants have marketed and sold Baycol since 1997,

---

[1] Steven L. Sparks, on behalf of himself and all others similarly situated v. Bayer
Corporation, Docket No. 01-0265 (W.D. Ok.).  The Sparks complaint seeks compensatory and
punitive damages.

when the Food and Drug Administration ("FDA") approved Baycol for sale in the United States. Since at least 1997, Defendants falsely misled potential users of Baycol, including Plaintiff, concerning the risks associated with Baycol and failed to protect users of Baycol from serious health risks which Defendants knew or should have known would result from ingesting Baycol. Moreover, Defendants aggressively promoted Baycol as safe for human consumption and as having fewer side effects and adverse reactions than other cholesterol lowering medications.

Shortly after Defendants commenced the marketing and sale of Baycol, Defendants began receiving reports that Baycol patients were suffering from Rhabdomyolysis. Rhabdomyolysis is a serious health condition that results in muscle cell breakdown which, in turn, contaminates blood cells. Rhabdomyolysis can result in potentially life threatening adverse health effects, including renal failure, cardiac arrest and arrhythmias and other organ damage. Defendants' product warnings in effect during the sale of Baycol were wholly inadequate and failed to warn physicians and patients of, inter alia, the increased incidence of Rhabdomyolysis and renal failure and other health risks associated with Baycol.

There have been at least fifty-two (52) deaths reported to Defendants relating to persons who have ingested Baycol. As a result of the reported deaths and the occurrence of a large number of Rhabdomyolysis disorders, renal failures and heart abnormalities occurring in patients ingesting Baycol, Defendants announced on August 8, 2001 that they had halted the manufacture and distribution of Baycol. On the same day, E. Paul MacCarthy, Vice President of the Bayer Corporation Pharmaceuticals Division, notified healthcare professionals that patients taking Baycol should be ordered to discontinue using that medication, citing the increased reports of Rhabdomyolysis associated with Baycol.

**B.**     **The Related Actions**

**1.**     **The Smithe Action (District of Connecticut)**

Plaintiff Otis Smithe filed a class-action complaint in the District of Connecticut on

August 17, 2001.  See,  Smithe v. Bayer Corporation, et al., C.A. No. 01-1570 (D. Conn.)

("Smithe") (copy annexed hereto as Exhibit 1).[2]  The Smithe action is assigned to the Honorable

Alan H. Nevas.

**2.**     **The Rosenthal Action (Western District of Pennsylvania)**

Plaintiff Diane Rosenthal filed a class-action complaint against Bayer Corporation in the

Western District of Pennsylvania on August 16, 2001.  See, Rosenthal v. Bayer Corporation,

C.A. No. 01-1574 (W.D. Pa.) ("Rosenthal") (copy annexed hereto as Exhibit 2).  The Rosenthal

complaint contained four of the counts set forth in the Smithe complaint, (including medical

monitoring), and also raised a claim relating to a breach of express warranty.  See Rosenthal

Compl. ¶¶ 25-57.  The Rosenthal action is assigned to the Honorable Judge Donald J. Lee.

**3.**     **The Sternberg Action (Eastern District of New York)**

Plaintiff Evelyn Sternberg filed a class action complaint against Defendants in the Eastern

District of New York on August 16, 2001.  See, Sternberg v. Bayer, AG, et al., C.A. No. 01-5557

(E.D. N.Y.) ("Sternberg")  The Sternberg action is assigned to the Honorable John Gleeson.

**4.**     **The Galasso Action (District of New Jersey)**

Plaintiff Salvatore Galasso filed a class action complaint against Defendants, Bayer, Inc.

---

[2] The Smithe complaint contains the following counts: Count I-Breach of Implied
Warranty; Count II-Negligence; Count III-Injunctive and Equitable Relief (Medical Monitoring
and Emergency Notice); Count IV-Violation of Connecticut Unfair Trade Practices Act; Counts
V and VI-Strict Product Liability; and Count VII-Fraud by Omission.

and Glaxo-Smithkline PLC in the District of New Jersey on August 15, 2001. See Galasso v. Bayer Corporation, et al., C.A. No. 01-3885 (D. N.J.) ("Galasso") (copy annexed hereto as Exhibit 3). The complaint in the Galasso action seeks medical monitoring on behalf of the class.

5.    The Cohen Action (Northern District of Illinois)

Plaintiffs Ronald Cohen, Marjorie Freden, Prem Gupta, Larry Julien, William Kuta, Brenda Matzner, Kalid Pervaiz and Adrian Zuckerman, filed this class action against the Defendants in the Northern District of Illinois on August 15, 2001.[3] See, Cohen, et al. v. Bayer AG, et al., C.A. No. 01-6257 (N.D. Ill.) ("Cohen") (copy annexed hereto as Exhibit 4). The complaint in the Cohen action contained all of the counts set forth in the Smithe complaint (except fraud) including medical monitoring, along with several additional counts.[4] The Cohen action is assigned to the Honorable Wayne R. Andersen.

6.    The Sparks Action (Western District of Oklahoma)

Plaintiff Steven L. Sparks filed this class action against "Bayer Corporation, A Foreign Corporation" in the Western District of Oklahoma on August 10, 2001. See, Sparks v. Bayer Corporation, C.A. No. 01-1265 (W.D. Ok.) ("Sparks")(copy annexed hereto as Exhibit 5). The complaint in the Sparks action seeks monetary and punitive damages and contains the following counts: I-Products Liability; II-Negligence and III-Punitive Damages. The Sparks action is assigned to the Honorable Ralph G. Thompson.

---

[3] Also named as a defendant was "Bayer Pharmaceutical Division, a Division of Bayer Corporation."

[4] These additional counts are for negligence per se, all states consumer protection statutes, unjust enrichment and corporate responsibility.

<u>ARGUMENT</u>

**THE PANEL SHOULD CENTRALIZE THE BAYCOL PRODUCT LIABILITY LITIGATION IN THE DISTRICT OF CONNECTICUT BECAUSE TRANSFER AND CONSOLIDATION THERE WILL PROMOTE THE JUST AND EFFICIENT MANAGEMENT OF PRETRIAL PROCEEDINGS IN THESE ACTIONS AND AVOID INCONSISTENT OR CONFLICTING SUBSTANTIVE AND PROCEDURAL DETERMINATIONS**

A.     **Centralization of Baycol Product Liability Litigation Is Warranted**

      1.     **Standards for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407[5]**

As a general rule, the Panel will order the transfer of an action where "significant benefits are to be gained by coordinated and consolidate[d] proceedings." <u>In re New York City Mun. Sec. Litig.</u>, 439 F. Supp. 267, 270 (J.P.M.L. 1977), <u>writ denied</u>, 572 F.2d 49 (2d Cir. 1978).

The Panel looks to whether "[c]entralization under Section 1407 is . . . necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certifications), and conserve the resources of the parties, their counsel, and the judiciary." <u>In re Amino Acid Lysine Antitrust Litig.</u>, 910 F. Supp. 696, 699 (J.P.M.L. 1995); <u>accord</u> <u>In re Rio Hair Naturalizer Prods. Liab. Litig.</u>, 904 F. Supp. 1407, 1408 (J.P.M.L. 1995); <u>In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.</u>, 844 F. Supp. 1553, 1554 (J.P.M.L. 1994); <u>In re Computervision Corp. Sec. Litig.</u>, 814 F. Supp. 85, 86 (J.P.M.L. 1993); <u>In re Cooper Tire & Rubber Co. Tires Prods. Liab. Litig.</u>, MDL No. 1393, 2001 WL 253115, at *1 (J.P.M.L.

---

[5]  28 U.S.C. § 1407(a) provides, in relevant part:

      When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.  Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions.

Feb. 23, 2001).

Put another way, the Panel will order the transfer and consolidation of actions where it is "persuaded that the requested transfer would serve the overall convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." In re Drowning Incident at Quality Inn Northeast, Wash. D.C., 405 F. Supp. 1304, 1306 (J.M.P.L. 1976); accord In re Photocopy Paper, 305 F. Supp. 60, 61 (J.P.M.L. 1969) (per curiam) (citing cases).

The movant bears the burden of showing that there are common factual questions that are sufficiently complex or that the accompanying discovery will be so time consuming as to justify transfer. See In re Sicilia Di R. Biebow & Co. Contract Litig., 490 F. Supp. 513, 515 (J.P.M.L. 1980) (per curiam); In re Ecuadorian Oil Concession Litig., 487 F. Supp. 1364, 1368 (J.P.M.L. 1980) (per curiam); In re Insulin Mfg. Antitrust Litig., 487 F. Supp. 1359, 1361 (J.P.M.L. 1980) (per curiam); In re Chiropractic Antitrust Litig., 483 F. Supp. 811, 813 (J.P.M.L. 1980) (per curiam); In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig., 446 F. Supp. 242, 243-44 (J.P.M.L. 1978) (per curiam); In re Wyeth Patent Infringement Litig., 445 F. Supp. 992, 993 (J.P.M.L. 1978) (per curiam).[6]

## 2. The Panel Should Transfer and Consolidate the Baycol Product Liability Litigation

The litmus test of transferability and coordination under §1407 is the presence of common questions of fact. In re Fed. Election Campaign Act Litig., 511 F. Supp. 821, 823 (J.P.M.L. 1979). Common questions are presumed "where two or more complaints assert

---

[6] See also In re Cable Tie Patent Litig., 487 F. Supp. 1351, 1354 (J.P.M.L. 1980) (movant has "burden of demonstrating that transfer will further the purposes of Section 1407"); In re G.D. Searle & Co. "Cooper 7" IUD Prods. Liab. Litig., 483 F. Supp. 1343, 1345 (J.P.M.L. 1980) (per curiam)(same).

comparable allegations against similar or identical defendants based on similar transactions and events." In re Air West, Inc. Securities Litig., 384 F. Supp. 609, 611 (J.P.M.L. 1974). See also In re Cuisinart Food Processor Antitrust Litig., 506 F. Supp. 651, 654-655 (J.P.M.L. 1981). Each of the actions proposed for transfer and coordination or consolidation allege similar violations of state law. All of the claims derive form the same conduct of the same Defendants, i.e., the manufacture, marketing, mass distribution and sale of the dangerous Baycol medication.

Transfer and consolidation of the separate actions comprising the Baycol Product Liability Litigation is appropriate because substantial benefits would result from coordinated pretrial proceedings. The cases all involve Defendants' dangerous medication, and raise numerous common questions of fact. Furthermore, there are several causes of action that are common to all of the cases, and save the Sparks complaint, all seek medical monitoring.[7]

Moreover, because the cases present sufficiently complex legal and factual issues, judicial efficiency and economy would be served by centralization of the litigation so as to avoid the possibility of inconsistent pretrial rulings. Further, the Panel has consistently held that when the risk of overlapping or inconsistent class determinations exist, transfer of actions to a single district for coordinated or consolidated pretrial proceedings is necessary in order to eliminate the possibility of inconsistent pretrial rulings, especially concerning class issues. In re Bristol Bay Salmon Fishery Antitrust Litig., 424 F. Supp. 504, 506 ((J.P.M.L. 1976), In re Litig. Arising from

---

[7] The slight differences with respect to a few cases concerning Defendants' improper conduct do not render the Baycol Product Liability Litigation's less amenable to centralization. Cf. In re Salomon Bros. Treasury Sec. Litig., 796 F. Supp. 1537, 1538 ((J.P.M.L. 1992) (although legal theories varied among actions, "with some actions raising claims not common to all actions," centralization was nevertheless appropriate because "all actions involve[d] injuries arising from Salomon's alleged market manipulation").

Termination of Retirement Plan for Employees of Fireman's Fund Ins. Co., 422 F. Supp. 287, 290 (J.P.M.L. 1976); In re Nat'l Airlines, Inc. Maternity Leave Practices and Flight Attendant Wt. Program Litigation, 399 F. Supp. 1405, 1407 (J.P.M.L. 1975); In re Roadway Express, Inc. Employment Practices Litig., 384 F. Supp. 612, 613 (J.P.M.L. 1974).

Transfer for consolidation or coordination is a practical necessity because all of these actions seek class action status on behalf of the same class or substantially overlapping classes and, as a result, there is a significant potential for conflicting or inconsistent rulings on class certification issues. See, In re Life USA Holdings, Inc., Annuity Contracts Sales Practices Litigation (No. II) Docket No. 1273, 1999 U.S. Dist. LEXIS 4918, at *2 (J.P.M.L. April 7, 1999) (two actions brought as class actions on behalf of overlapping classes of purchasers of annuities; "Centralization under Section 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification issues), and conserve the resources of the parties, their counsel and the judiciary."); In re Methionine Antitrust Litigation, Docket No. 1311, 1999 U.S. Dist. LEXIS 19206, at *4 (J.P.M.L. Dec. 8, 1999) (five antitrust class actions transferred where plaintiffs in all actions seek to represent the same putative class of Methionine purchasers, although with slight variations in the class periods); In re The Northwestern Mutual Life Insurance Company Sales Practices Litigation, Docket No. 1213, 1998 U.S. Dist. LEXIS 5495; at *2 (J.P.M.L. April 16, 1998) (two actions brought as class actions on behalf of overlapping nationwide classes of purchasers of Northwestern policies transferred to prevent inconsistent pretrial rulings, especially with respect to class certification issues); accord, In re The Hartford Sales Practices Litigation, Docket No. 1204, 1997 U.S. Dist. LEXIS 19671, at

*2 (J.P.M.L. Dec. 8, 1997).[8]

In addition, centralization would avoid duplicative discovery. Given that the various suits raise similar or identical claims, and involve similar types of plaintiffs and common defendants, the cases will almost certainly entail the discovery of the same or similar information. Thus, centralization would conserve both the parties' resources with respect to the conduct of discovery and the judiciary's resources with respect to the resolution of possible discovery disputes.

In sum, as in other actions transferred and consolidated by the Panel, "transfer is warranted because these actions involve virtually identical factual questions and parties." In re Litigation Arising from Termination of Retirement Plan for Emp. of Fireman's Fund Ins. Co., 422 F. Supp. 287, 290 (J.P.M.L. 1976).

### C.    The Baycol Product Liability Litigation Should Be Centralized in the District of Connecticut

### 1.    General Standards

Among the factors the Panel considers in determining where to consolidate pending actions are the following: convenience of the parties and witnesses; the relative progress which has been achieved in actions pending in various districts; and especially the location of parties,

---

[8]  See also In re Computervision Corporation Securities Litig., 814 F. Supp. 85, 86 (J.P.M.L. 1993) (transfer needed to prevent inconsistent pretrial rulings, especially with respect to class certification); In re Cement and Concrete Antitrust Litig., 437 F. Supp. 750, 752 (J.P.M.L. 1977) ("since duplicating or overlapping classes are sought in most of the actions, transfer to a single district is desirable in order to avoid the possibility of inconsistent class determinations"); In re Sugar Industry Antitrust Litig., 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) (noting "the Panel has consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists"); In re Roadway Express, Inc. Employment Practices Litig., 384 F. Supp. 612, 613 (J.P.M.L. 1974) (the existence of and the need to eliminate the possibility of inconsistent class determinations presents a highly persuasive reason for favoring transfer under Section 1407); In re Republic National-Realty Equities Securities Litig., 382 F. Supp. 1403, 1406 (J.P.M.L.1974) (same).

witnesses and documents.  See In re New Mexico Natural Gas Antitrust Litig., 482 F. Supp. 333,

337 (J.P.M.L. 1979).[9]

### 2.    The District of Connecticut Is the Most Suitable Transferee Forum

While the Baycol Product Liability Litigation involves a number of geographically

dispersed suits, several factors permit the Panel to conclude that the District of Connecticut,

where the Smithe action is pending, genuinely can be characterized as the "center of gravity" for

the litigation.[10]

First, Defendants certainly would not be unduly burdened by having to litigate these cases

in the District of Connecticut where the Defendants maintain their headquarters for their

Pharmaceuticals Division.  Further, many potential witnesses and original documents relating to

the research, development, manufacture, promotion and sale of Baycol likely will be located in

Connecticut.  Defendants Pharmaceuticals Division employs more than 2,000 people in and

around West Haven, Connecticut, and Defendants maintain their three worldwide research

---

[9] Cf. Platt v. Minnesota Min. & Mfg. Co., 376 U.S. 240, 243-44 (1964) (enumerating
relevant factors, in analogous context of transfer of criminal proceedings under Fed. R. Crim. P.
21(b), including (1) location of corporate defendant, (2) location of possible witnesses, (3)
location of events likely to be in issues, (4) location of documents and records likely to be
involved, (5) whether defendants's business will be disrupted absent transfer, (6) expense to the
parties, (7) location of counsel, (8) relative accessibility of place of proposed trial, (9) condition
of docket of district involved, and (10) any other special elements that might affect the transfer)
(footnote omitted).

[10] Even were the Panel to determine that the District of Connecticut does not claim the
"center of gravity" for the litigation, Connecticut would nevertheless be the appropriate district
for the Baycol Product Liability Litigation.  Cf., In re Washington Pub. Power Supply Sys. Sec.
Litig., 568 F. Supp. 1250, 1251 (J.P.M.L. 1983) (per curiam) (no genuine "center of gravity" for
the litigation); accord,  In re Library Editions of Children's Books, 297 F. Supp. 385, 387
(J.P.M.L. 1968).  See also In re Corn Derivatives Antitrust Litigation, 486 F. Supp. at 931-32
(because parties, potential witnesses and potentially relevant documents were widespread, "no
one transferee district emerge[d] as the 'center of gravity' for th[e] litigation.").

centers at the location (see Exhibit 6).  It is from Connecticut that the Defendants conceived of,

developed and marketed Baycol.  The Defendants' employees involved in these activities, and

the documents relating to those activities, will most likely be found there.

These factors weigh heavily in the Panel's choice of transferee forum as they further the

goals of convenience and efficiency in §1407.  See In re The Hartford Sales Practices Litigation,

1997 U.S. Dist. LEXIS 19671, at *3; In re Summit Technology, Inc., Securities Litigation,

Docket No. 1195, 1997 U.S. Dist. LEXIS 15778, at *2-3 (J.P.M.L. Oct. 9, 1997); In re Nuway

Paper Machinery Contracts Litigation, Docket No. 1306, 1999 U.S. Dist. LEXIS 20179, at *2-3

(J.P.M.L. Dec. 22, 1999); In re Computer Corporation Securities Litigation, 814 F. Supp. 85, 86

(J.P.M.L. 1993);  In re Bromine Antitrust Litigation, Docket No. 1310, 1999 U.S. Dist. LEXIS

19204, at *2 (J.P.M.L. Dec. 9, 1999).

Moreover, because the actions subject to this motion purport to be nationwide class

actions, seeking to represent individuals in all fifty states, the situs of the litigation is not critical

so long as it is as convenient and centrally located as all other suggested forums.  See In re

Bankamerica Corp. Securities Litigation, Docket No. 1264, 1999 U.S. Dist. LEXIS 1494, at *4

(J.P.M.L. Feb. 11, 1999); In re Methionine Antitrust Litigation, Docket No. 1311, 1999 U.S.

Dist. LEXIS 19206, at *6 (J.P.M.L. Dec. 8, 1999).

### 3.    The District of Connecticut Is a Geographically Central Location

Moreover, the District of Connecticut offers the major advantage of being a

geographically central location for the transfer and consolidation of these cases.  The District of

Connecticut provides an accessible jurisdiction for Defendants and class representatives who are

predominately centered on the East Coast.  See In re Corn Derivatives Antitrust Litig., 486 F.

Supp. 929, 931-32 (J.P.M.L. 1980) (because parties, potential witnesses and potentially relevant

documents were widespread, "no one transferee district emerge[d] as the 'center of gravity' for

th[e] litigation," but Panel determined that eastern transferee forum was warranted because

litigation "ha[d] an eastern tilt because of the location of all eight of the major defendants'

headquarters in the eastern half of the country," and "many key witnesses and relevant

documents w[ould] be located in that area").

In sum the District of Connecticut is a geographically central and accessible forum where

a substantial number of witnesses are likely to found given that the headquarters of Defendants'

Pharmaceutical Division is located there.[11]

### 4.    The Status of the District of Connecticut's Civil Docket Further Demonstrates That It Is the Most Suitable Transferee Court

Another consideration supporting transfer and consolidation of these cases in the District

of Connecticut is that court's relative capacity to handle multidistrict litigation.  As of the twelve

month period ending on September 30, 2000, the District of Connecticut had fewer cases filed

than any of the other relevant districts save the inconveniently located District of Oklahoma.[12]

------

[11] The extent of the concentration of Defendants' employees, research facilities and business of their Pharmaceuticals Division can be readily ascertained by a review of Defendants' website.  (See Exhibit 6).

[12] The District of Connecticut had 2,705, the Eastern District of New York had 8,664, the District of New Jersey had 6,485, the Western District of Pennsylvania had 3,278, and the Northern District of Illinois had 8,843. Legions of the Panel's rulings have compared the degree of docket congestion in prospective transferee courts, including pending class actions and MDL cases.  See generally In re Corn Derivatives Antitrust Litig., 486 F. Supp. at 932 (comparing number of class actions and MDL cases pending in three potential transferee courts); In re Amtel, Inc. Sec. Litig., 447 F. Supp. 466, 468 (J.P.M.L. 1978) ("a comparison of the civil action dockets in the districts under consideration as possible....transferee districts is a relevant factor for the Panel to take into account when making its determination"); In re Career Academy Antitrust Litig., 342 F. Supp. 753, 754 (J.P.M.L. 1972) ("court congestion is often considered by the Panel in selecting a transferee district"); see also In re Falstaff Brewing Corp. Antitrust Litig., 434 F. Supp. 1225, 1231 (J.P.M.L. 1977) (noting that "the civil action docket in the Eastern District of Missouri is more current than the one in the Northern District of California and therefore the former district is in a better position to process the pretrial proceedings in this litigation toward ...

See Administrative Office of the United States Courts, Judicial Business of the United States
Courts: 2000 Annual Report of the Director (hereinafter the "2000 Annual Report") 129-30
(Table C) (Exhibit 7).  In addition, for that same twelve-month period ending on September 30,
2000, the District of Connecticut's pending cases showed the largest percentage reduction among
the relevant districts.  See 2000 Annual Report at 129-30 (Table C) (Exhibit 7).[13]

Thus, the latest figures available from the Administrative Office of the United States
Courts show that the District of Connecticut is well positioned to devote its attention, resources,
and expertise to this class-action litigation and to ensure its expeditious resolution.

## CONCLUSION

For the reasons stated above, Smithe respectfully requests that all of the subject actions be
transferred to the United States District Court for the District of Connecticut for coordinated or
consolidated pre-trial proceedings.

DATED: August 23, 2001

Respectfully submitted,

Kenneth G. Gilman
Edward L. Manchur
John C. Martland
Daniel D'Angelo
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850

---

their most expeditious termination")(citation omitted).

[13]  The District of Connecticut showed an 11.1% decrease, while the Eastern District of
New York showed a 5.3% decrease, the District of New Jersey showed a 0.1% decrease, the
Western District of Pennsylvania showed a 4.2% increase, the Northern District of Illinois
showed a 5.3% decrease and the Western District of Oklahoma showed a 0.6% increase.

Walter A. Twachtman, Esq.
BOATMAN, BOSCARINO, GRASSO &
TWACHTMAN
628 Hebron Avenue, Building 3
Glastonbury, CT 06033-5007
Telephone: (860) 659-5657

**COUNSEL FOR PLAINTIFF**
**OTIS SMITHE**

# See "REVISED"
# Schedule of Cases

---

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

```
-------------------------------------------------------X
                                    :
In re Baycol Product Liability Litigation    :       MDL Docket No.
                                    :
-------------------------------------------------------X
```

## SCHEDULE OF CASES PURSUANT TO RULE 7.2 (a)(ii) OF THE
## RULES OF PROCEDURE BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

Pursuant to Rule 7.2(a)(ii) of the Rules of Procedure before the Judicial Panel on

Multidistrict Litigation, Plaintiff Otis Smithe ("Plaintiff") respectfully submits this schedule of

cases that are the subject of Plaintiff's motion under 28 U.S.C. §1407 for transfer and

consolidation ("Motion") of several related actions (collectively, the "Baycol Product Liability

Litigation") to the United States District Court for the District of Connecticut:

      1.      Otis Smithe, on behalf of himself and all others similarly situated v. Bayer

Corporation and Bayer AG, Docket No. 3:01 CV 1570 AHN (D. Conn.)  This case was filed in

the District of Connecticut and is assigned to the Honorable Alan H. Nevas.

      2.      Diane Rosenthal, on behalf of herself and all others similarly situated v. Bayer

Corporation, a division of Bayer AG, Docket No. 01-1574 (W.D. Pa).  This action was filed in

Baycol/Schedulecases

the Western District of Pennsylvania and is assigned to the Honorable Donald J. Lee.

3.      Evelyn Sternberg, on behalf of herself and all others similarly situated v. Bayer, AG and Bayer Corporation, Docket No. 01-5557 (E.D. N.Y.). This action was filed in the Eastern District of New York and is assigned to the Honorable John Gleeson.

4.      Salvatore Galasso, individually and on behalf of all others similarly situated v. Bayer Corporation, Bayer AG and Glaxosmithkline PLC, Docket No. 01 CV 3885 (K.S.H.) (D. N.J.). This action was filed in the District of New Jersey and is assigned to the Honorable Katharine S. Hayden.

5.      Ronald Cohen, Majorie Freden, Prem Gupta, Larry Julien, William Kuta, Brenda Matzner, Kalid Pervaiz and Adrian Zuckerman, individually and on behalf of all others similarly situated v. Bayer AG, Bayer Corporation and Bayer Pharmaceutical Division, Docket No. 01C-6257 (N.D. Ill.). This action was filed in the North District of Illinois and is assigned to the Honorable Wayne R. Andersen.

6.      Steven L. Sparks, on behalf of himself and all others similarly situated v. Bayer Corporation, Docket No. CIV-01-1265-T (W.D. Ok.). This action was filed in the Western District of Oklahoma and is assigned to the Honorable Ralph G. Thompson.

DATED: August 23, 2001

Respectfully submitted,

*Edward L Manchur*

Kenneth G. Gilman
Edward L. Manchur
John C. Martland
Daniel D'Angelo
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850

Walter A. Twachtman, Esq.
BOATMAN, BOSCARINO, GRASSO &
TWACHTMAN
628 Hebron Avenue, Building 3
Glastonbury, CT 06033-5007
Telephone: (860) 659-5657

**COUNSEL FOR PLAINTIFF**
**OTIS SMITHE**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 27 2001

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

```
-------------------------------------------------X
                                              :
In re Baycol Product Liability Litigation     :     MDL Docket No.
                                              :
-------------------------------------------------X
```

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2001 AUG 27  A 10: 00

RECEIVED
CLERK'S OFFICE

### REVISED SCHEDULE OF CASES PURSUANT TO RULE 7.2 (a)(ii) OF THE
### RULES OF PROCEDURE BEFORE THE JUDICIAL PANEL
### ON MULTIDISTRICT LITIGATION

Pursuant to Rule 7.2(a)(ii) of the Rules of Procedure before the Judicial Panel on

Multidistrict Litigation, Plaintiff Otis Smithe ("Plaintiff") respectfully submits this schedule of

cases that are the subject of Plaintiff's motion under 28 U.S.C. §1407 for transfer and

consolidation ("Motion") of several related actions (collectively, the "Baycol Product Liability

Litigation") to the United States District Court for the District of Connecticut:

1.      Otis Smithe, on behalf of himself and all others similarly situated v. Bayer

Corporation and Bayer AG, Docket No. 3:01 CV 1570 AHN (D. Conn.)  This case was filed in

the District of Connecticut and is assigned to the Honorable Alan H. Nevas.

2.      Diane Rosenthal, on behalf of herself and all others similarly situated v. Bayer

Corporation, a division of Bayer AG, Docket No. 01-1574 (W.D. Pa).  This action was filed in

the Western District of Pennsylvania and is assigned to the Honorable Donald J. Lee.

Baycol/REV Schedulecases

3.     <u>Evelyn Sternberg, on behalf of herself and all others similarly situated v. Bayer,</u>
<u>AG and Bayer Corporation</u>, Docket No. 01-5557 (E.D. N.Y.).  This action was filed in the
Eastern District of New York and is assigned to the Honorable John Gleeson.

4.     <u>Salvatore Galasso, individually and on behalf of all others similarly situated v.</u>
<u>Bayer Corporation, Bayer AG, Bayer, Inc. and Glaxosmithkline PLC</u>, Docket No. 01 CV 3885
(K.S.H.) (D. N.J.).  This action was filed in the District of New Jersey and is assigned to the
Honorable Katharine S. Hayden.

5.     <u>Ronald Cohen, Majorie Freden, Prem Gupta, Larry Julien, William Kuta, Brenda</u>
<u>Matzner, Kalid Pervaiz and Adrian Zuckerman, individually and on behalf of all others similarly</u>
<u>situated v. Bayer AG, Bayer Corporation and Bayer Pharmaceutical Division</u>, Docket No. 01C-
6257 (N.D. Ill.).  This action was filed in the North District of Illinois and is assigned to the
Honorable Wayne R. Andersen.

6.     <u>Steven L. Sparks, on behalf of himself and all others similarly situated v. Bayer</u>
<u>Corporation</u>, Docket No. CIV-01-1265-T (W.D. Ok.).  This action was filed in the Western
District of Oklahoma and is assigned to the Honorable Ralph G. Thompson.

DATED: August 24, 2001

Respectfully submitted,

Kenneth G. Gilman
Edward L. Manchur
John C. Martland
Daniel D'Angelo
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850

Walter A. Twachtman, Esq.
BOATMAN, BOSCARINO, GRASSO &
TWACHTMAN
628 Hebron Avenue, Building 3
Glastonbury, CT 06033-5007
Telephone: (860) 659-5657

**COUNSEL FOR PLAINTIFF
OTIS SMITHE**

# See "REVISED"
# Certificate of Service

---

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

```
-------------------------------------------------X
                                        :
In re Baycol Product Liability Litigation   :        MDL Docket No.
                                        :
-------------------------------------------------X
```

### <u>CERTIFICATE OF SERVICE</u>

Pursuant to Rule 5.2(a) of the Rules of Procedure before the Judicial Panel on

Multidistrict Litigation ("Panel"), the undersigned attorney for Plaintiff Otis Smithe ("Plaintiff")

hereby certifies that true and correct copies of (i) Plaintiff's Motion to Transfer Pursuant to 28

U.S. C. §1407 ("Motion"); (ii) Plaintiff's Memorandum of Law in support of the Motion; and

(iii) Plaintiff's Schedule of Cases Pursuant to Rule 7.2(a)(ii) of the Panel's Rules have been

served by first-class mail this date on the attorneys listed on the annexed schedule.  In addition,

pursuant to Rule 5.2(b) of the Panel's Rules, the undersigned attorney for Plaintiff certifies that

true and correct copies of the foregoing have been sent by first-class mail this date to the Clerk of

the Court of each district court where an action is pending that is the subject of the Motion.

DATED: August 23, 2001

Respectfully submitted

*Edward L. Manchur*

Kenneth G. Gilman
Edward L. Manchur
John C. Martland
Daniel D'Angelo
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850

**COUNSEL FOR PLAINTIFF
OTIS SMITHE**

**Baycol Product Liability Litigation Service List**

**A.      Counsel**

Alfred G. Yates, Jr.
Law Offices of Alfred G. Yates, Jr.
429 Forbes Avenue 519 Allegheny Building
Pittsburgh, PA 15219
Telephone: (412) 391-5164

Andrew Barroway
Schiffrin, Craig & Barroway
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
Telephone: (215) 667-7706

Paul J. Geller
Cauley, Geller, Bowman & Coates
2255 Glades Road One Boca Place, Suite 421 A
Boca Raton, FL 33431
Telephone: (561) 750-3000

Brian M. Felgoise
230 South Broad Street, Suite 404
Philadelphia, PA 19102
Telephone: (215) 735-6810

Frederic S. Fox
Kaplan, Kilsheimer & Fox, LLP
805 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980

Bruce Heller Nagel
Nagel, Rice, Dreifuss & Mazie, LLP
301 South Livingston Avenue, Suite 201
Livingston, NJ 07039-3991
Telephone: (973) 535-3100

Kenneth Brian Moll
Kenneth B. Moll & Associates
Three First National Plaza 54th Floor
Chicago, IL 60602
Telephone: (312) 558-6444

Don S. Strong
Strong, Martin & Associates
120 N. Robinson Avenue, Suite 2716
Oklahoma City, OK 73102
Telephone: (405) 604-7500

**B.**     <u>Courts</u>

Clerk of the Court
United States District Court for the
     Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201
Telephone: (718) 260-2600

Clerk of the Court
United States District Court for the
     Western District of Pennsylvania
P.O Box 1805
Pittsburgh, PA 15230
Telephone: (412) 644-3527

Clerk of the Court
United States District Court for the
     District of New Jersey
Martin Luther King, Jr. Federal Building
and U.S Courthouse
50 Walnut Street
Newark, NJ 07101
Telephone: (973) 645-3730

Clerk of the Court
United States District Court for the
     Northern District of Illinois
Everett McKinley Dirksen Building
219 South Dearborn Street
Chicago, IL 60604
Telephone: (312) 435-5670

Clerk of the Court
United States District Court for the
     Western District of Oklahoma
1210 U.S Courthouse
200 N.W. 4th Street
Oklahoma City, OK 73102
Telephone: (405) 231-4792

Clerk of the Court
United States District Court for the
     District of Connecticut
141 Church Street
New Haven, CT 06510
Telephone: (203) 773-2140

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 27 2001

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

-----------------------------------------------------X
                        :

In re Baycol Product Liability Litigation  :     MDL Docket No.
                        :

-----------------------------------------------------X

### REVISED CERTIFICATE OF SERVICE

       Pursuant to Rule 5.2(a) of the Rules of Procedure before the Judicial Panel on

Multidistrict Litigation ("Panel"), the undersigned attorney for Plaintiff Otis Smithe ("Plaintiff")

hereby certifies that true and correct copies of (i) Plaintiff's Motion to Transfer Pursuant to 28

U.S. C. §1407 ("Motion"); (ii) Plaintiff's Memorandum of Law in support of the Motion; and

(iii) Plaintiff's Schedule of Cases Pursuant to Rule 7.2(a)(ii) of the Panel's Rules have been

served by first-class mail this date on the attorneys listed on the annexed schedule.  In addition,

pursuant to Rule 5.2(b) of the Panel's Rules, the undersigned attorney for Plaintiff certifies that

true and correct copies of the foregoing have been sent by first-class mail this date to the Clerk

of the Court of each district court where an action is pending that is the subject of the Motion.

DATED: August 24, 2001

Respectfully submitted

*Edward L. Manchur*

Kenneth G. Gilman
Edward L. Manchur
John C. Martland
Daniel D'Angelo
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850

**COUNSEL FOR PLAINTIFF
OTIS SMITHE**

**Baycol Product Liability Litigation Service List**

**A.      Counsel**

Alfred G. Yates, Jr.
Law Offices of Alfred G. Yates, Jr.
429 Forbes Avenue 519 Allegheny Building
Pittsburgh, PA 15219
Telephone: (412) 391-5164
*Counsel for Representative Plaintiff Diane Rosenthal*

Andrew Barroway
Schiffrin, Craig & Barroway
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
Telephone: (215) 667-7706
*Counsel for Representative Plaintiff Diane Rosenthal*

Paul J. Geller
Cauley, Geller, Bowman & Coates
2255 Glades Road One Boca Place, Suite 421 A
Boca Raton, FL 33431
Telephone: (561) 750-3000
*Counsel for Representative Plaintiff Diane Rosenthal*

Brian M. Felgoise
230 South Broad Street, Suite 404
Philadelphia, PA 19102
Telephone: (215) 735-6810
*Counsel for Representative Plaintiff Diane Rosenthal*

Frederic S. Fox
Kaplan, Kilsheimer & Fox, LLP
805 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980
*Counsel for Representative Plaintiff Evelyn Sternberg*

Bruce Heller Nagel
Nagel, Rice, Dreifuss & Mazie, LLP
301 South Livingston Avenue, Suite 201
Livingston, NJ 07039-3991
Telephone: (973) 535-3100
*Counsel for Representative Plaintiff Salvatore Galasso*

Baycol/REV Certserv

Kenneth Brian Moll
Kenneth B. Moll & Associates
Three First National Plaza 54th Floor
Chicago, IL 60602
Telephone: (312) 558-6444
*Counsel for Representative Plaintiffs Ronald Cohen, Marjorie Freden, Prem Gupta, Larry Julien, William Kuta, Brenda Matzner, Kalid Pervaiz and Adrian Zuckerman*

Don S. Strong
Strong, Martin & Associates
120 N. Robinson Avenue, Suite 2716
Oklahoma City, OK 73102
Telephone: (405) 604-7500
*Counsel for Representative Plaintiff Steven L. Sparks*

**B.  Defendants**

Bayer Corporation
c/o Resident Agent         *- and -*
CT Corporation System
1 Commercial Plaza
Hartford, CT 06103

Bayer, AG
D-51368
Leverkusen
Federal Republic of Germany

Bayer, Inc.
c/o Resident Agent
CT Corporation System
1 Commercial Plaza
Hartford, CT 06103

Bayer Pharmaceuticals Division
400 Morgan Lane
West Haven, CT 06516

Glaxo Smithkline PLC        *- and -*
1 Franklin Plaza
200 N. 16th Street
Philadelphia, PA 19102

Bayer Corporation
245 New Park Drive
Berlin, CT 06037

Glaxo Smithkline PLC
100 Beecham Drive
Pittsburgh, PA 15205-0000

**C.**     **Courts**

Clerk of the Court
United States District Court for the
        Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201
Telephone: (718) 260-2600

Clerk of the Court
United States District Court for the
        Western District of Pennsylvania
P.O Box 1805
Pittsburgh, PA 15230
Telephone: (412) 644-3527

Clerk of the Court
United States District Court for the
        District of New Jersey
Martin Luther King, Jr. Federal Building
and U.S Courthouse
50 Walnut Street
Newark, NJ 07101
Telephone: (973) 645-3730

Clerk of the Court
United States District Court for the
        Northern District of Illinois
Everett McKinley Dirksen Building
219 South Dearborn Street
Chicago, IL 60604
Telephone: (312) 435-5670

Clerk of the Court
United States District Court for the
        Western District of Oklahoma
1210 U.S Courthouse
200 N.W. 4th Street
Oklahoma City, OK 73102
Telephone: (405) 231-4792

Clerk of the Court
United States District Court for the
        District of Connecticut
915 Lafayette Blvd.
Bridgeport, CT 06604
Telephone: (203) 579-5861

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG 2 7 2001

FILED
CLERK'S OFFICE

1

UNITED STATE DISTRICT COURT
DISTRICT OF CONNECTICUT

OTIS SMITHE, On Behalf Of Himself And
All Others Similarly Situated,

       Plaintiff,

  vs.

*Civil Action No.*

BAYER CORPORATION and
BAYER AG

       Defendants.

JURY TRIAL DEMANDED

**3̶01CV01570** [AHN]

## CLASS ACTION COMPLAINT

    Plaintiff, Otis Smithe, on behalf of himself and all others similarly situated, alleges as follows:

### I. JURISDICTION AND VENUE

    1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 (diversity) in that the state of citizenship of the individual and representative Plaintiff is different from the state of citizenship of the Defendants, and the amount in controversy exceeds $75,000., exclusive of interest and costs.

    2.    Plaintiff alleges an amount in controversy in excess of $75,000. exclusive of interest and costs, as to himself and each member of the proposed Class. In addition, the Class has an undivided interest in obtaining injunctive relief including the establishment of a medical monitoring program and revised drug warnings which exceed $75,000. in value.

    3.    Venue is proper in the District pursuant to 28 U.S.C. §1391. Defendant Bayer Corporation is a corporation with its Pharmaceuticals Division headquarters located at 400 Morgan Lane, West Haven, Connecticut. A substantial part of the events giving rise to the claims asserted herein occurred in this District. Defendants manufactured and sold Baycol in and from this District. The Defendants have received substantial compensation and profits from sales of Baycol in this District. Many of the witnesses and a substantial number of the documents and sources of proof are located in this district.

## II. <u>PARTIES</u>

4.      Plaintiff Otis Smithe is a resident of Northwood, New Hampshire. Mr. Smithe suffers from high cholesterol. From 1997 through approximately August 16, 2001, Mr. Smithe took Baycol to treat his high blood pressure.

5.      Defendant Bayer Corporation ("Bayer Corp.") is a wholly owned subsidiary of Bayer AG and an Indiana Corporation with its Pharmaceuticals Division headquarters located in New Haven, Connecticut.   At all times material hereto, Bayer Corp. was in the business of manufacturing, promoting, marketing and distributing the prescription drug Baycol in the United States.

6.      Defendant Bayer AG is a German Corporation with its principal place of business in Bayerwerk, Germany. Bayer AG through its wholly owned American subsidiary, Bayer Corp., was in the business of manufacturing, promoting, marketing and distributing the prescription drug Baycol in the United States.

## III. <u>FACTS</u>

7.      Baycol is the trade name for a prescription drug (known as cerivastatin) promoted and prescribed to lower cholesterol.

8.      Baycol is a member of a class of cholesterol lowering drugs commonly referred to as statins. Statins lower cholesterol levels by blocking a specific enzyme in the body that is involved in the synthesis of cholesterol.

9.      At all times material hereto, Defendants Bayer Corp. and Bayer AG manufactured, labeled, marketed, advertised and otherwise distributed in interstate commerce, the product known as Baycol from Connecticut.

10.      The Defendants aggressively promoted its Baycol prescription drug gaining approval from the Food and Drug Administration ("FDA") to market Baycol in the United States in 1997.

11.      Defendants' strategy, beginning in 1997, has been to aggressively manufacture, market and sell Baycol by falsely misleading potential users including the Plaintiff concerning the risks associated with the use of its drug and by failing to protect users from serious

- 2 -

dangers which the Defendants knew or should have known would result from the use of its product.

12.     The Defendants engaged in extensive advertising and marketing efforts directly to consumers and also targeted physicians and other healthcare providers, and disseminated false and misleading materials to them which failed to disclose the risks associated with the use of Baycol.

13.     Defendants' advertising program, by affirmative misrepresentations and omissions, falsely sought to create the impression that the use of Baycol was safe for human use and had fewer side effects and adverse reactions than other cholesterol lowering medications.

14.     Within a short time of the drug's release, the Defendants began receiving reports of patients suffering from Rhabdomyolysis after taking Baycol.

15.     Rhabdomyolysis is a condition that results in muscle cell breakdown and release of contents of muscle cells into the bloodstream.  Rhabdomyolysis is a serious, potentially fatal adverse effect of Baycol.   Rhabdomyolysis may result in potential life threatening complications including renal failure, cardiac arrest and arrhythmias, and other organ damage.

16.     Defendants' product warnings in effect during the class period on Baycol were wholly inadequate and failed to warn prescribing physicians and consumer patients, including the Plaintiff and the proposed class of increased incidence of Rhabdomyolysis and the actual muscle cell breakdown and renal failure associated with the product.

17.     Defendants had knowledge as early as 1997, of the serious medical risks related to the use by the proposed class of its Baycol product. Despite such knowledge, Defendants failed to adequately disclose or warn consumers including the Plaintiff concerning the health hazards and risks associated with the use of Baycol.

18.     Defendants falsely and fraudulently misrepresented material facts regarding Baycol, including, but not limited to the following:

a.     Defendants had conducted adequate testing of its Baycol product, prior to selling to Plaintiffs and the proposed class and targeting the healthcare industry when in fact the Defendants had not done so;

b.     Defendants failed to disclose that the use of Baycol caused a high incidence

- 3 -

of Rhabdomyolysis - - a disorder that damages the integrity of skeletal muscle.

c.    Defendants failed to disclose that the use of Baycol may cause serious muscle cell breakdown resulting in renal failure and death.

19.    There have been at least fifty-two (52) deaths reported to the Defendants from those who were prescribed and ingested Baycol.

20.    The Defendants failed to adequately conduct post-marketing studies concerning Baycol.

21.    As a result of the continuing receipt of reports by the Defendants of a large number of fatal Rhabdomyolysis disorders, renal failures, heart abnormalities and deaths, the Defendants finally announced on August 8, 2001 that they had decided to stop marketing and distributing Baycol in the United States.

22.    In a letter dated, August 8, 2001, E. Paul Mac Carthy, Vice President of the Bayer Corp. Pharmaceutical Division, notified healthcare professionals that patients who currently take Baycol should have their Baycol discontinued and be switched to alternative therapy.  Dr. Mac Carthy cited an increased reporting rate of Rhabdomyolysis from use of Baycol alone and when co-prescribed with gemfibrozil.

23.    The FDA agreed with the voluntary withdrawal of Baycol from the United States Market.

24.    CPK tests, urine analysis, urine myoglobin tests, serum myoglobin tests, MRIs, and electrocardiograms will ensure that individuals at risk for and/or already suffering Rhabdomyolysis will receive early diagnosis and treatment.

## IV. CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure Rules 23(a)(1)-(4), 23(b)(2) and 23(b)(3) on behalf of a class consisting of all persons in the United States who purchased and/or used Baycol designed, manufactured, marketed, sold and/or placed in the stream of interstate commerce by Defendants.

26.    Plaintiff is a member of the Class he seeks to represent.  The members of the

- 4 -

Class are so numerous that joinder is impracticable and would involve thousands of individual actions.

27.    On information and belief, approximately 700,000 prescriptions for Defendants' Baycol were written in the United States. Defendants marketed and sold approximately $554 million worth of Baycol to the Plaintiff and class members in 2000 alone. Defendants predicted sales of Baycol to exceed $800 million this year.

28.    There are questions of law and fact common to the Class including, but not limited to:

    a.    Whether Defendants designed, manufactured and/or marketed Baycol with knowledge that it was a dangerously defective product;

    b.    Whether Defendants acted negligently in marketing and selling Baycol;

    c.    Whether Defendants conducted, either directly or indirectly, adequate testing of Baycol;

    d.    Whether Defendants failed to adequately warn consumers of the adverse health hazards caused by using Baycol;

    e.    Whether Defendants falsely and fraudulently misrepresented in their advertisements, promotional materials and other materials, among other things, the safety of using Baycol; and

    f.    Whether medical monitoring of Plaintiff and the proposed class who used Baycol is reasonably necessary.

29.    The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff and the members of the Class used Baycol designed, manufactured, supplied, distributed, sold and/or placed in the stream of interstate commerce by Defendants Bayer Corp. and Bayer AG, and did suffer or may suffer harm as a result.

30.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in complex class actions and products liability litigation.

31.    Class certification is appropriate under Fed.R.Civ.P. Rule 23(b)(3) because

common issues of law and fact relative to the design, manufacture and marketing of Baycol predominate over individual issues. A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all members of the class is impracticable.

32.     Class certification is also appropriate pursuant to Fed.R.Civ.P.23(b)(2) because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the class members. Specifically, Plaintiff seeks injunctive relief in the form of court ordered medical monitoring, revised drug warnings to assist Plaintiff and the class members in the detection and treatment of consumer patients who used Baycol, and an emergency notice to the Class regarding the dangers of Baycol.

## COUNT I

### (Breach of Implied Warranty)

33.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and further alleges as follows:

34.     At the time Defendants marketed, sold, and distributed Baycol for use by Plaintiff and the Class, Defendants knew of the use for which Baycol was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

35.     Plaintiff, the Class and their physicians reasonably relied upon the skill and judgment of Defendants as to whether Baycol was of merchantable quality and safe and fit for their intended use.

36.     Contrary to such implied warranty, Baycol was not of merchantable quality or safe or fit for its intended use, because the product was in the hands of Defendants, unreasonably dangerous and unfit for the ordinary purposes for which it was to be used as described above.

37.     Defendants Bayer Corp. and Bayer AG manufactured, marketed, distributed and/or supplied Baycol.

38.     Baycol was under exclusive control of Defendants, and was unaccompanied by appropriate warnings regarding the risk of injuries associated with the use of Baycol. The warnings given did not accurately reflect the risks, incidence, symptoms, scope or severity of such

- 6 -

injuries.

39.     Baycol manufactured, marketed, sold and/or supplied by Defendants was defective due to inadequate post-marketing warnings and/or instructions because, after the Defendants knew or should have know of the risks of injuries posed by the use of Baycol, they failed to provide adequate warnings to users or consumers of the product.

40.     As a direct and proximate result of the Defendants' breach of implied warranty, Plaintiff and the Class suffered economic loss and have suffered and will continue to suffer an increased risk of harm as previously described above.

## COUNT II

### (Negligence)

41.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and further alleges as follows:

42.     Defendants had a duty to exercise reasonable care in the manufacture, sale and/or distribution of Baycol into the stream of commerce, including a duty to assure that the product did not cause users to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

43.     Defendants had a duty to exercise reasonable care in the manufacture, sale and/or distribution of Baycol, including a duty to assure that the product did not cause users to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

44.     Defendants failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, and/or distribution of Baycol in that Defendants knew or should have known that the product when used individually or in foreseeable combination with other drugs created a high risk of unreasonable, dangerous side effects to the heart which can cause extraordinary suffering and death.

45.     Defendants were negligent in the design, manufacture, testing, advertising, warning, marketing and sale of Baycol, in that, among other things, they:

a.      Failed to use due care in designing and manufacturing the product so as to

- 7 -

avoid the aforementioned risks to individuals;

b.  Failed to accompany their product with proper warnings regarding all possible adverse side effects associated with the use of the product when used individually or in foreseeable combination with other drugs;

c.  Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the product when used individually or in foreseeable combination with other drugs;

d.  Failed to provide adequate training and instruction to medical care providers for appropriate use of the product either individually or in foreseeable combination with other drugs;

e.  Failed to warn Plaintiff and the Class, prior to actively encouraging the sale of the product individually and/or in combination with other drugs, either directly or indirectly, orally or in writing, about the following: (1) about the need for comprehensive, regular medical monitoring to ensure early discovery of potentially fatal side effects; (2) the possibility of becoming disabled as a result of the drug use and/or having to undergo kidney or heart surgery in order to correct resultant failures; (3) that such surgery may leave an unsightly scar or scars; or (4) that such defects and/or may become protracted, debilitating, difficult, and painful, necessitating lengthy surgery and/or several visits to the doctor, clinic or hospital;

f.  Failed to adequately test and/or warn about the reaction or interaction of the product, including, without limitation, the possible adverse side effects caused by the reaction or interaction with other drugs;

g.  Failed to warn that the risks associated with the product would exceed other comparable forms of cholesterol lowering medication; and

h.  Were otherwise careless or negligent.

46.  Despite the fact that Defendants knew or should have known that Baycol, when prescribed individually and/or in combination with other products, caused unreasonable,

dangerous side effects which many users would be unable to remedy by any means, Defendants continued to market the product to consumers including Plaintiff, when there were safer alternative methods of lowering Cholesterol.

47.     Defendants knew or should have known that consumers such as Plaintiff and Class members would forseeably suffer economic loss and injury as a result of Defendants' failure to exercise ordinary care as described above.

48.     Defendants' negligence was a proximate cause of Plaintiff's and the Class' economic loss and increased risk of harm as previously set forth herein.

## COUNT III

### (Injunctive and Equitable Relief)

**1.     MEDICAL MONITORING**

49.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and further alleges as follows on behalf of himself and all others similarly situated:

50.     As a direct and proximate result of Defendants' acts, omissions, and conduct as set forth above, Plaintiff and Class members have been exposed to a hazardous substance and, as a result, suffer a significantly increased risk of contracting serious injury or latent disease, including renal failure.  This increased risk makes periodic diagnostic and medical examinations reasonable and necessary.

51.     Early detection and diagnosis of these abnormalities is clinically invaluable since it can prevent, reduce and/or significantly delay resulting discomfort, suffering and/or death and since these conditions can often appear asymptomatic absent proper testing.

52.     Easily administered, cost-effective monitoring and testing procedures exist which make the early detection and treatment of such injuries or disease possible and beneficial.  For example, administration of the several readily available non-invasive tests readily diagnose the presence of toxic abnormalities, even in asymptomatic individuals.  Early diagnosis of these abnormalities and conditions will allow prompt and effective treatment which will reduce the risk of morbidity and mortality which these patients would suffer if treatment were delayed until their

- 9 -

conditions became overly symptomatic.

53.     The recommended testing procedures will be subject to expert testimony at the time of Class certification and/or trial.  Appropriate testing regimes will likely include the following readily administrable initial tests and procedures: urinalysis, urine myoglobin test, serum myoglobin test, CPK test, MRI and electrocardiogram.

54.     Many individuals at risk for Rhabdomyolysis cannot afford to get appropriate testing and/or have not been advised, and do not otherwise know, of the need to undergo testing. Class members also need to be advised of the availability of non-invasive testing as a diagnostic tool and treatment which will prevent even more grave injury.

55.     The increased susceptibility to injuries and irreparable threat to the health of Plaintiff and the Class members resulting from their exposure to the Baycol can only be mitigated or addressed by the creation of a comprehensive medical monitoring program:

      a.    Notifying individuals who use or used Baycol of the potential harm from the product either alone or in combination with other drugs;

      b.    Funding further studies of the long term effects of Baycol either alone or in combination with other drugs;

      c.    Funding research into possible cures for the detrimental effects of using Baycol either alone or in combination with other drugs;

      d.    Gathering and forwarding to treating physicians information related to the diagnosis and treatment of injuries which may result from using Baycol either alone or in combination with other drugs; and

      e.    Aiding in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of the users of Baycol.

56.     The users of Baycol have no adequate remedy at law in that monetary damages alone do not compensate for the continuing nature of the harm to them, and a monitoring program which notifies them of possible injury and aids in their treatment can prevent the greater harms which may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur or become worse.

57.     Without a court-approved medical monitoring program, the users of Baycol will not receive prompt medical care which could prolong their productive lives, increase prospects for improvement and minimize disability.  The Plaintiff does not have an adequate remedy at law.

2.     **UPDATED PATIENT WARNINGS AND EMERGENCY NOTICE**

58.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and further alleges as follows:

59.     Defendants have a continuing duty to warn Plaintiff, the Class, and the public of all potential risks and dangers of which they become or should become aware.  There are studies underway regarding these risks and dangers.  As a proximate result of the Defendants' conduct described herein, Plaintiff, on behalf of himself and all others similarly situated, is entitled to damages and/or equitable relief in the form of revised drug warnings, or equivalent remedial and corrective action, to accurately reflect the known adverse side effects of Baycol, at Defendants' expense.

60.     Defendants should be required to provide continuously updated product warnings to individuals who use and/or have previously used, the relevant products to apprise them with timely information concerning effective testing and treatment options for those suffering from, or at risk for, Rhabdomyolysis or other injuries caused by the Baycol.

### COUNT IV

**(Violation of Connecticut Unfair Trade Practices Act – Conn. Gen. Stat.
§42-110a, *et seq.* and Other State Unfair Trade Practices Statutes)**

61.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and further alleges as follows on behalf of himself and all others similarly situated:

62.     At all times relevant to this Complaint, Defendants were engaged in trade or commerce within the meaning of Conn. Gen. Stat. §42-110a, *et seq*.

63.     Defendants' actions of placing Baycol in the stream of commerce as complained of herein constitute unfair and deceptive acts or practices and violations of Conn. Gen.

- 11 -

Stat. §42-110a, *et seq.*

64.    Plaintiff and the Class have suffered damages and losses of money or property and are subject to an increased risk of personal injury as a result of Defendants' use or employment of unfair or deceptive acts or practices in violation of the Connecticut Unfair Trade Practices Act, §42-110a, *et seq.*, in that, inter alia, they have suffered loss attributable to the cost of Baycol, and have expended and/or wrongfully will be required to expend monies to obtain medical monitoring and/or medical diagnoses concerning their physical condition for the reasons which are more particularly set forth above.

65.    Defendants' conduct as described above was engaged in willfully or knowingly in violation of Conn. Gen. Stat. §42-110a, *et seq.*

66.    Plaintiff and the Class have suffered damages due to Defendants' use or employment of unfair or deceptive acts or practices in an amount to be determined at trial.

## COUNT V

### (Strict Product Liability-Failure to Warn)

67.    Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and further alleges as follows:

68.    Defendants are manufacturers and/or suppliers of Baycol.

69.    Baycol manufactured and/or supplied by Defendants were and are unaccompanied by appropriate warnings regarding the risk of Rhabdomyolysis associated with the use of Baycol. The warnings given did not accurately reflect the risks, incidence, symptoms, scope or severity of such injuries.

70.    Defendants failed to perform adequate testing in that adequate testing would have shown that Baycol posed a serious risk of Rhabdomyolysis which would have permitted adequate and appropriate warnings to have been given by Defendants to prescribing physicians, the Plaintiff and the proposed class.

71.    Baycol manufactured and/or supplied by Defendants was defective due to inadequate post-marketing warnings and/or instructions because, after the Defendants knew or should have know of the risk of injuries posed by the use of Baycol, they failed to provide adequate

- 12 -

warnings to users or consumers of the product.

72.    As the producing cause and legal result of the defective condition of Baycol as manufactured and/or supplied by Defendants, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action(s) of Defendants described herein, Plaintiff and the Class have suffered a significantly increased risk of injuries for which damages have been suffered by Plaintiff and the Class, and for which medical monitoring, in the form requested herein, is necessary, appropriate and beneficial.

**COUNT VI**

**(Strict Product Liability-Failure to Warn)**

73.    Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and further alleges as follows:

74.    Defendants are manufacturers and/or suppliers of Baycol.

75.    Baycol manufactured and/or supplied by Defendants was defective in design or formulation in that, when it left the exclusive hands of the Defendants, the foreseeable risks exceeded the benefits associated with the design or formulation.

76.    Alternatively, Baycol, manufactured and/or supplied by Defendants was defective in design or formulation, in that, when it left the hands of the Defendants, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than other cholesterol lowering medications.

77.    As a direct and proximate result of the defective and unreasonably dangerous condition of the relevant products, as manufactured and/or supplied by Defendants, and as a direct result of the negligence, carelessness, other wrongdoing and action of Defendants described herein, Plaintiff and the Class have suffered a significantly increased risk of sustaining heart injuries for which damages have been suffered by Plaintiff and the Class, and for which the medical monitoring, the form requested herein, is necessary, beneficiary and appropriate.

**COUNT VII**

**(Fraud by Omission)**

78.    Plaintiff incorporates by reference all other paragraphs of this complaint as

- 13 -

if fully set forth herein and further alleges as follows:

79.     Defendants had actual knowledge based upon reports, complaints and clinical studies that Baycol created a risk of Rhabdomyolysis, bodily injury and death to consumers who took the product.

80.     Defendants had a duty to disclose but intentionally omitted this information in its product labeling and/or intentionally failed to disclose fully and adequately the risk of personal injury resulting from Baycol to Plaintiff, the Class and their respective physicians, in order to fast-track the approval of the drug, to market the drug, and to avoid losses in sales of the drug.

81.     Further, even when Defendants were put on actual notice of high incidents of Rhabdomyolysis and bodily injury by class members taking Baycol, Defendants persisted in selling the product without taking action to protect the consumers.

82.     Defendant intended for Plaintiff and the Class to rely on their fraudulent omissions and Plaintiff and the Class did reasonably rely to their detriment upon Defendant's fraudulent omissions in failing to warn Plaintiff and the Class about the serious risks associated with the product.

83.     Defendants' fraudulent omissions were a proximate cause of Plaintiff's and the Class' economic loss and increased risk of harm as previously set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendants as follows:

1.     An Order certifying the Class under the appropriate provisions of Fed.R.Civ.P. 23 and appointing Plaintiff and his counsel to represent the Class;

2.     A judgment for Plaintiff and class members against the Defendants, for compensatory damages including a full refund of all purchase costs to Plaintiff and members of the Class who have paid for Baycol;

3.     The entry of a permanent mandatory injunction and other appropriate equitable relief ordering the Defendants to establish a medical monitoring program for the Plaintiff and the Class; and

- 14 -

4.    A judgment for such other and further relief that the Court deems necessary or appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial of all claims so triable as a matter of right.

Dated: August 17, 2001

The Plaintiff

By his attorneys,

Walter A. Twachtman, Esq.
Federal Bar No. ct09106
BOATMAN,   BOSCARINO,   GRASSO   &
TWACHTMAN
628 Hebron Ave., Building 3
Glastonbury, Connecticut 06033-5007
Telephone: (860) 659-5657
Facsimile: (860) 657-4549
E-mail: wtwachtman@bbgtattorneys.com

Kenneth G. Gilman, Esq.
John C. Martland, Esq.
Daniel D'Angelo, Esq.
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850

- 15 -

**2**

RICF 500
Summons Iss
1532

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT PENNSYLVANIA

DIANE ROSENTHAL, on behalf of herself : Civil Action No.:
and all others similarly situated, :
: 01  1574
Plaintiff, :
:
v. : CLASS ACTION COMPLAINT
: FOR INJUNCTIVE RELIEF AND
BAYER CORPORATION, A Division of : DAMAGES
BAYER AG, :
:
Defendant. : JURY TRIAL DEMANDED
:

Plaintiff, by and through her attorneys, alleges as follows:

## SUMMARY OF CLAIMS

1.      This is a class action brought on behalf of a nationwide class of all persons who

have taken the statin drug Baycol (cerivastatin).  This action seeks, among other relief, the

establishment of a medical monitoring program on behalf of all class members to ensure prompt

diagnosis and treatment for individuals exposed to the potentially life-threatening side effects and

diseases caused by Baycol.

## PARTIES

2.      Plaintiff Diane Rosenthal is a resident of, and citizen of Palm Beach County,

Florida.  Plaintiff has been damaged as a result of her Baycol use, and she has suffered an

increased susceptibility to injury and disease, including, but not limited to, rhabdomyolysis.

3.      Defendant Bayer Corporation ("Bayer") is a wholly owned subsidiary of Bayer

AG, a corporation organized and existing under the laws of Germany.  Bayer's principal place of

business in the United States is located at 100 Bayer Road, Pittsburgh, PA 15205.  Upon

information and belief, at all times relevant hereto Bayer manufactured, promoted, marketed,

distributed, developed, and sold Baycol in this District and in interstate commerce.

## JURISDICTION AND VENUE

4.     Plaintiff alleges an amount in controversy in excess of $75,000 exclusive of interest and costs, as to herself and each member of the class.

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 as to plaintiff and each member of the class and there is complete diversity of citizenship between the named plaintiff and defendant Bayer.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Bayer conducts business in this District and the contacts of Bayer with this District are sufficient to subject Bayer to personal jurisdiction herein.

## FACTUAL ALLEGATIONS

7.     At all times relevant hereto, Bayer, itself or by the use of others, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn, and otherwise distribute in interstate commerce the product Baycol (cerivastatin).

8.     Baycol, which was initially approved for sale in the United States in 1997, is a member of a class of cholesterol-lowering drugs that are commonly referred to as "statins." Statins lower cholesterol levels by blocking a specific enzyme in the body that is involved in the synthesis of cholesterol.

9.     More than 700,000 Americans have taken Baycol, many in combination with gemfibrozil (Lopid and generics), another lipid-lowering drug.

10.     Rhabdomyolysis is a condition that results in muscle cell breakdown and release of the contents of muscle cells into the bloodstream.  Symptoms of rhabdomyolysis include muscle pain, weakness, tenderness, malaise, fever, dark urine, nausea and vomiting.  The pain

2

may involve specific groups of muscles or may be generalized throughout the body.  Most

frequently the involved muscle groups are the calves and lower back; however, some patients

report no symptoms of muscle injury.  In some cases the muscle injury is so severe that patients

develop renal failure and other organ failure, which can be fatal.

11.     Cases of fatal rhabdomyolysis in association with the use of Baycol have been

reported significantly more frequently than for other approved statins.  The United States Food

and Drug Administration ("FDA") has received reports of 31 U.S. deaths due to severe

rhabdomyolysis associated with the use of Baycol, 12 of which involved concomitant

gemfibrozil use.

12.     On or about October 25, 1999, the FDA Division of Drug Marketing, Advertising,

and Communications ("DDMAC") wrote to Bayer as follows:

> As part of its routine monitoring program, the [DDMAC] has become aware of
> promotional material for Baycol (cerivastatin sodium) that is false, lacking in fair
> balance, or otherwise misleading.  Reference is made to a Sales Aid (QO 1068),
> submitted under cover of Form FDA 2253.  The dissemination of this material by Bayer
> Corporation (Bayer) and/or their agents, violates the Federal Food, Drug, and Cosmetic
> Act and its implementing regulations.  DDMAC requests that the use of the above
> referenced material and those containing the same or similar violations cease
> immediately.  Specifically, DDMAC has the following objections:
>
> . . .
>
> **Lack of Fair Balance**
>
> The presentation of risk information in this promotional piece lacks fair balance.
> Promotional materials may be lacking in fair balance, or otherwise misleading if they fail
> to present information relating to side effects and contraindications with a prominence
> and readability reasonably comparable to the presentation of efficacy information.  In the
> Sales Aid, Bayer uses several pages, various color patterns, charts, graphs, and the like, to
> provide emphasis for efficacy information.  However, the page seemingly devoted to the
> presentation of risk information titled, "Baycol offers a proven record of safety" contains
> mostly additional benefit (safety) claims for Baycol and very little risk information.  **In
> fact, Bayer presents the most important risk information (risk of myopathy,
> rhabdomyolysis, etc.) with much less emphasis, in the middle of the Sales Aid.**

3

Bayer should immediately cease this, and all other promotional materials for Baycol that contain the same or similar violations. . . .

(Emphasis added).

13.    The concerns that the FDA raised in October of 1999 with respect to the risks associated with Baycol proved to be well-founded.  On August 8, 2001, Bayer announced that it was voluntarily withdrawing Baycol from the market worldwide.  In conjunction therewith, Bayer issued the following warning to healthcare professionals:

> Rhabdomyolysis is a serious, potentially fatal, adverse effect of all statin drugs, including Baycol.  It can occur with statin monotherapy, though the risk appears to be increased significantly by concomitant use of gemfibrozil (Lopid).
>
> Our ongoing scrutiny of post-marketing reports of rhabdomyolysis, including fatalities, has revealed an increased reporting rate of rhabdomyolysis with Baycol relative to other statins, especially when gemfibrozil is co-prescribed.  These data also suggest an increased reporting rate of rhabdomyolysis at the 0.8 mg dose of Baycol alone.
>
> Bayer Corporation has already placed a contraindication in the Baycol product prescribing information sheet against co-prescription with gemfibrozil and issued letters to healthcare professionals warning against co-prescription of these two drugs.  Despite these and other actions, Bayer has continued to receive reports of rhabdomyolysis when gemfibrozil is prescribed as a co-medication.  Since the co-prescription of Baycol and gemfibrozil has continued despite communications by Bayer against this practice, the company has decided to take the following voluntary action to prevent further cases of rhabdomyolysis:
>
> **Effective immediately, Bayer has discontinued the marketing and distribution of all dosage strengths of Baycol.  Patients who are currently taking Baycol should have their Baycol discontinued and be switched to an alternative therapy.**
>
> Bayer is taking this action as part of an ongoing commitment to patients and their healthcare providers to ensure patient safety.

(Emphasis original).

14.    On August 8, 2001, Bayer issued the following statement to the press:

> • Starting in 1999, Bayer and the FDA have had a shared, ongoing concern over the practice of co-prescribing statins, including Baycol, with gemfibrozil to achieve more aggressive effects on lipid levels.

4

• Relative to other statins, the reporting rate of rhabdomyolysis with Baycol appears to be more pronounced when gemfibrozil is co-prescribed and also with high-dose therapy alone, especially when not used as directed. Rhabdomyolysis is a rare condition characterized by generalized muscle weakness.

• Recently, Bayer concluded that labeling agreed upon with the FDA, as well as communication campaigns conducted by the company during the past two years, have not been effective enough to prevent rhabdomyolysis through the reduction of co-prescribing.

• During recent discussions with the FDA, Bayer proposed the following actions:
  – Suspend marketing and distribution of Baycol
  – Conduct voluntary market withdrawal

• Naturally, we are disappointed to be removing Baycol from the market.

• Nonetheless, we believe this is the responsible course of action for patients and we remain committed to providing innovative and vital therapies to fight cardiovascular disease.

• We realize that this decision will affect many patients on Baycol therapy and we regret the difficulties resulting from this course of action.

15.     On August 9, 2001, *The Los Angeles Times* reported:

Baycol, one of a family of popular cholesterol-lowering drugs, was pulled from the U.S. market by its manufacturer Wednesday because of reports linking the pill to 31 deaths.

According to the manufacturer, Bayer Corp., all of the deaths involved rhabdomyolysis, a painful disorder that destroys muscle tissue.  The "vast majority" of those who died had developed kidney failure, a company executive said.

. . .

Dr. Beatrice Alexandra Golomb, a UC San Diego specialist who is conducting a five-year study of two other statin drugs under a grant from the National Institutes of Health, said awareness of rhabdomyolysis is low among both physicians and patients.

"The issue of rhabdomyolysis obviously requires concern because people die from it," Golomb said.  "Awareness needs to be enhanced. . . .  They're wonderful drugs – in the right people."

FDA records show that when he recommended approval of Baycol on May 29, 1997, an agency medical officer, Dr. David G. Orloff, cited rhabdomyolysis as one of four "potentially serious adverse effects" that concerned him.  However, no instances of

rhabdomyolysis were reported in Bayer's original clinical studies of the drug among 3,343 patients in the U.S., Japan and China.

According to Dr. Paul MacCarthy, Bayer's vice president of U.S. medical science, the company voluntarily approached the FDA in December 1999 with a proposal to warn against prescribing Baycol in combination with Lopid, a drug that lowers a fatty substance in the blood, because of reports of rhabdomyolysis. Bayer informed doctors and other health care providers of the safety-labeling change in a mass-mailed letter.

In an interview from company offices in West Haven, Conn., MacCarthy said that Bayer again approached the FDA in April of this year after fatal cases of rhabdomyolysis persisted. The labeling was changed, effective in June, to warn doctors not to place patients on the maximum dose of 0.8 milligram without first trying lower doses. An accompanying letter to health care providers warned anew against prescribing the drug with Lopid.

The withdrawal announced Wednesday came just two months after the latest safety-labeling change. MacCarthy said the company found that, despite the explicit warnings, doctors had continued to prescribe Baycol with Lopid and to start patients at the maximum dose.

"Since this involved fatalities, we determined that this [the withdrawal] is the appropriate thing to do in the interest of patient safety," MacCarthy said, adding that Bayer was "likely to close" ongoing clinical studies of Baycol, including experiments assessing the drug's effect on bone density and stroke prevention. The company is withdrawing the drug worldwide except for Japan, where neither the 0.8-milligram dose nor the other drug, Lopid, is used.

But the danger is not limited to the combined use of Baycol and Lopid. Nineteen of the 31 U.S. deaths cited by the FDA involved the use of Baycol without Lopid. And because side effects from prescription drugs are reported voluntarily in the U.S., epidemiologists believe the incidence of harm is consistently underreported.

## CLASS ACTION ALLEGATIONS

16.    Plaintiff brings this action as a class action for equitable, injunctive and other

relief pursuant to Federal Rules of Civil Procedure 23(b)(1) and (b)(2) on behalf of a class

consisting of all persons in the United States or United States Territories who have suffered

injury or may suffer injury as a result of using Baycol designed, manufactured, supplied,

distributed, sold, and/or placed in interstate commerce by Bayer.

6

17.     Plaintiff is a member of the class she seeks to represent.  Upon information and belief, plaintiff estimates that there are hundreds of thousands of individuals in the class, making joinder impracticable.

18.     There are questions of law and fact common to the class, including, but not limited to:

a.      Whether Baycol causes injury, either alone or in combination with gemfibrozil;

b.      Whether Baycol is a dangerously defective product;

c.      Whether Bayer is strictly liable for sales and distribution of a dangerously defective product;

d.      Whether Bayer negligently designed, manufactured, warned about, promoted, advertised, marketed, and/or distributed Baycol;

e.      Whether Bayer conducted appropriate testing of Baycol; and

f.      Whether the serious side effects, injuries and damages from the use of Baycol support the need for medical monitoring of persons who have used the drug.

19.     The named plaintiff asserts claims that are typical of the class because she used Baycol and has incurred or may incur injury and damages as a result thereof.

20.     The named plaintiff will adequately represent the interests of the members of the class and has retained counsel competent and experienced in complex class actions.

21.     Notice can be provided to the class by a combination of published notice and first class mail using techniques and forms of notice similar to those customarily used in drug-related product liability class actions.

22.     Plaintiff seeks, *inter alia*, injunctive relief in the form of a court-ordered and supervised medical monitoring program, funded by Bayer, to assist plaintiff and the class

7

members in the detection and treatment of injuries caused by Baycol.

23.     Class certification is appropriate pursuant to Fed.R.Civ.P. 23(b)(2) because Bayer

has acted, or refused to act, on grounds generally applicable to the class, making appropriate the

injunctive relief sought herein.

24.     Class certification is also appropriate pursuant to Fed.R.Civ.P. 23(b)(1) because,

*inter alia*, the prosecution of separate actions by individual members of the class would create a

risk of incompatible standards of conduct and inconsistent or varying adjudications.

**FIRST CLAIM FOR RELIEF**
**STRICT PRODUCT LIABILITY**
**(FAILURE TO WARN)**

25.     Plaintiff incorporates by reference all other paragraphs of this complaint as if set

forth fully herein.

26.     Bayer is the manufacturer and/or supplier of Baycol.

27.     The Baycol manufactured and/or supplied by Bayer was and is unaccompanied by

proper warnings regarding injuries associated with the use of Baycol, including, but not limited

to, rhabdomyolysis, and the severity and duration of such injuries.  The warnings provided by

Bayer did not accurately reflect the symptoms, scope or severity of such injuries.

28.     The Baycol manufactured and/or supplied by Bayer was defective due to

inadequate post-marketing warning or instruction because after Bayer knew or should have

known of the risk of rhabdomyolysis and/or other injury from the use of Baycol, Bayer failed to

provide adequate warnings to users or consumers of Baycol and continued to aggressively

promote Baycol.

29.     As the producing cause and legal result of the defective condition of Baycol as

manufactured and/or supplied by Bayer, plaintiff and the members of the class require reasonable

8

and necessary health care, attention and services and did and will incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and thereon alleges that plaintiff may in the future be required to obtain medical and/or hospital care, attention, and services in an amount which is presently unknown.

**SECOND CLAIM FOR RELIEF**
**STRICT PRODUCT LIABILITY**
**(DEFECTIVE DESIGN)**

30.     Plaintiff incorporates by reference all other paragraphs of this complaint as if set forth fully herein.

31.     Bayer is the manufacturer and/or supplier of Baycol.

32.     The Baycol manufactured and/or supplied by Bayer was defective in design or formulation in that, when it left the hands of Bayer, the foreseeable risks exceeded the benefits associated with the design or formulation of Baycol.

33.     Alternatively, the Baycol manufactured and/or supplied by Bayer was defective in design or formulation in that, when it left the hands of Bayer, it was unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other similar statin drugs.

34.     Bayer failed to perform adequate testing of Baycol in that adequate testing would have shown that Baycol, alone or in combination with gemfibrozil, caused serious injuries, including, but not limited to, rhabdomyolysis.

35.     As the producing cause and legal result of the defective condition of Baycol as manufactured and/or supplied by Bayer, plaintiff and the members of the class require reasonable and necessary health care, attention and services and did and will incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and thereon alleges that

9

plaintiff may in the future be required to obtain medical and/or hospital care, attention, and services in an amount which is presently unknown.

## THIRD CLAIM FOR RELIEF
## NEGLIGENCE

36.     Plaintiff incorporates by reference all other paragraphs of this complaint as if set forth fully herein.

37.     Bayer had a duty to exercise reasonable care in the manufacture, sale, and/or distribution of Baycol into the stream of interstate commerce, including a duty to ensure that Baycol did not cause users to suffer from unreasonable, dangerous side effects.

38.     Bayer failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, and/or distribution of Baycol into interstate commerce in that Bayer knew or should have known that Baycol created a high risk of unreasonable, dangerous side effects, including, but not limited to, rhabdomyolysis.

39.     Bayer was negligent in the design, manufacture, testing, advertising, warning about, marketing, sale, and/or distribution of Baycol in that Bayer failed to: (i) use due care in designing and manufacturing Baycol so as to avoid the aforementioned risks to class members who used Baycol; (ii) accompany Baycol with proper warnings regarding all possible adverse side effects associated with the use of Baycol and the severity and duration of such adverse effects; (iii) conduct adequate pre-clinical and clinical testing and post-marketing oversight to determine the safety of Baycol; (iv) provide adequate training and instruction to medical care providers for appropriate use of Baycol, alone or in combination with gemfibrozil; (v) warn, prior to actively encouraging the sale of Baycol, regarding the possibility of developing serious and potentially fatal side effects, including, but not limited to, rhabdomyolysis, and the need for

10

comprehensive, regular medical monitoring to ensure early discovery of such conditions; (vi)

adequately test and/or warn about the interaction of Baycol with gemfibrozil and the possible

adverse side effects caused by such interaction, including, but not limited to, rhabdomyolysis;

and (vii) otherwise use due care in designing, manufacturing, testing, warning about, advertising,

marketing, and/or distributing Baycol.

40.     Bayer knew or should have known that consumers such as plaintiff and the

members of the class would foreseeably suffer injury as a result of Bayer's failure to exercise due

care as described above.

41.     Due to Bayer's negligence, plaintiff and the members of the class require

reasonable and necessary health care, attention and services and did and will incur medical,

health, incidental and related expenses.  Plaintiff is informed and believes and thereon alleges

that plaintiff may in the future be required to obtain medical and/or hospital care, attention, and

services in an amount which is presently unknown.

## FOURTH CLAIM FOR RELIEF
## BREACH OF EXPRESS WARRANTY

42.     Plaintiff incorporates by reference all other paragraphs of this complaint as if set

forth fully herein.

43.     Bayer expressly warranted that Baycol was safe for use by patients.

44.     Baycol does not conform to Bayer's express representations because Baycol is not

safe and has unreasonably high levels of serious side effects, including life-threatening

rhabdomyolysis.

45.     As a direct and proximate result of the breach of the aforementioned warranties,

plaintiff and the members of the class require reasonable and necessary health care, attention and

11

services and did and will incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and thereon alleges that plaintiff may in the future be required to obtain medical and/or hospital care, attention, and services in an amount which is presently unknown.

**FIFTH CLAIM FOR RELIEF**
**BREACH OF IMPLIED WARRANTY**

46.     Plaintiff incorporates by reference all other paragraphs of this complaint as if set forth fully herein.

47.     At the time Bayer marketed, sold, and distributed Baycol, Bayer knew of the use for which Baycol was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

48.     Plaintiff and members of the class and their physicians reasonably relied upon the skill and judgment of Bayer as to whether Baycol was of merchantable quality and safe and fit for its intended use.

49.     Contrary to such implied warranty, Baycol was not of merchantable quality or safe or fit for its intended use because Baycol was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used.

50.     As a direct and proximate result of the breach of implied warranty, plaintiff and the members of the class require reasonable and necessary health care, attention and services and did and will incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and thereon alleges that plaintiff may in the future be required to obtain medical and/or hospital care, attention, and services in an amount which is presently unknown.

12

## SIXTH CLAIM FOR RELIEF
## MEDICAL MONITORING

51.    Plaintiff incorporates by reference all other paragraphs of this complaint as if set forth fully herein.

52.    As a direct and proximate result of Bayer's acts and omissions as set forth herein, plaintiff and the members of the class have been exposed to a hazardous substance and, as a result, suffer a significantly increased risk of contracting serious injury or latent disease, including rhabdomyolysis.  This increased risk makes periodic diagnostic and medical examinations reasonable and necessary.  Easily administered, cost-effective monitoring and testing procedures exist which make the early detection and treatment of such injuries or disease possible and beneficial.

53.    The recommended testing and monitoring procedures will be subject to expert testimony at the time of class certification and/or trial.

54.    The increased susceptibility to injuries and irreparable threat to the health of plaintiff and the members of the class resulting from their exposure to Baycol can only be mitigated or addressed by the creation of a comprehensive medical monitoring program that: (i) notifies individuals who used Baycol of the potential harm from Baycol; (ii) funds further studies of the long-term effects of Baycol use; (iii) funds research into possible cures for the detrimental effects of Baycol use; (iv) gathers and forwards to treating physicians information related to the diagnosis and treatment of injuries and diseases which may result from using Baycol; and (v) aids in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of Baycol users.

13

55.     Plaintiff and the members of the class have no adequate remedy at law in that monetary damages alone cannot compensate for the continuing nature of the harm to them, and a monitoring program which notifies them of possible injury and aids in their diagnosis and treatment can prevent the greater harms which may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur or worsen.

56.     The susceptibility of plaintiff and the members of the class to rhabdomyolysis is the sole result of their use of Baycol.  Early detection and diagnosis of this disease is clinically invaluable because it can prevent and/or significantly delay resulting pain, suffering and/or death.

57.     Without a court-approved and supervised medical monitoring program, Baycol users will not receive prompt medical care which could detect injury and disease and prolong their productive lives, increase prospects for improvement, and minimize disability.

WHEREFORE, plaintiff prays for relief as follows:

A.     Certifying this action as a class action on behalf of the proposed class and designating the named plaintiff as representative of the class and the named plaintiff's counsel as class counsel;

B.     For general damages in a sum in excess of the Jurisdictional minimum of this Court;

C.     Medical, incidental, hospital and service expenses according to proof;

D.     Creating a comprehensive court-supervised medical monitoring program as described herein;

E.     Awarding plaintiff and the members of the class attorneys' and experts' fees, costs, and expenses;

F.     Pre-judgment and post-judgment interest as provided by law;

G.     Full refund of all purchase costs Plaintiff and the members of the class expended in their purchases of Baycol;

14

H.    Awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


DATED: August 16, 2001

                                      **LAW OFFICE OF ALFRED G. YATES JR**

                              By:     _____
                                      Alfred G. Yates Jr, Esq.
                                      PA ID #17419
                                      Gerald L. Rutledge, Esq.
                                      PA ID #62027
                                      519 Allegheny Building
                                      429 Forbes Avenue
                                      Pittsburgh, Pennsylvania 15219
                                      (412) 391-5164

                                      **SCHIFFRIN & BARROWAY, LLP**
                                      Andrew L. Barroway
                                      Marc A. Topaz
                                      **Three Bala Plaza East**
                                      Suite 400
                                      Bala Cynwyd, PA 19004
                                      (610) 667-7706

                                      Paul J. Geller, Esq.
                                      **CAULEY GELLER BOWMAN & COATES, LLP**
                                      2225 Glades Road
                                      Suite 421A
                                      Boca Raton. FL 33431
                                      (561) 750-3000

                                      Brian Felgoise, Esq.
                                      **THE LAW OFFICES OF BRIAN FELGOISE**
                                      230 South Broad
                                      Street, Philadelphia, PA 19102
                                      (215) 735-6810

                                      *Counsel for Plaintiff*

15

JS 44
(REV. 3/99)

# CIVIL COVER SHEET

01  1574

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

DIANE ROSENTHAL, on behalf of herself and all others similarly situated,

## DEFENDANTS

BAYER CORPORATION, A Division Of BAYER AG

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Palm Beach County, Florida
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _Alleg Co_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND COLLECTION CASES, USE THE LCOATION OF THE
TRACT OF LAND INOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, and TELEPHONE NUMBER)

Alfred G. Yates Jr, Esquire          Phone: 412/391-5164
LAW OFFICE OF ALFRED G. YATES JR
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ U.S. Government
   Plaintiff

☐ Federal Question
   (U.S. Government Not a Party)

☐ U.S. Government
   Defendant

XXX Diversity
   (Indicate Citizenship of Parites
   in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | X4 |
| Citizen of Another State | X2 | ☐2 | Incorporated and Principal Place Of Business In This State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT

☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

### TORTS

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
X 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury— Med. Malpractice
☐ 365 Personal Injury — Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY

☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR

☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY

☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS

☐ 820 Copyrights
☐ 830 Patent
☐ 830 Patent

### SOCIAL SECURITY

☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS

☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUES

☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 710 Fair Labor Standards G 861 HIA (1395ff)
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

### REAL PROPERTY

☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### CIVIL RIGHTS

☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

### PRISONER PETITIONS

☐ 510 Motions to Vacate Sentence
**HABEAS CORPUS:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Othe
☐ 550 Civil Rights
☐ 555 Prison Condition

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

XXX 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgement

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. §1332

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
XXX UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND  XXX YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____  DOCKET NUMBERS _____

DATE  August 16, 2001

SIGNATURE OF ATTORNEY OF RECORD  ALFRED G. YATES JR (PA I.D. #17419)

## FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44A

**REVISED OCTOBER, 1993**

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA
THIS CASE DESIGNATION SHEET MUST BE COMPLETED

**PART A**
This case belongs on the (_____ Erie _____ Johnstown __XXX__ Pittsburgh) calendar.

1. **ERIE CALENDAR** - If cause of action arose in the counties of Crawford, Elk, Erie, Forest, McKean, Venango or Warren, OR <u>any</u> plaintiff or defendant resides in one of said counties.
2. **JOHNSTOWN CALENDAR** - If cause of action arose in the counties of Bedford, Blair, Cambria, Clearfiled or Somerset, OR <u>any</u> plaintiff or defendant resides in one of said counties.
3. Complete is on **ERIE CALENDAR** I certify that the cause of action arose in _____ County and that the _____ resides in _____ County.
4. Complete is on **JOHNSTOWN CALENDAR** I certify that the casue of action arose in _____ County and that the _____ resides in _____ County.

**PART B (You are to check ONE of the following)**
1. _____ This case is related to Numbers_____ Judge _____.
2. __XX__ This case is not related to a pending or terminated case.

**DEFINITIONS OF RELATED CASES:**
**CIVIL:** Civil case are deemed related when a case filed relates to property included in another suit, or involves the same issues of fact or it grow out of the same transactions as another suit, or involves the validity or infringement of a patent involved in another suit
**EMINENT DOMAIN:** Cases in contiguous closely located groups and in common ownership groups which will lend themselves to consolidation for trial shall be deemed related.
**HABEAS CORPUS & CIVIL RIGHTS:** All habeas corpus petitions filed by the same individual shall be deemed related. All pro se Civil Rights actions by the same individual shall be deemed related.

**PART C**
1. CIVIL CATEGORY (Place x in only applicable category).
   1. (   )   Antitrust and Securities Act Cases
   2. (   )   Labor-Management Relations
   3. (   )   Habeas Corpus
   4. (   )   Civil Rights
   5. (   )   Patent, Copyright, and Trademark
   6. (   )   Eminent Domain
   7. (   )   All other federal question cases
   8. (XX)   All personal and property damage cases, including maritime, FELA, Jones Act, Motor vehicle, products liability, assault, defamation, malicious prosecution, and false arrest.
   9. (   )   Insurance indemnity, contract, and other diversity cases.
   10. (   )  Government Collection Cases (shall include HEW Student Loans (Education), VA Overpayment Overpayment of Social Security, Enlistment Overpayment (Army, Nay, etc.), HUD Loans, GAO Loans (Misc. Types), Mortgage Foreclosures, S.B.A. Loans, Civil Penalties and Coal Mine Penalty and Reclamation Fees.)

I certify that to the best of my knowledge the entries on this Case Designation Sheet are true and correct.

Date: __August 16, 2001__

ATTORNEY AT LAW
Alfred G. Yates Jr, Esq. (PA ID # 17419)

**NOTE: ALL SECTIONS OF BOTH SIDES MUST BE COMPLETED BEFORE CASE CAN BE PROCESSED.**

3

BRUCE H. NAGEL (BHN 6765)
NAGEL RICE DREIFUSS & MAZIE
301 SOUTH LIVINGSTON AVENUE
SUITE 201
LIVINGSTON, NEW JERSEY 07039
(973) 535-3100
Attorneys for Plaintiff

FILED
AUG 15 2001
AT 8:30
WILLIAM T. WALSH
CLERK

RECEIVED
WALSH, CLERK
AUG 15 A 11: 55
UNITED STATES
DISTRICT COURT

UNITED STATES DISTRICT COURT
For the
DISTRICT OF NEW JERSEY

---------------------------------
                                    :
SALVATORE GALASSO, Individually:
and on behalf of all others     :         CIVIL ACTION NO.
similarly situated,             :
                                :         01 cv 3885 (KSH)
            Plaintiffs,         :
                                :
v.                              :         CLASS ACTION COMPLAINT
                                :         AND JURY DEMAND
BAYER CORPORATION AND BAYER     :
A.G., BAYER, INC., and          :
GLAXOSMITHKLINE PLC,            :
                                :
            Defendants.         :
                                :
_____

    Plaintiff, on behalf of himself and as the representative

of a class of persons similarly situated, by way of complaint

against defendants says as follows:

### JURISDICTION AND VENUE

    1.    This court has jurisdiction over this matter pursuant

to 28 U.S.C. §1332, as the amount in controversy for each claim

exceeds the sum or value of $75,000, exclusive of interest and

costs, and there is complete diversity of citizenship between

plaintiff and all defendants.

2.    The claims alleged herein arose within the District of New Jersey.    Accordingly, pursuant to 28 U.S.C. §1391(a), this Court is the proper venue for the filing of the present action.

### THE PARTIES

3.    Plaintiff is a resident of Wayne, New Jersey.

4.    Defendant, Bayer Corporation, (hereinafter "Bayer") is an Indiana Corporation with its principal place of business in Pennsylvania. Bayer is a subsidiary of its German parent Bayer A.G. Bayer and/or Bayer A.G. designed, developed, manufactured, tested, distributed, marketed and/or sold the drugs Baycol and Lipobay. Bayer conducts business in the State of New Jersey.

5.    Defendant, GlaxoSmithKline PLC ("GlaxoSmithKline") is an English Corporation with its principal place of business in the United States in Philadelphia, Pennsylvania. GlaxoSmithKline is the successor to SmithKline-Beecham.   In or about 1997, GlaxoSmithKline's predecessor SmithKline-Beecham entered into an agreement with Bayer to distribute, market and/or sell the drugs Baycol and Lipobay. GlaxoSmithKline conducts business in the State of New Jersey.

### FACTS COMMON TO ALL COUNTS

### COUNT I - CLASS ACTION ALLEGATIONS

6.    Plaintiff brings this action pursuant to Fed.R.Civ.P. 23 on behalf of a class consisting of: all persons in the United States who have taken Baycol and/or Lipobay ("the products") and have or will suffer injury as the result of the use of Baycol and/or Lipobay.

2

7.    The members of the class are so numerous that joinder is impracticable. Upon information and belief, millions of prescriptions for Baycol or Lipobay were written since the drugs were marketed in 1997. While the exact number and identities of class members are unknown at this time, plaintiff is informed, and on the basis of that information believes, that the class consists of thousands of persons.

8.    The claims of the plaintiff are typical of the claims of the class members because the plaintiff has taken Baycol or Lipobay and was injured as a result.

9.    Plaintiff will fairly and adequately represent and protect the interests of the members of the class. Plaintiff's interests are coincident with, and not antagonistic to, those of the other class members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including complex tort and products liability claims.

10.   The claims of the class involve common issues of law and fact, which predominate over any questions affecting only individual members. The common questions of law and fact include, but are not limited to, the following:

a.    Whether Baycol or Lipobay was not reasonably fit, suitable or safe for their intended purpose;

b.    Whether defendants conducted adequate, responsible testing to determine the drug's safety prior to selling this

3

drug, whether they conducted adequate, responsible post-marketing surveillance, and whether they accurately reported the fact or results of testing or surveillance;

c.    When defendants learned of adverse reactions to the drug, singly or in combination with other medication(s), and what they did thereafter;

d.    Whether defendants continued to market and sell the drug after they knew or should have known of the adverse reactions and injuries and risks associated with their use, singly or in combination with other medication(s);

e.    Whether defendants failed to give adequate and timely warning of the dangers of Baycol or Lipobay;

f.    Whether defendants concealed or failed to disclose material facts about the safety of Baycol or Lipobay;

g.    Whether Baycol or Lipobay either singly or in combination with other medication(s) cause adverse medical conditions, and what those adverse medical conditions are; and

h.    Whether class members require medical surveillance.

11. A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since joinder of all members of the class is impracticable. Common issues central to each class member's claim can be determined at one time for all class members in one class action.   Even if any individual or group of class members could

4

afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties and to the court system of resolving the controversies engendered by defendants' products. By contrast, the class action device presents fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court.

12.   Plaintiff has been prescribed and has taken Baycol as a means of lowering his cholesterol.

13.   Baycol or Lipobay were approved by the Food and Drug Administration ("FDA") as a cholesterol drug. Baycol and Lipobay were withdrawn from the market on August 8, 2001.

14.   Defendants are in the business of designing, developing, testing, manufacturing, marketing, distributing and selling Baycol and Lipobay.

15.   Defendants' products are not reasonably fit, suitable or safe for their intended purpose because they failed to contain adequate warnings or instructions and/or were designed in a defective manner.

16.   Defendants' products are not reasonably suitable or safe for their intended use because they may cause or substantially increase the user's risk of myopathy and related medical problems.

17. Defendants failed to timely and adequately warn plaintiff and members of the class of the dangers and adverse health risks of their products.

18. As a direct and proximate result of defendants' designing, developing, testing, manufacturing, marketing, distribution and selling of the products, as described herein, plaintiff and the members of the class were caused to suffer substantial and severe harm, injury and damage.

### COUNT TWO

19. Plaintiff realleges paragraphs 1 through 18 in the First Count of the complaint as if fully set forth herein.

20. As a direct and proximate result of defendants' acts, users of the products were directly and significantly exposed to serious health risks.

21. As a proximate result of exposure, users of these products suffer a significant increased health risk of myopathy and related health problems and risks. The injuries and this irreparable threat to their health can only be mitigated by the creation of a medical surveillance fund to provide for a medical surveillance program, including: notifying users of the products of the potential medical harm from use of these products; funding a study of the long-term effects of defendants' products; gathering and forwarding to treating physicians information relating to the diagnosis and treatment

6

of injuries which may result from the products; aiding in the early diagnosis and treatment of resulting injuries; and providing funding for diagnosis and medical treatment of valvular heart disease. Medical surveillance would improve prospects for cure, treatment, prolongation of life and minimization of pain and disability.

22. Monetary damages alone cannot compensate for the nature of the harm and only a surveillance program that notifies the recipients of, and aids in correcting, the problems can prevent the greater harm which may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur or become worse.

23. Without a medical surveillance program, plaintiff and members of the class might not receive prompt medical care which could increase prospects for improvement or cure, reduce the severity of injury and minimize disability, and prolong life.

WHEREFORE, plaintiff, on behalf of himself and all those similarly situated requests judgment against defendants as follows:

1. For compensatory damages, including prejudgment interest;

2. For a refund of the costs of the product(s);

3.     For the establishment and funding of a medical surveillance program, at defendants' expense;

4.     For costs of suit and attorneys' fees; and

5.     For such other relief that this Court deems just and equitable.

### JURY DEMAND

Plaintiff demands trial by jury for himself and the class on all issues so triable.

By: _____
BRUCE H. NAGEL (BHN 6765)

Dated:  August 15, 2001

Of counsel:

KOHN, SWIFT & GRAF, P.C.
1101 Market Street
Suite 2400
Philadelphia, PA    19107
(215) 238-1700

FAGAN & ASSOCIATES
301 South Livingston Avenue
Second Floor
Livingston, NJ   07039
(973) 535-3100

8

**4**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RONALD COHEN, MARJORIE FREDEN, )
PREM GUPTA, LARRY JULIEN, )
WILLIAM KUTA, BRENDA MATZNER, )
KALID PERVAIZ and ADRIAN )
ZUCKERMAN, individually and on )
behalf of all others similarly situated, )
                                          )
        Plaintiffs,                       )
                                          )
    v.                                    )
                                          )
BAYER AG, a Foreign Corporation, )
BAYER CORPORATION, a Subsidiary )
of BAYER AG, and BAYER )
PHARMACEUTICAL DIVISION, a )
Division of BAYER CORPORATION, )
                                          )
        Defendants.                       )

JUDGE ANDERSEN

**01C 6257**

No.
    MAGISTRATE JUDGE SCHENKIER
**Jury Demanded**

**DOCKETED**
AUG 1 6 2001

FILED-EO4
01 AUG 15 AM 9: 07
CLERK
U.S. DISTRICT COURT

✓

## CLASS ACTION COMPLAINT

NOW COME the Plaintiffs, RONALD COHEN, MARJORIE FREDEN, PREM

GUPTA, LARRY JULIEN, WILLIAM KUTA, BRENDA MATZNER, KALID PERVAIZ

and ADRIAN ZUCKERMAN, individually and on behalf of all others similarly

situated, by and through their attorneys, KENNETH B. MOLL & ASSOCIATES,

LTD., and complaining of the Defendants, BAYER AG, a Foreign Corporation,

BAYER CORPORATION, a Subsidiary of BAYER AG, and BAYER

PHARMACEUTICAL DIVISION, a Division of BAYER CORPORATION, and state

as follows:

KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

## I.  INTRODUCTION

1.      Plaintiffs bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on their own behalf and as representatives of a class of persons consisting of all persons in the World who were prescribed the drug Baycol (Lipobay, outside the United States), or their estates, administrators or other legal representatives, heirs or beneficiaries.

2.      Plaintiffs bring this action individually and as a class representatives to recover damages for deaths and personal injuries, restitution, refunds, and/or for equitable, injunctive and declaratory relief against defendants BAYER AG, a Foreign Corporation, BAYER CORPORATION, a Subsidiary of BAYER AG, and BAYER PHARMACEUTICAL DIVISION, a Division of BAYER CORPORATION, (collectively, "Bayer" or "Defendants"), which tested, marketed, distributed, promoted and sold Baycol.

3.      Baycol has been linked to over 52 deaths worldwide, including cases of fatal rhabdomyolysis.

4.      Rhabdomyolysis is a condition that results in muscle cell breakdown and release of the contents of muscle cells into the bloodstream.

5.      The primary goals of this class action are to (1) inform the public that consumers of Baycol are at an increased risk of rhabdomyolysis, (2) establish a medical monitoring fund so that every consumer may be tested and treated for the adverse effects of Baycol, (3) reimburse monies paid for the recalled product and (4) provide compensation to all victims for personal injuries and death.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL:  312.558.6444
FAX:  312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

2

## II.  PARTIES

### A.  PLAINTIFFS

6.      Plaintiff, RONALD COHEN, is a resident of the State of Illinois residing in Northbrook, Illinois.  Plaintiff was prescribed, purchased and used Baycol. Plaintiff was prescribed and ingested .4mg of Baycol each day since on or about October, 1999.  Plaintiff has suffered personal injuries as a proximate result of his ingestion of Baycol.

7.      Plaintiff, MARJORIE FREDEN, is a resident of the State of Minnesota residing in Pequot, Minnesota.  Plaintiff was prescribed, purchased and used Baycol.  Plaintiff was prescribed and has taken .8mg of Baycol each night since January, 2001.  Plaintiff has not been diagnosed as having rhabdomyolysis at this time, but may be at some increased risk for developing such condition as a proximate result of her ingestion of Baycol.

8.      Plaintiff, PREM GUPTA, is a resident of the State of North Carolina residing in Wilmington, North Carolina.  Plaintiff was prescribed, purchased and used Baycol.  Plaintiff began taking .4mg of Baycol each day from January, 2001 through August 10, 2001.   Plaintiff has not been diagnosed as having rhabdomyolysis at this time, but may be at some increased risk for developing such condition as a proximate result of her ingestion of Baycol.

9.      Plaintiff, LARRY JULIEN, is a resident of the State of Texas residing in Garland, Texas.  Plaintiff was prescribed, purchased and used Baycol.  Plaintiff began taking .4mg of Baycol each day from February, 2001 through August, 2001.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

3

Plaintiff has not been diagnosed as having rhabdomyolysis at this time, but may be at some increased risk for developing such condition as a proximate result of his ingestion of Baycol.

10.    Plaintiff, WILLIAM KUTA, is a resident of the State of Illinois residing in Davis, Illinois.  Plaintiff was prescribed, purchased and used Baycol.  Plaintiff began taking .4mg of Baycol each day from February, 2000 through May, 2001 when the dosage was increased to .8mg of Baycol each day.  Plaintiff has suffered personal injuries as a proximate result of his ingestion of Baycol.

11.    Plaintiff, BRENDA MATZNER, is a resident of the State of Florida residing in Ft. Lauderdale, Florida.  Plaintiff was prescribed, purchased and used Baycol. Plaintiff began taking .4mg of Baycol each day from October, 1999 through October, 2000 when the dosage was increased to .8mg.  Plaintiff discontinued using Baycol in late October, 2000 when she was hospitalized for five days suffering from kidney failure.

12.    Plaintiff, KALID PERVAIZ, is a resident of the State of California residing in Northridge, California.  Plaintiff was prescribed, purchased and used Baycol.  Plaintiff began taking .4mg of Baycol each day from February, 2001 through August, 2001.  Plaintiff has not been diagnosed as having rhabdomyolysis at this time, but may be at some increased risk for developing such condition as a proximate result of his ingestion of Baycol.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

13.    Plaintiff, ADRIAN ZUCKERMAN, is a resident of the State of New York residing in Poughkeepsie, New York.  Plaintiff was prescribed, purchased and used

4

Baycol. Plaintiff began taking .4mg of Baycol each day from August, 2000 through August, 2001. Plaintiff has not been diagnosed as having rhabdomyolysis at this time, but may be at some increased risk for developing such condition as a proximate result of his ingestion of Baycol.

## B. DEFENDANTS

14.    Defendant, BAYER AG, is a foreign corporation headquartered and with its principal place of business in Leverkusen, Germany.    Bayer AG manufactures, markets and distributes Baycol throughout the world, including Illinois.

15.    Defendant, BAYER CORPORATION, is an Indiana corporation and a wholly owned subsidiary of Bayer AG. The corporate headquarters for Bayer Corporation is Pittsburgh, Pennsylvania. Bayer Corporation manufactures, markets and distributes Baycol throughout the world, including Illinois.

16.    Defendant, BAYER PHARMACEUTICAL DIVISION, is a division of Bayer Corporation. The corporate headquarters for Bayer Pharmaceutical Division is West Haven, Connecticut. Bayer Pharmaceutical Division manufactures, markets and distributes Baycol throughout the world, including Illinois.

17.    At all times relevant hereto, Defendants, BAYER, were engaged in the business of marketing, distributing, promoting, testing, labeling and/or selling the pharmaceutical Baycol.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

5

### III.  JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceed $75,000 exclusive of interest and costs, and because this is an action by individuals and representative Plaintiffs who are citizens of different states from the Defendant.

19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391.  Plaintiff purchased Baycol in the Northern District of Illinois.  Defendants advertised in this District and made material omissions and misrepresentations and breaches of warranties in this District.

### IV.  FACTUAL BACKGROUND

20.    Baycol, also known as Cerivastatin, is a medication commonly prescribed to patients to aid in lowering cholesterol and triglycerides.  Baycol lowers cholesterol levels by blocking a specific enzyme in the body that is involved in the synthesis of cholesterol.

21.    Baycol is a member of a class of cholesterol lowering drugs referred to as "statins."  According to the FDA, while all statins have been associated with reports of rhabdomyolysis, the number of cases of fatal rhabdomyolysis are significantly higher in association with the use of Baycol.  A majority of the reported fatal cases were high dosage cases involving elderly patients, particularly when Baycol was used in combination with a lipid lowering drug called gemfibrozil (Lopid and its generic).



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

6

22.    Rhabdomyolysis is a condition that results in muscle cell breakdown and release of the contents of muscle cells into the bloodstream.  Symptoms of rhabdomyolysis include muscle pain, weakness, tenderness, malaise, fever, dark urine, nausea and vomiting.  In severe cases, patients develop potentially fatal kidney failure.

23.    The FDA approved Baycol for use in the United States in 1997.

24.    An estimated 6,000,000 people worldwide, including 700,000 Americans, use Baycol everyday.  Baycol is sold outside the United States as Lipobay.

25.    Last year, sales of Baycol exceeded $550 Million and BAYER predicted that this year's sales would top $900 Million.

26.    On August 8, 2001, the United States Food and Drug Association announced that Bayer voluntarily withdrew Baycol from the U.S. market in light of 31 reported cases of deaths due to severe rhabdomyolysis in association with the use of Baycol.  In addition to the 31 American deaths, the FDA has reports of at least 9 Baycol related deaths in foreign countries.

27.    On August 9, 2001, Noel Wathion, head of the European Medicines Evaluation Agency ("EMEA"), stated that 480 reports of rhabdomyolysis had been received globally from patients taking Baycol.  In light of these reported cases, EMEA began to investigate the side effects of Baycol in July, 2001.

28.    Health Canada has received reports of 32 cases of serious associated with use of Baycol, including 10 cases of kidney failure and one death.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

7

29.     On July 16, 2001, France's drug control agency, AFSSAPS, issued a warning of problems related to Baycol after learning that there were three reported deaths in Spain.

30.     It has been reported that at least 52 deaths worldwide have been associated with Baycol.

### V.  CLASS ACTION ALLEGATIONS

31.     Plaintiffs move this Court to enter an order certifying this cause as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

### A. PROPOSED CLASS

32.     Plaintiffs seek certification of the following Class:

> All persons, their estates, administrators or other legal representatives, throughout the world who were prescribed, purchased, used and/or ingested the drug Baycol, manufactured, distributed and/or sold by Defendants.

33.     Plaintiffs seek certification of the following Subclasses:

(A)     All persons, their estates, administrators or other legal representatives, throughout the world who suffered personal injuries ("Personal injury subclass");

(B)     All persons, or other legal representatives, throughout the world who seek treatment and reimbursement under a medical monitoring program ("Medical monitoring subclass");

(C)     All persons, their estates, administrators or other legal representatives, heirs or beneficiaries, throughout the world who seek reimbursement for the purchase price of Baycol ("Reimbursement subclass").



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

8

## B. CLASS ACTION LAW

34.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)(1)-(4), and the predominance and superiority requirements of Rule 23(b)(3) and the requirements of Rule 23(b)(2).

35.    Federal Rule of Civil Procedure 23(a) establishes four threshold requirements for class certification:

a.    The class is so numerous that joinder of all members is impracticable;

b.    there are questions of law or fact common to the class;

c.    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

d.    the representative parties will fairly and adequately protect the interest of the class. FED.R.CIV.P. 23(a).

36.    Class certification under Rule 23(b)(2) requires one finding: that the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. FED.R.CIV.P. 23(b)(2).

37.    Class certification under Rule 23(b)(3) requires two findings: that common questions of law and fact predominate and that a class action is superior to other forms available for fair and efficient adjudication. FED.R.CIV.P. 23(b)(3).



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

9

## C. THE BAYCOL CLASS MEETS THE REQUIREMENTS
## FOR CLASS CERTIFICATION

38.     The Plaintiff Class satisfies the numerosity standards.  The Class is believed to number in the hundreds of thousands of persons.  As a result, joinder of all Class members in a single action is impracticable Class members may be informed of the pendency of this Class Action by published and broadcast notice.

39.     There are questions of fact and law common to the Class which predominate over any questions affecting only individual members.  The questions of law and fact common to the Class arising from Defendants' actions include, without limitation, the following:

a.     whether Baycol was and is toxic and unsafe;

b.     whether persons who took Baycol are at increased risk of developing serious injuries, including, but not limited to rhabdomyolysis;

c.     whether there exist monitoring and testing procedures which make early detection and treatment of rhabdomyolysis caused by exposure to Baycol possible and beneficial;

d.     whether medical monitoring is appropriate;

e.     whether, in marketing and selling Baycol, Defendants failed to disclose the dangers and risks to the health of persons ingesting the drug;

f.     whether defendants failed to warn adequately of the adverse effects of Baycol;

g.     whether defendants falsely and fraudulently misrepresented in their advertisements, promotional materials and other materials, among other things, the safety, potential side effects and convenience of Baycol;



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

10

h.    whether defendants designed and manufactured a drug that was dangerously defective because its use leads to serious adverse health effects including, but not limited to, rhabdomyolysis;

i.    whether defendants knew or should have known that the use of Baycol leads to serious adverse health effects;

j.    whether defendants adequately tested Baycol prior to distribution and sales in the market place;

k.    whether defendants continued to manufacture, market, distribute, and sell Baycol notwithstanding their knowledge of the drug's dangerous nature;

l.    whether the warnings and information defendants provided with Baycol were adequate in warning of the potential hazards resulting from its use;

m.    whether defendants knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of Baycol from government regulators, the medical community and/or the consuming public;

n.    whether defendants' actions support a cause of action for medical monitoring;

o.    whether defendants' conduct constituted an unfair, deceptive and/or unconscionable practice within the meaning of all states' Consumer Protection Statutes [1];

---

[1]    Ala. Code 8-19-5; Alaska Stat. 45.50.4711; Ariz. Rev. Stat. Ann. 44-1522.A; Ark. Code Ann. 4-88-107(a)(1); Cal. Civ. Code 1770; Colo. Rev. Stat. 6-1-105(1); Conn. Gen. Stat. 42-1 0b(a); Del. Code Ann. Tit. 6,2513(a); D.C. Code Ann. 28-3904; Fla. Stat. Ann. 501.204(1); Ga. Code Ann. 10-1-393(a); Haw. Rev. Stat. 480-2(a); Idaho Code 48-603; 815 ILCS 505/2; Ind. Code 24-5-0.5.3(a); Ind. Code 24-5-0.5-4; Iowa Code 714.16.2(a); Kan. Stat. Ann. 50-626(b); Ky. Rev. Stat. Ann. 367.170(1); La. Rev. Stat. Ann. 51:1405; Me. Rev. Stat. Ann. Tit. 5 207; Md. Com. Law Code Ann. 13-301; Mass. Gen. L. Ch. 93A, 2; Mich. Stat. Ann. 19.418(3); Minn. Stat. 325D.44; Miss. Code Ann. 75-24-5; Mo-Rev. Stat. 407.020.1; Mont. Code Ann. 30-14-103; Neb. Rev. Stat. 59-1602; Nev. Rev. Stat. 598.410; N.J. Rev. Stat. 56:8-2; N.H. Rev. Stat. Ann. 358-A: 2; N.M. Stat. Ann. 57-12-3; N.Y. Gen. Bus. Law 349(a); N.D. Cent. Code 51-15-02; N.C. Gen. Stat. 57-1.1; Ohio Rev. Code Ann. 1345.02(a); Okla. Stat. Tit. 15,753; Ore. Rev. Stat. 646.608(1); Pa. Stat. Ann. Tit. 73,201-2(4); R.I.Gen. Laws 16-13.1-1(c); S.C. Code Ann. 39-5-20; S.D. Codified Laws Ann. 37-26-6; Term. Code Ann.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

11

p.   whether defendants' conduct constituted the knowing or intentional concealment, suppression, or omission of material information intended to be relied upon by others in connection with the sale of Baycol within the meaning of all states' Consumer Protection Statutes; and

q.   whether the Class has been injured by virtue of defendants' violations of all states' Consumer Protection Statutes.

40.   The questions set forth above predominate over any questions affecting only individual persons, and a Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the controversy.

41.   A Class Action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests.

42.   The Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the members of the Class they seek to represent. The interests of the members of the Class will be fairly and adequately protected by the Plaintiffs and their undersigned counsel.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

47-18-104; Tex. Bus. & Com. Code Ann. 1746(a); Utah Code Ann. 13-11-4; Vt. Stat. Ann. Tit. 9, 2453; Va. Code Ann. 59.1-200; Wash. Rev. Code 19.86.020; W. Va. Code 46A-6-104; Wis. Stats. Ann. 100.18(1); Wyo. Stat. 40-12-105(a).

43. Plaintiffs seek a refund of and restitution for monies paid as a result of their purchase of Baycol, as well as all other ascertainable economic loss that occurred as a result of Defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of Baycol. Plaintiffs therefore seek to disgorge Defendants of the monies inappropriately acquired by them as a result of their sale of Baycol.

44. Plaintiffs, on behalf of themselves and the Class, seek equitable relief in the form of a Court-ordered and supervised medical monitoring program, funded by Defendants, to assist Plaintiffs and the Class members in the early detection and treatment of illnesses caused by Baycol. Such a program would include the following:

a. A method to notify individuals who ingested Baycol of the increased risk of harm that they have suffered as a result of the ingestion of Baycol;

b. Provision for the accumulation and analysis of relevant medical and demographic information from Class members including, but not limited to, the results of all appropriate diagnostic tests performed on Class members as part of a medical research and education fund;

c. Provision for the creation, maintenance and operation of a medical registry in which relevant demographic and medical information concerning all Class members is gathered, maintained and analyzed;

d. Provision for medical research concerning the incidence, prevalence, natural course and history, diagnosis and treatment of Baycol induced personal injuries; and

e. Publication of, and other dissemination of, all such information to members of the Class and their physicians.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

13

45.     Class certification with respect to plaintiffs' claims for relief through creation of a Court-supervised fund to provide medical research, education, monitoring and screening is appropriate because defendants have acted, or refused to act, on grounds generally applicable to the Class, making appropriate preliminary and final injunctive and declaratory relief consisting of medical monitoring and notice with respect to plaintiffs and the Class members.

46.     Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.   It would be impracticable and undesirable for each member of the Class who has suffered harm to bring a separate action.   In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

47.     Notice can be provided to class members by using techniques and forms of notice similar to those customarily used in other drug-related products liability cases and complex class actions.

## VI.  CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY PURSUANT TO
### §402A OF THE RESTATEMENT (SECOND) OF TORTS

48.     Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL:  312.558.6444
FAX:  312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

49.     The Defendants were engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing BAYCOL in interstate commerce, which they sold and distributed throughout the world, including the State of Illinois, to Plaintiffs and Class members.

50.     The Plaintiffs, were using BAYCOL in a manner for which it was intended or in a reasonably foreseeable manner.

51.     BAYCOL was expected to and did reach the Plaintiffs and Class members without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, warned, and otherwise distributed.

52.     The Plaintiffs and the members of the Class were not aware of, and reasonably could not have discovered, the dangerous nature of BAYCOL.

53.     The Defendants' BAYCOL caused increased risks of rhabdomyolysis upon consumption, and therefore constitute a product unreasonably dangerous for normal use due to their defective design, defective manufacture, and the Defendants' misrepresentations and inadequate facts disclosed to the Plaintiffs and the members of the Class.

54.     As a direct and proximate result of Defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing BAYCOL in interstate commerce, Plaintiffs and class members are at an increased risk of developing



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

rhabdomyolysis and have suffered compensatory and punitive damages in an amount to be proven at trial.

55.     The Defendants, therefore, are strictly liable to the Plaintiffs. Additionally, Defendants' conduct was so outrageous as to constitute ill will, bad motive and reckless indifference to the interests of the consumers. The Plaintiffs, therefore, are entitled to punitive damages. All of the Defendants are liable to Plaintiffs and to members of the Class jointly and severally for all general, special, and equitable relief to which the Plaintiffs and the Class are entitled by law.

**COUNT II**
**NEGLIGENCE**

56.     Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

57.     It was the duty of the Defendants to use reasonable care in the manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing BAYCOL.

58.     Contrary to their duty, the Defendants were guilty of one or more of the following careless and negligent acts and/or omissions:

    a.     Failed to adequately and properly test and inspect BAYCOL so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

    b.     Failed to utilize and/or implement a reasonably safe design in the manufacture of BAYCOL;



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

16

c.     Failed to manufacture BAYCOL in a reasonably safe condition for which it was intended;

d.     Failed to adequately and properly warn Plaintiffs and Class members purchasing BAYCOL of the risks of complications when used in a manner for which it was intended;

e.     Failed to adequately and properly warn Plaintiffs and Class members purchasing BAYCOL of the risks of diseases when used in a manner for which it was intended;

f.     Failed to adequately and properly label BAYCOL so as to warn the Plaintiffs and Class members of the risks of complications;

g.     Failed to adequately and properly label BAYCOL so as to warn the Plaintiffs and Class members of the risks of rhabdomyolysis;

h.     Manufactured BAYCOL which constituted a hazard to health;

i.     Manufactured BAYCOL which caused adverse side effects; and

j.     Were otherwise careless and negligent.

59.     As a direct and proximate result of Defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing BAYCOL in interstate commerce, Plaintiffs and class members are at an increased risk of developing rhabdomyolysis and have suffered compensatory and punitive damages in an amount to be proven at trial.

**COUNT III**
**NEGLIGENCE PER SE**

60.     Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵀᴴ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

17

61.    Defendants had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of Baycol.

62.    Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq., related amendments and codes and federal regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, and other applicable laws, statutes and regulations.

63.    Plaintiffs, as purchasers and consumers of Baycol, are within the class of persons the statutes and regulations described above are designed to protect and Plaintiffs' injuries are the type of harm these statutes are designed to prevent.

64.    Defendants' acts constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331 and constitutes a breach of duty subjecting Defendants to civil liability for all damages arising therefrom, under theories of negligence per se.

65.    Defendants failed to meet the standard of care set by the following statutes and regulations, which were intended for benefit of individuals such as Plaintiffs, making Defendants negligent per se:

(a)    The labeling lacked adequate information on the use of the drug Baycol [21 C.F.R. Section 201.56(a) and (d);

(b)    The labeling failed to provide adequate warnings of severe and disabling medical conditions including, without limitations, muscle pain, weakness, tenderness, malaise, fever, dark urine, nausea, vomiting, fatal kidney failure, rhabdomyolysis and other adverse



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

18

medical conditions as soon as there was reasonable evidence of their association with the drug [21 C.F.R. 201.57(e)];

(c)    There was inadequate information for patients for the safe and effective use of Defendants' drug [21 C.F.R. 201.57(f)(2)];

(d)    There was inadequate information regarding special care to be exercised by the doctor for safe and effective use of Defendants' drug [21 C.F.R. 201.57(f)(1)]; and

(e)    The labeling was misleading and promotional [21 C.F.R. 201.56(b)].

66.    As a result of the violations of the statutes described above, Plaintiffs suffered injuries and damages as alleged herein.

**COUNT IV**
**VIOLATIONS OF ALL STATES' CONSUMER PROTECTION STATUTES**

67.    Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

68.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of any and all state consumer protection statutes when they represented, through their advertising, warranties, and other express representations, that Baycol had benefits or characteristics that it did not actually have.  Defendants further violated state consumer protection statutes when they falsely represented that Baycol was of a particular standard or quality when it was not.  Finally, Defendants violated state consumer protection statutes when they advertised Baycol with the intent not to sell it as advertised, and when, in so doing, they concealed and suppressed facts material to the true characteristics, standards, and quality of Baycol.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

69.    Defendants' deceptive practices were specifically designed to induce Plaintiffs and the Classes to buy Baycol.

70.    As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and the Classes have suffered actual damages and members of the Classes are threatened with irreparable harm by undue risk of physical injuries or death.

## COUNT V
## UNJUST ENRICHMENT

71.    Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

72.    As the intended and expected result of their conscious wrongdoing, Defendants have profited and benefitted from the purchase Baycol by the Plaintiffs and the Class.

73.    Defendants have voluntarily accepted and retained these profits and benefits, derived from the Plaintiffs and the Plaintiff Class, with full knowledge and awareness that, as a result of Defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs and the Plaintiff Class were not receiving a product of the quality, nature, or fitness that had been represented by Defendants or that Plaintiffs and the Plaintiff Class, as reasonable consumers, expected.

74.    By virtue of the conscious wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of the Plaintiffs and the Plaintiff Class, who are entitled to in equity, and hereby seek, the disgorgement and



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

20

restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy the Defendants' unjust enrichment.

**COUNT VI**
**MEDICAL MONITORING**

75.     Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

76.     Plaintiffs and class members have been significantly exposed to proven hazardous substances through the intentional, negligent, or wrongful actions of the Defendants.

77.     As a proximate result of this exposure, Plaintiffs and class members suffer significantly increased risks of developing serious, latent diseases.

78.     That increased risk makes periodic diagnostic medical examinations reasonably necessary.

79.     Monitoring and testing procedures exist which make the early detection and treatment of disease possible and beneficial.

80.     Defendants' actions render them liable to pay all costs of a comprehensive court-supervised medical monitoring program, to provide diagnostic and treatment services for the benefit of the class.

81.     As a direct and proximate result of Defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, warning, and otherwise distributing BAYCOL in interstate



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

commerce, Plaintiffs and class members are at an increased risk of developing rhabdomyolysis and have suffered compensatory and punitive damages in an amount to be proven at trial.

### COUNT VII
### BREACH OF EXPRESS WARRANTY

82.     Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

83.     Defendants expressly warranted to Plaintiffs, by and through statements made by Defendants or their authorized agents or sales representative, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Baycol was safe, effective, fit and proper for its intended use.

84.     In using Baycol, Plaintiffs relied on the skill, judgment, representations and foregoing express warranties of the Defendants.   Said warranties and representations were false in that the aforementioned product was not safe and was unfit for the uses for which it was intended.

85.     As a direct and proximate result of Defendants' breaches of warranties, Plaintiffs and class members are at an increased risk of developing rhabdomyolysis and have suffered compensatory and punitive damages in an amount to be proven at trial.



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54ᵗʰ Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

22

## COUNT VIII
## BREACH OF IMPLIED WARRANTY

86.    Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

87.    Prior to the time that Baycol was used by Plaintiffs, Defendants impliedly warranted to Plaintiffs that Baycol was of merchantable quality and safe and fit for the use for which it was intended.

88.    Plaintiffs were and are unskilled in the research, design and manufacture of Baycol and reasonably relied entirely on the skill, judgment and implied warranty of the Defendants in using Baycol.

89.    Baycol was neither safe for its intended use nor of merchantable quality, as warranted by Defendants, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

90.    As a direct and proximate result of Defendants' breaches of warranties, Plaintiffs and class members are at an increased risk of developing rhabdomyolysis and have suffered compensatory and punitive damages in an amount to be proven at trial.

## COUNT IX
## CORPORATE RESPONSIBILITY:
## JOINT VENTURES, PARENT/SUBSIDIARIES,
## AND/OR SUCCESSOR CORPORATION

91.    Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

23

92.     As a result of their participation in various joint ventures, parent/subsidiary relationships, and/or successor corporations, Defendants are liable to the Plaintiffs.

93.     As a result of their negligent supervision and actual supervision of various joint ventures, parent/subsidiary relationships, and/or successor corporations, Defendants are liable to Plaintiffs.

94.     As a result of the invalidity of various indemnification agreements, Defendants are liable to Plaintiffs.

95.     Defendants are liable to Plaintiffs, as alter egos of their joint ventures, parent/subsidiary relationships, and/or successor corporations.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray that the Court enter judgment against BAYER AG, BAYER CORPORATION, and BAYER PHARMACEUTICAL DIVISION and in favor of the Plaintiffs and the Classes, and to award the following relief:

a.      Certification of the proposed Classes and Subclasses under Rule 23 of the Federal Rules of Civil Procedure;

b.      Appoint Kenneth B. Moll of KENNETH B. MOLL & ASSOCIATES, LTD. as lead class counsel;

c.      Appoint Hal J. Kleinman and Sonia S. Kinra KENNETH B. MOLL & ASSOCIATES, LTD. members of the Plaintiffs' Steering Committee;

d.      Declare that Baycol is dangerous and defective, and that Bayer is financially responsible for notifying all members of the Class of the defective drugs;

e.      Declare that Bayer must disgorge, for the benefit of the Class, all or part of their ill-gotten gains and benefits received from the sale of



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54th Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

24

Baycol, and/or make full restitution to Plaintiffs and the members of the Class;

f.      Determine each Defendant's liability for punitive/exemplary damages to the extent necessary and appropriate to punish and deter the conduct complained of herein;

g.      Award compensatory and punitive damages for the acts complained of herein, in an amount to be proven at trial;

h.      Award attorneys' fees and costs, plus interest, as allowed by law, and/or from a common fund created hereby;

i.      Provide worldwide consumer notice, at Defendants' expense, regarding medical monitoring;

j.      Order Defendants to fund Court-supervised or Court-approved programs to medically monitor Class members, to pay or reimburse the cost of medical treatment of Class members; and

k.      Order such other or further judicial determinations, and relief, as may be appropriate under the circumstances under the Court's exercise of its equitable jurisdiction and inherent authority in this proceeding.

RESPECTFULLY SUBMITTED,

By: _____

Kenneth B. Moll, Esq.
Hal J. Kleinman, Esq.
Sonia S. Kinra, Esq.
KENNETH B. MOLL & ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
kbmoll.com



KENNETH B. MOLL
& ASSOCIATES, LTD.
Three First National Plaza
54TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
TOLL FREE: 888.882.3453
kbmoll.com

F:\My Files\WPdocs\Clients - Baycol\A-General\Pleadings\Federal Complaint.wpd   25

**5**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STEVEN L. SPARKS, On Behalf of Himself and All )
Others Similarly Situated,                      )
                                                )
                        Plaintiff,              )    CIV-01-1265-T
                                                )
vs.                                             )
                                                )    CASE NO. _____
BAYER CORPORATION, a foreign corporation,       )
                                                )
                        Defendant.              )
                                                )

**FILED**

AUG 1 0 2001

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____ DEPUTY

## ORIGINAL COMPLAINT – CLASS ACTION

Steven L. Sparks, personal representative of the Estate of Lilbert O. Sparks, Jr., Deceased,

("Plaintiff"), for his multiple causes of action against the above-named Defendant, alleges and states

the following:

**DOCKETED**

### PARTIES

1.      Lilbert O. Sparks, Jr., Deceased, was at the time the events referenced herein

occurred, a citizen of the State of Oklahoma.

2.      Lilbert O. Sparks, Jr. died on the 24th day of January, 2001, at Presbyterian Hospital,

Oklahoma City, Oklahoma.

3.      Steven L. Sparks, a citizen of the State of Oklahoma, was appointed Personal

Representative of the Estate of Lilbert O. Sparks, Jr., Deceased, on or about the 2nd day of March,

2001 in the District Court of Oklahoma County, Oklahoma.

4.      Defendant, Bayer Corporation ("Defendant"), is an Indiana corporation with, on

information and belief of Plaintiff, its principal place of business in Indiana, and is authorized to

1

A:\complaint-ca.wpd

conduct business and is in good standing in the State of Oklahoma. Defendant is engaged in the

manufacture of certain pharmaceuticals for distribution and sale in the State of Oklahoma.

## JURISDICTION AND VENUE

5.      Jurisdiction in this matter is established through Title 28 of the United States Code,

Section 1332. There is complete diversity of citizenship between the Plaintiff and Defendant and

the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney's fees.

6.      Venue is proper in this Court pursuant to Title 28 of the United States Code, Section

1391.

7.      Plaintiff is the proper party to bring suit in this matter pursuant to 12 Okla. Stat. (2001

Supp.) §1053.

## STATEMENT OF FACTS

8.      As a predicate to the claims herein, Defendant manufactured and distributed and/or

offered for sale or caused to be sold in the State of Oklahoma, a certain cerivastatin sodium

medication known as "Baycol" for the purpose of, *inter alia*, being used and administered by

physicians and other health care professionals to lower plasma cholesterol levels in patients.

Plaintiff's Decedent was administered Baycol for its stated purposes and subsequently died as a

direct result thereof.

## CLASS ALLEGATIONS

9.      Plaintiff brings this action as a class action under rule 23 of the Federal Rules of Civil

Procedure on behalf of the class of all persons or entities who purchases or otherwise used Baycol

between the date this Complaint is filed and at least two (2) previous calendar years, inclusive.

2

A:\complaint-ca.wpd

10.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds of members of the Class located throughout Oklahoma and the United States. Class members may be identified from records maintained by Defendants and may be easily notified of the pendency of this action, using a form of notice similar to that customarily used in other class actions.

11.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class are similarly affected by Defendants' product.

12.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class litigation.

13.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    whether the product was properly formulated and tested prior to distribution and sale by the Defendants;

b.    whether the Defendants' product was put through tests which proved it was dangerous prior to distribution and sale by the Defendants; and

c.    to what extent members of the Class have sustained damages as a result of using this dangerous product and the proper measure of damages.

14.    A class action is superior to all other available methods of the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Further, as the damages suffered by some individual Class members may be relatively small, the expense and

3

A:\complaint-ca.wpd

burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

### COUNT I.
### Products Liability

15.    Plaintiff restates and realleges paragraphs 1 through 14 of this Complaint and in addition, states matters as set forth below:

16.    The subject medication was prescribed to Plaintiff's Decedent on or about the 6th day of December, 2000.  On information and belief of Plaintiff, Plaintiff's Decedent began taking the prescribed Baycol within 24 hours of the prescription date.

17.    Defendant warranted that said medication was safe for the ordinary purposes for which said medication was manufactured and sold; to wit: for use as a plasma cholesterol lowering agent, notwithstanding that Defendant was in possession of information that said medication had caused serious injuries and death to individuals who had taken it as prescribed.

18.    Plaintiff was a person who used and was reasonably expected to use said medication.

19.    The subject medication was defective at the time of its manufacture, distribution and sale, and said medication was unreasonably dangerous to a person taking the medication pursuant to a physician or other health care professional's orders.

20.    Additionally, Defendant failed to adequately warn physicians, other health care professionals and consumers of the dangers of taking said medication and failed to make public complaints and incidents involving serious injury or death to others with respect to said medication. The injuries and ultimate death suffered by Plaintiff's Decedent was a direct and proximate cause of the acts of omission or commission on the part of Defendant.

4

A:\complaint-ca.wpd

21.     As a result of the actions and conduct of Defendant, Defendant is liable to Plaintiff

for the damages arising from the manufacture, distribution and sale of said defective product.

22.     The full extent of Plaintiff's injuries caused by said acts of Defendant exceed the sum

of $75,000.00, exclusive of interest and costs for which Plaintiff is entitled to recover, together with

a reasonable attorney's fees.

**COUNT II.**
**NEGLIGENCE**

23.     Plaintiff restates and realleges paragraphs 1 through 22 of this Complaint and in

addition, states matters as set forth below:

24.     Defendant owed a duty to Plaintiff's Decedent in the manufacture, distribution and/or

sale of the medication to be prescribed by healthcare professionals for the purpose for which it was

intended.

25.     Defendant breached said duty by negligently supervising and/or controlling the

formula and manufacturing process of said medication, and in failing to adequately warn the medical

profession and the public as to the inherent dangers of prescribing and taking said medication.

26.     Moreover, Defendant failed to properly and promptly act by removing the subject

Baycol from the market after it became known to Defendant that said medication could cause serious

injury and death.

27.     The injuries and death of Plaintiff's Decedent were a direct and proximate result of

the negligent conduct of Defendant, Bayer Corporation.

5

28.     As a direct and proximate result of the negligence of Defendant, Plaintiff has suffered injuries and damages in excess of $75,000.00, exclusive of interest and costs, and a reasonable attorney's fees, which Plaintiff is entitled to recover from Defendant.

## COUNT III.
## PUNITIVE DAMAGES

29.     Plaintiff restates and realleges paragraphs 1 through 28 of this Complaint and in addition, states matters as set forth below:

30.     Defendant's conduct and actions, the awareness of the Defendant of the serious, immediate and life-threatening hazard of said medication, and the failure by Defendant to fully disclose and publicize the dangers of said medication, subject Defendant to exemplary damages to the fullest extent of the law.

31.     As a direct and proximate result of the conduct of Defendant and the imminent hazard posed to the general public as a result thereof, Plaintiff should be awarded exemplary damages in excess of $75,000.00 and in the maximum amount allowed by law.

## COMBINED PRAYER

**WHEREFORE,** Plaintiff prays for judgment against the Defendant on the claims set forth above, and that Plaintiff be awarded actual and compensatory damages exceeding $75,000.00; consequential damages in excess of $75,000.00; exemplary damages in the maximum amounts allowed by law and in excess of $75,000.00; actual damages for all losses sustained under the applicable law, as well as damages for mental anguish, interest, costs and attorney fees; that the case be certified as a class action and that Plaintiff be appointed as representative of the Plaintiff class; and for such other and further relief as may be deemed just and equitable by the Court.

6

A:\complaint-ca.wpd

**Plaintiff demands a jury trial.**

Respectfully submitted,

Don S. Strong, OBA No. 13874
G. Stephen Martin, II, OBA No. 17091

— Of the Firm —

**STRONG, MARTIN & ASSOCIATES, P.L.L.C.**
2518 First National Center
120 North Robinson
Oklahoma City, Oklahoma 73102
Telephone:  (405) 604.7500
Facsimile:   (405) 604.7503

– and –

William B. Federman, OBA #2853
Stuart W. Emmons, OBA #12281
FEDERMAN & SHERWOOD
120 N. Robinson, Suite 2720
Oklahoma City, OK 73102
405-235-1560/FAX: 405-239-2112

– and –

2926 Maple Avenue, Suite 200
Dallas, TX 75201
214-696-1100/FAX: 214-740-0112
**ATTORNEYS FOR PLAINTIFF**

7

A:\complaint-ca.wpd

**6**

Case MDL No. 1431 Document 3 Filed 08/27/01 Page 118 of 121



# Bayer Pharmaceutical Division
## UNITED STATES

| Contact Us | News | Links | Sitemap | Search |

Ba

**Home** | Company | Products | Careers | Investor Relations |

Bayer Overview
Business Functions
Sites and Products

**Bayer Links**
United States
International
Biological Products

© Copyright Bayer AG 2001

Sites and Products

West Haven

Berkeley

## West Haven



**West Haven, Conn.**
Bayer's West Haven, Conn. site is home to the North
headquarters of the Bayer Pharmaceuticals Division
more than 2,000 people. Also located in West Haven
Bayer's three worldwide research centers. In West H
conducts research into treatments for osteoporosis, c
diabetes, and obesity. Also at this facility, Bayer man
antibiotic, Cipro® / Cipro® I.V., as well as Precose®
treatment of Type 2 (non-insulin dependent) diabetes
cardiovascular drugs such as Adalat® CC for hypert
Pharmaceuticals' Sales, Marketing, Distribution, and
are also headquartered at West Haven.

**History**
Bayer acquired its facility in Connecticut in 1979. Sin
the business and facilities here have grown consider
Pharmaceuticals sales have increased from $100 mil
well over $2 billion today. In 1996, Bayer completed
campus expansion, which reaches from West Haven
Orange, Conn. where Bayer employee volunteers an
collaborated to clean up and establish a nature area
existing wetlands so that birds and land animals can
thrive adjacent to Bayer's manufacturing, research, a
administrative facilities.

## Directions

- From Hartford and points north
  Take I-91 South to New Haven; I-95 South to exit 41. Make a left onto Marsh
  Take left at second light onto Frontage Road.

- From Providence, R.I., and points east
  Take I-95 South past New Haven to exit 41. Make a left off exit onto Marsh
  left at second light onto Frontage Road.

- From Bridgeport, Conn., and points west
  Take I-95 North past Orange service area to exit 41. Make a right off exit ra
  Hill Road. Make a left at first light onto Frontage Road.

## Transportation

Bayer's West Haven facilities are easily accessible via ground, rail, and air transpor
is 1/4 mile from exit 41 off I-95, seven miles from Tweed-New Haven airport, 55 mil
Bradley Airport near Hartford, and 80 miles from the New York area airports. Bayer
reachable by Metro North and Amtrak trains, which stop in New Haven, Conn., a to
West Haven.

## Contact

**7**

129

## Table C.
## U.S. District Courts—Civil Cases Commenced, Terminated, and Pending During the 12-Month Periods Ending September 30, 1999 and 2000

| Circuit | Filings | | | Terminations | | | Pending | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1999 | 2000 | Percent Change | 1999 | 2000 | Percent Change | 1999¹ | 2000 | Percent Change |
| TOTAL | 260,271 | 259,517 | -0.3 | 272,526 | 259,637 | -4.7 | 249,381 | 249,261 | -0.1 |
| DC | 3,577 | 3,356 | -6.2 | 3,167 | 3,248 | 2.6 | 3,257 | 3,365 | 3.3 |
| 1ST | 6,927 | 6,906 | -0.3 | 7,211 | 6,903 | -4.3 | 7,737 | 7,740 | 0.0 |
| ME | 768 | 670 | -12.8 | 728 | 687 | -5.6 | 411 | 394 | -4.1 |
| MA | 3,332 | 3,241 | -3.3 | 3,479 | 3,148 | -9.5 | 3,638 | 3,731 | 2.6 |
| NH | 668 | 667 | -0.2 | 717 | 707 | -1.4 | 602 | 562 | -6.7 |
| RI | 624 | 674 | 8.0 | 680 | 715 | 5.1 | 851 | 610 | -8.3 |
| PR | 1,515 | 1,654 | 9.2 | 1,607 | 1,646 | 2.4 | 2,435 | 2,443 | 0.3 |
| 2ND | 29,443 | 26,526 | -9.9 | 25,257 | 30,615 | 21.2 | 33,727 | 29,638 | -12.1 |
| CT | 2,729 | 2,705 | -0.9 | 2,966 | 3,112 | 4.9 | 3,685 | 3,278 | -11.1 |
| NY.N | 2,118 | 2,341 | 10.5 | 2,158 | 2,374 | 10.0 | 3,048 | 3,015 | -1.1 |
| NY.E | 8,701 | 8,664 | -0.4 | 7,949 | 9,181 | 15.5 | 9,691 | 9,174 | -5.3 |
| NY.S | 13,773 | 10,389 | -24.6 | 10,199 | 13,542 | 32.8 | 14,752 | 11,599 | -21.4 |
| NY.W | 1,711 | 1,915 | 11.9 | 1,524 | 1,942 | 27.4 | 2,202 | 2,175 | -1.2 |
| VT | 411 | 512 | 24.6 | 461 | 464 | 0.7 | 349 | 397 | 13.8 |
| 3RD | 20,925 | 22,396 | 7.0 | 20,824 | 20,526 | -1.4 | 18,414 | 20,284 | 10.2 |
| DE | 961 | 1,227 | 27.7 | 778 | 884 | 13.6 | 1,077 | 1,420 | 31.8 |
| NJ | 6,387 | 6,485 | 1.5 | 6,285 | 6,491 | 3.3 | 5,511 | 5,505 | -0.1 |
| PA.E | 7,795 | 8,548 | 9.7 | 8,185 | 7,149 | -12.7 | 6,389 | 7,788 | 21.9 |
| PA.M | 2,368 | 2,402 | 1.4 | 2,263 | 2,399 | 6.0 | 1,774 | 1,777 | 0.2 |
| PA.W | 2,970 | 3,278 | 10.4 | 2,959 | 3,153 | 6.6 | 2,974 | 3,099 | 4.2 |
| VI | 444 | 456 | 2.7 | 354 | 450 | 27.1 | 689 | 695 | 0.9 |
| 4TH | 20,719 | 21,260 | 2.6 | 20,518 | 21,535 | 5.0 | 14,127 | 13,852 | -2.0 |
| MD | 4,044 | 4,002 | -1.0 | 4,373 | 4,284 | -2.0 | 2,778 | 2,496 | -10.2 |
| NC.E | 1,451 | 1,497 | 3.2 | 1,322 | 1,486 | 12.4 | 1,111 | 1,122 | 1.0 |
| NC.M | 1,123 | 1,288 | 14.7 | 1,080 | 1,227 | 13.6 | 908 | 969 | 6.7 |
| NC.W | 1,043 | 1,108 | 6.2 | 1,076 | 1,079 | 0.3 | 1,011 | 1,040 | 2.9 |
| SC | 4,354 | 4,195 | -3.7 | 4,063 | 4,416 | 8.7 | 3,269 | 3,148 | -3.6 |
| VA.E | 5,051 | 5,328 | 5.5 | 4,812 | 5,283 | 9.8 | 2,190 | 2,235 | 2.1 |
| VA.W | 1,797 | 1,910 | 6.3 | 1,839 | 1,987 | 8.0 | 1,232 | 1,155 | -6.3 |
| WV.N | 653 | 674 | 3.2 | 632 | 597 | -5.5 | 553 | 630 | 13.9 |
| WV.S | 1,203 | 1,258 | 4.6 | 1,321 | 1,176 | -11.0 | 975 | 1,057 | 8.4 |

Table C. (September 30, 2000—Continued)

130

| Circuit | Filings | | | Terminations | | | Pending | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1999 | 2000 | Percent Change | 1999 | 2000 | Percent Change | 1999¹ | 2000 | Percent Change |
| 5TH | 32,959 | 31,412 | -4.7 | 32,723 | 32,558 | -0.5 | 34,932 | 33,786 | -3.3 |
| LA,E | 3,915 | 3,753 | -4.1 | 4,094 | 3,836 | -6.3 | 2,797 | 2,714 | -3.0 |
| LA,M | 1,166 | 1,035 | -11.2 | 1,076 | 1,131 | 5.1 | 8,845 | 8,749 | -1.1 |
| LA,W | 2,521 | 2,935 | 16.4 | 2,482 | 2,607 | 5.0 | 2,278 | 2,606 | 14.4 |
| MS,N | 1,174 | 1,371 | 16.8 | 1,196 | 1,255 | 4.9 | 1,034 | 1,150 | 11.2 |
| MS,S | 2,429 | 2,467 | 1.6 | 2,188 | 2,385 | 9.0 | 2,210 | 2,292 | 3.7 |
| TX,N | 5,676 | 6,352 | 11.9 | 5,704 | 6,159 | 8.0 | 3,869 | 4,062 | 5.0 |
| TX,E | 5,334 | 3,127 | -41.4 | 5,543 | 4,149 | -25.2 | 5,768 | 4,746 | -17.7 |
| TX,S | 7,485 | 7,141 | -4.6 | 7,228 | 7,703 | 6.6 | 5,768 | 5,206 | -9.8 |
| TX,W | 3,259 | 3,231 | -0.9 | 3,212 | 3,333 | 3.8 | 2,363 | 2,261 | -4.3 |
| 6TH | 26,845 | 27,428 | 2.2 | 26,184 | 25,839 | -1.2 | 34,670 | 36,259 | 4.5 |
| KY,E | 2,258 | 2,278 | 0.9 | 2,311 | 2,266 | -2.0 | 1,848 | 1,860 | 0.6 |
| KY,W | 1,611 | 1,634 | 1.4 | 1,598 | 1,658 | 3.8 | 1,387 | 1,363 | -1.7 |
| MI,E | 6,569 | 5,807 | -11.6 | 6,228 | 6,181 | -0.8 | 19,154 | 18,780 | -2.0 |
| MI,W | 1,591 | 1,574 | -1.1 | 1,677 | 1,582 | -5.7 | 1,064 | 1,056 | -0.8 |
| OH,N | 6,833 | 7,850 | 14.9 | 5,909 | 5,695 | -3.6 | 3,661 | 5,816 | 58.9 |
| OH,S | 3,137 | 3,373 | 7.5 | 3,389 | 3,507 | 3.5 | 3,345 | 3,211 | -4.0 |
| TN,E | 1,758 | 1,742 | -0.9 | 1,941 | 1,845 | -5.0 | 1,742 | 1,639 | -5.9 |
| TN,M | 1,576 | 1,531 | -2.9 | 1,482 | 1,529 | 3.2 | 1,491 | 1,493 | 0.1 |
| TN,W | 1,512 | 1,639 | 8.4 | 1,613 | 1,576 | -2.3 | 978 | 1,041 | 6.4 |
| 7TH | 19,066 | 18,989 | -0.4 | 19,077 | 19,423 | 1.8 | 15,062 | 14,828 | -2.9 |
| IL,N | 9,491 | 8,843 | -6.8 | 9,446 | 9,237 | -2.2 | 7,436 | 7,042 | -5.3 |
| IL,C | 1,192 | 1,263 | 6.0 | 1,203 | 1,246 | 3.6 | 1,157 | 1,174 | 1.5 |
| IL,S | 1,335 | 1,382 | 3.5 | 1,305 | 1,370 | 5.0 | 1,168 | 1,180 | 1.0 |
| IN,N | 1,926 | 2,119 | 10.0 | 2,186 | 2,158 | -0.4 | 1,534 | 1,495 | -2.6 |
| IN,S | 2,808 | 2,833 | 0.9 | 2,657 | 2,878 | 8.3 | 2,299 | 2,254 | -2.0 |
| WI,E | 1,494 | 1,747 | 16.9 | 1,456 | 1,721 | 18.2 | 1,168 | 1,194 | 2.2 |
| WI,W | 820 | 802 | -2.2 | 844 | 813 | -3.7 | 300 | 289 | -3.7 |
| 8TH | 13,783 | 13,948 | 1.2 | 14,598 | 15,140 | 3.7 | 12,355 | 11,173 | -9.7 |
| AR,E | 2,382 | 2,317 | -2.7 | 2,389 | 2,469 | 3.3 | 2,127 | 1,975 | -7.2 |
| AR,W | 1,018 | 1,171 | 15.0 | 1,093 | 1,092 | -0.1 | 617 | 696 | 12.8 |
| IA,N | 637 | 693 | 4.1 | 640 | 675 | 8.9 | 598 | 564 | -5.7 |
| IA,S | 1,075 | 1,031 | -4.1 | 1,944 | 1,075 | 3.0 | 1,006 | 962 | -4.4 |
| MN | 2,138 | 2,427 | 34.6 | 2,454 | 3,039 | 23.8 | 2,168 | 2,007 | -7.4 |
| MO,E | 2,392 | 2,878 | 1.9 | 2,655 | 2,529 | -4.8 | 2,303 | 2,201 | -4.4 |
| MO,W | 2,398 | 1,633 | -31.9 | 2,578 | 2,261 | -12.3 | 1,940 | 1,312 | -32.4 |
| NE | 964 | 1,053 | 9.2 | 1,003 | 1,169 | 16.6 | 929 | 813 | -12.5 |
| ND | 331 | 331 | 0.0 | 312 | 339 | 8.7 | 258 | 250 | -3.1 |
| SD | 458 | 444 | -3.1 | 430 | 470 | 9.3 | 419 | 393 | -6.2 |